**EXHIBIT C**

**Blackline Version of Revised Proposed Order
Reflecting Revisions to Form of Order Since Hearing**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **MELINTA THERAPEUTICS, INC.,** *et al.*, | **Case No. 19-12748 (LSS)** |
| **Debtors.**[1] | **(Jointly Administered)** |

### ORDER (A) ESTABLISHING BIDDING PROCEDURES; (B) APPROVING EXPENSE REIMBURSEMENT; (C) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (D) APPROVING FORM AND MANNER OF NOTICE OF ALL PROCEDURES, PROTECTIONS, SCHEDULES, AND AGREEMENTS; (E) SCHEDULING A HEARING TO CONSIDER ANY PROPOSED SALE; AND (F) GRANTING CERTAIN RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") for entry of an order (this "**Order**"), (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "**Bidding Procedures**") in connection with a Transaction, (b) approving the Expense Reimbursement (as defined herein), (c) approving the form and manner of notice of any Auction and any RSA/Sale Hearing, (d) scheduling the RSA/Sale Hearing, if applicable, and setting other related dates and

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Melinta Therapeutics, Inc. (0364); Cempra Pharmaceuticals, Inc. (5814); CEM-102 Pharmaceuticals, Inc. (4262); Melinta Subsidiary Corp. (9437); Rempex Pharmaceuticals, Inc. (6000); and Targanta Therapeutics Corporation (1077). The address of the Debtors' corporate headquarters is 44 Whippany Road, Suite 280, Morristown, New Jersey 07960.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Bidding Procedures, or the First-Day Declaration, as applicable.

deadlines, (e) establishing procedures for the assumption or assumption and assignment of contracts and noticing of related Cure Amounts, and (f) granting related relief; and upon consideration of the First-Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and the Debtors, the Committee (as defined below), Vatera Healthcare Partners LLC ("**Vatera**"), the Prepetition Secured Parties (as defined in the Cash Collateral Order), and The Medicines Company ("**MedCo**" and, together with the Debtors, the Committee, Vatera, and the Prepetition Secured Parties, the "**Settlement Parties**") having accepted and agreed to that certain Global Settlement Term Sheet dated as of February 7, 2020 (the "**Global Settlement Term Sheet**"), pursuant to which, among other things, the Settlement Parties have consented to this Order; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby;

    **FOUND, CONCLUDED, AND DETERMINED THAT:**

    A.    **Bidding Procedures.** The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair,

reasonable, and appropriate under the circumstances and designed to achieve the highest or otherwise best Transaction offer and to maximize the value of the Debtors' estates.

      **B.**     **Sale Notice.** The notice, substantially in the form attached hereto as **Exhibit 2**, provided by the Debtors regarding the Transaction, the Auction, and the RSA/Sale Hearing (the "**Sale Notice**") is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Section 363 Asset Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Motion and the date, time, and place of the RSA/Sale Hearing; (iv) reasonably specific identification of the assets subject to any Section 363 Asset Sale or Plan Sale; (v) instructions for promptly obtaining a copy of the Restructuring Support Agreement and/or Form Purchase Agreement; (vi) representations describing any Section 363 Asset Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds; (vii) notice of the proposed assumption of the Designated Contracts by the Debtors (or assumption and assignment to another Successful Bidder (as defined in the Bidding Procedures), if applicable, arising from the Auction, if any) and the right, procedures, and deadlines for objecting thereto; and (viii) notice of the proposed assumption of the RSA, if the Supporting Lenders are the Successful Bidder, and no other or further notice of any Section 363 Asset Sale or the assumption of the RSA shall be required.

      **C.**     **Assumption or Assumption and Assignment Procedures.** The Motion and the Contract Assumption Notice (as defined herein) are reasonably calculated to provide counterparties to the Designated Contracts with proper notice of the intended assumption or

assumption and assignment of their executory contracts, any Cure Amounts (as defined herein), and the Assumption Procedures (as defined herein), and are appropriate.

       **D.**    **Other Findings.** The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

       **NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

       1.    The Motion is GRANTED to the extent set forth herein.

**I.**    **Important Dates And Deadlines**

       2.    **RSA/Sale Hearing**. The RSA/Sale Hearing, if any, will commence on **[March 12]13, 2020, at [•9:30 a.m.], prevailing Eastern Time**, before the Honorable Laurie Selber Silverstein of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., Wilmington, Delaware 19801. The RSA/Sale Hearing, if any, may be adjourned by the Debtors without further notice other than by announcement in open Court or on the Court's calendar.

       3.    **Sale Objection Deadline**. Objections, if any, to (a) if the Supporting Lenders are the Successful Bidder, the assumption of the RSA or (b) the Motion and the sale of the Assets to a Successful Bidder, *except* objections solely related to the identity of the Successful Bidder, any changes to the Form Purchase Agreement, and adequate assurance of future performance by a Successful Bidder other than the Supporting Lenders ("**Initial Objections**"), must be made by **February 27**, **2020, at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). Objections solely to the identity of the Successful Bidder, changes to the Form Purchase

Agreement or RSA, and adequate assurance of future performance by a Successful Bidder other than the Supporting Lenders ("**Supplemental Limited Sale Objections**") must be made by **4:00 p.m., prevailing Eastern Time on March 10, 2020** (the "**Supplemental Limited Sale Objection Deadline**"). In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline or the Supplemental Limited Sale Objection Deadline, as applicable, and served on (i) [proposed] counsel to the Debtors, (ii) counsel to the Supporting Lenders, and (iii) [proposed] counsel to the official committee of unsecured creditors (the "**Committee**").

4.        **Response Deadline**. Responses or replies, if any, to (a) Initial Objections must be filed by **March 9, 2020, at 4:00 p.m., prevailing Eastern Time** or (b) Supplemental Limited Sale Objections must be filed by [•]March 12, 2020, at 4:00 p.m., prevailing Eastern Time on the date of the RSA/Sale Hearing (or may be presented at the RSA/Sale Hearing); *provided* that such deadlines may be extended by agreement of the Debtors and the affected objecting party.

5.        **Competitive Bidding**. The following dates and deadlines regarding competitive bidding are hereby established:

(a)        **Bid Deadline**: **March 2, 2020, at 4:00 p.m., prevailing Eastern Time**, the deadline by which all Qualified Bids (as defined in the Bidding Procedures) must be **actually received** in writing in electronic format by the parties specified in the Bidding Procedures (the "**Bid Deadline**"); and

(b)        **Auction**: **March 6, 2020, at 9:00 a.m., prevailing Eastern Time**, is the date and time of the Auction, if one is needed; the Auction will be held at the offices of proposed counsel to the Debtors: Skadden, Arps, Meagher & Flom, One Manhattan West, New York, New York, 10001, or such other place and time as

the Debtors shall notify all Competing Bidders (which shall be deemed to include the Supporting Lenders) and any official committee appointed in the Debtors' chapter 11 cases and its counsel.

## II.    Bidding Procedures and Related Relief

6.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved in their entirety. The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to any proposed Transaction, and any party desiring to submit a higher or better offer for the Assets or the Reorganized Melinta Common Stock must comply with the terms of the Bidding Procedures and this Order. The Bidding Procedures shall also govern the terms on which the Debtors will proceed with the Auction, the Section 363 Asset Sale pursuant to the Modified Transaction Agreement, and/or the selection of the Supporting Lenders as the Successful Bidder and the assumption of the RSA. The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.

7.    The failure to specifically include or reference any particular provision, section, or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, section, or article, it being the intent of this Court that the Bidding Procedures are authorized in their entirety.

## III.    Auction

8.    The Debtors are authorized, subject to the terms of this Order and the Bidding Procedures, to take actions reasonably necessary, in the discretion of the Debtors, to conduct and implement the Auction.

9. Only (a)(i) the Debtors, (ii) the Consultation Parties,[3] (iii) Vatera, (iv) MedCo and, (v) the U.S. Trustee, and (vi) any Competing Bidder (including the Supporting Lenders), in each case, along with their representatives and counsel; (b) creditors of the Debtors who provide 48-hours' advance written notice of their intent to attend the auction to [proposed] counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, Illinois 60606-1720 (Attn: Ron E. Meisler and Christopher M. Dressel) and 920 North King Street, Wilmington, Delaware 19801 (Attn: Faiz Ahmad and Richard West); *provided* that the Debtors' right to object on an emergency basis to any such creditor's proposed attendance at the Auction is reserved; *provided, further*, that, the Debtors shall not be required to admit counsel or other representatives of any such creditor to the Auction; and (c) such other parties as the Debtors shall determine, shall attend the Auction (such attendance to be in person), and only such Competing Bidders (including the Supporting Lenders) will be entitled to make any Bids at the Auction.

10. The Debtors and their professionals shall direct and preside over the Auction, and the Auction shall be transcribed. Other than as expressly set forth in this Order or the Bidding Procedures, the Debtors may conduct the Auction in the manner they reasonably determine will result in the highest or otherwise best Qualified Bid.

11. Each Competing Bidder (including the Supporting Lenders) participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding, the sale of any of the assets described herein, or any other transaction with respect to the Debtors, (b)

---

[3] The term "**Consultation Parties**" means, collectively, any official committee appointed in the Chapter 11 Cases, including the Committee and each of their respective advisors.

has reviewed, understands and accepts the Bidding Procedures, and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, any Section 363 Asset Sale or Plan Sale, or the Auction, if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

12.    Except as otherwise provided in the Restructuring Support Agreement, the Bidding Procedures, or this Order, the Debtors (in consultation with the Consultation Parties) reserve the right as they may reasonably determine to be in the best interest of their estates and in the exercise of their fiduciary duties to: (a) determine which bidders are Qualified Bidders and which Bids are Qualified Bids; *provided* that the Debtors, in consultation with the Consultation Parties, shall have the right to permit a Potential Bidder to attend and participate in the Auction as a Competing Bidder, even if its bid is not otherwise a Qualified Bid, if the Debtors, in consultation with the Consultation Parties, believe in good faith that doing so will increase the potential for the submission of higher or otherwise better bids; (b) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (c) reject any Bid (other than a Credit Bid by the Supporting Lenders) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (d) impose additional terms and conditions with respect to all Potential Bidders (other than the Supporting Lenders); (e) extend the deadlines set forth herein or in the Bidding Procedures (with the approval of the Supporting Lenders); and (f) continue or cancel the Auction and/or RSA/Sale Hearing, including by announcement in open court without further notice (with the approval of the Supporting Lenders).

8

13.     In recognition of the considerable time, energy, and resources that the Supporting Lenders have expended in connection with the Supporting Lender Transaction, if the Supporting Lenders are not the Successful Bidder (or if the Debtors consummate any Plan or sale of all or substantially all of the Debtors' Assets other than the Supporting Lender Transaction), the Supporting Lenders shall be entitled to reimbursement of their reasonable and actual fees and expenses incurred in connection with the Supporting Lender Transaction, up to $2,000,000 (the "**Expense Reimbursement**").

14.     The Supporting Lenders are entitled, in their sole and absolute discretion, to credit bid part or the entire amount of the Prepetition Secured Obligations (as defined in the Debtors' cash collateral order ) *plus* the Expense Reimbursement in any Bid.

## IV.    RSA/Sale Hearing Notice and Related Relief

15.     The Sale Notice is hereby approved. Within three business days following the entry of this Order (the "**Mailing Date**"), the Debtors will cause the Sale Notice to be served on: (a) all entities reasonably known by the Debtors to have expressed a *bona fide* interest in acquiring the Assets during the two years preceding the date hereof; (b) all entities contacted by the Debtors or Jefferies in connection with the sale process undertaken by the Debtors in fall 2019; (c) all entities known to have asserted any claim, liens, interests, or encumbrances in or upon any of the Assets; (d) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (e) the U.S. Trustee, (f) counsel to the administrative agent under the Deerfield Facility, (g) counsel to the Supporting Lenders; (h) counsel to Vatera, (i) counsel to Oikos, (j) counsel to The Medicines Company, (k) the Internal Revenue Service, (l) the Securities and Exchange Commission, (m) counsel to the Committee, (n) the United States Attorney for the District of

Delaware, (o) the Food and Drug Administration, and (p) all parties entitled to notice pursuant to Local Bankruptcy Rules 2002-a(b) and 9013-1(m).

16.     Additionally, on the Mailing Date or as soon as reasonably practicable thereafter, the Debtors shall publish a notice, substantially in the form of the Sale Notice, on one occasion, in the national edition of *The Wall Street Journal* or *The New York Times*. Such publication notice shall be deemed sufficient and proper notice of the sale to any other interested parties whose identities are unknown to the Debtors.

**V.      Assumption Procedures**

17.     The procedures set forth below regarding the assumption or assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to section 365(b) (or assumed and assigned to a Successful Bidder assignee, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the Transaction (the "**Assumption Procedures**") are hereby approved.

18.     These Assumption Procedures shall govern the assumption or assumption and assignment of all of the Debtors' executory contracts and unexpired leases to be assumed or assumed and assigned in connection with the Transaction (each, a "**Designated Contract**," and, collectively, the "**Designated Contracts**"), subject to the payment of any amounts necessary to cure any defaults arising under any Designated Contract (the "**Cure Amount**"):

(a)      **Contract Assumption Notice**. No later than February 13, 2020 (the "**Assumption and Assignment Service Deadline**"), the Debtors shall serve a notice of contract assumption in substantially the form attached hereto as **Exhibit 3** (the "**Contract Assumption Notice**") via first-class mail on all counterparties to all contracts expected to be Designated Contracts after consultation with the Supporting Lenders, and provide a copy of the same to the Supporting Lenders and the Consultation Parties. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as

10

applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) Debtors' good-faith estimates of the amount of the required cure payments (the "**Cure Amounts**") (if any) required in connection with the executory contract or unexpired lease, as applicable, and (iv) the deadline to object to the proposed assumption or assumption and assignment of a Designated Contract or the Cure Amount proposed with respect thereto, which deadline shall be 4:00 p.m. (prevailing Eastern Time) on the 14th day after service of the Contract Assumption Notice (the "**Cure Objection Deadline**"); *provided, however*, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or that the stated Cure Amount related to any contract or unexpired lease constitutes a claim against the Debtors or a right against any Successful Bidder (all rights with respect thereto being expressly reserved), and all rights are reserved for the Successful Bidder, following the Auction, to assert that any Cure Amount is lower than the Debtors' estimate, subject to each counterparty's opportunity to object. Further, the inclusion of a contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such contract or unexpired lease, as applicable, will ultimately be assumed or assumed and assigned.

(b)     **Cure Amounts and Adequate Assurance of Future Performance**. The payment of the applicable Cure Amounts by the Debtors or the Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

(c)     **Additions**. The Debtors may designate, up to the date that is two business days before the RSA/Sale Hearing (the "**Designation Deadline**"), additional executory contracts and/or unexpired leases as agreements to be assumed by the Debtors and assigned to the Successful Bidder (the "**Additional Designated Contracts**"); *provided, however*, that, if the Debtors have elected to pursue a Plan Sale, the Designation Deadline (as used in the Bidding Procedures and this Order) shall be the deadline to file the plan supplement, or such later date as may be approved by this Court in any order approving a disclosure statement and related solicitation procedures. Within three business days of notice of the Additional Designated Contracts by the Debtors, the Debtors shall serve a Contract Assumption Notice on each of the counterparties to such Additional Designated Contracts and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign the counterparty's executory contract or unexpired lease, as applicable, to the Successful Bidder, (ii) any assignee, and (iii) the corresponding estimated Cure Amount.

(d)     **Eliminations**. The Debtors may remove any executory contract or unexpired lease, as applicable, to be assumed by the Debtors and assigned to the Successful Bidder (the "**Eliminated Agreements**") until the Designation Deadline or, if the Supporting Lenders are the Successful Bidder, in accordance with the RSA. The

11

Debtors shall, as soon as reasonably practicable after identifying an Eliminated Agreement, serve a notice (a "**Removal Notice**") on each of the impacted counterparties and their counsel of record, if any, indicating that the Debtors no longer intend to assign the counterparty's contract or unexpired lease, as applicable, to the Successful Bidder in connection with the Transaction.

(e)    **Supplemental Contract Assumption Notice**. Although the Debtors intend to make a good-faith effort to identify all Designated Contracts that may be assumed and assigned in connection with a Transaction, the Debtors may discover that certain executory contracts were inadvertently omitted from the Designated Contracts list, or the Successful Bidder may identify other executory contracts that they desire to assume and assign in connection with the Transaction. Accordingly, the Debtors reserve the right at any time after the Assumption and Assignment Service Deadline and before the closing of a Transaction, to (i) supplement the list of Designated Contracts with previously omitted executory contracts, (ii) remove Designated Contracts from the list of executory contracts ultimately selected as Designated Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Transaction, and/or (iii) modify the previously stated Cure Amount associated with any Designated Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption or assumption and assignment (a "**Supplemental Assumption Notice**") on each of the counterparties to such Designated Contracts and their counsel of record, if any, and the Consultation Parties; *provided, however*, the Debtors may not add an executory contract to the list of Designated Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Designated Contracts as was included in the Contract Assumption Notice.

(f)    **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Amount proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by proposed counsel to the Debtors and counsel to the Supporting Lenders on or before the Cure Objection Deadline, or such deadline set forth in the applicable Supplemental Assumption Notice, which deadline shall be no earlier than 14 days after service of such Supplemental Assumption Notice. If the Successful Bidder proposes a Section 363 Asset Sale, then the deadline to object to assumption or assumption and assignment solely with respect to the adequate assurance of future payment from the Successful Bidder shall be extended to March 10, 2020, at 4:00 p.m.; *provided, however*, that

the deadline to object to the Cure Amount or other matters unrelated to the identity of the Successful Bidder shall not be extended.

19.      Any party that does not timely object to the Cure Amount, the proposed assumption or assumption and assignment of a Designated Contract or Additional Designated Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, any Section 363 Asset Sale or the assumption of the RSA is deemed to have consented (whether the Transaction is implemented through a Plan Sale or a Section 363 Asset Sale) to (a) such Cure Amount, (b) the assumption or assumption and assignment of such Designated Contract or Additional Designated Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, (d) the Section 363 Asset Sale, and (e) the assumption of the RSA. Such party shall be forever barred and estopped (including in connection with a confirmation hearing for any chapter 11 plan) from objecting to the Cure Amount, the assumption or assumption and assignment of the Designated Contract, or Additional Designated Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder and/or the reorganized Debtors, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to such party's Designated Contract or Additional Designated Contract.

## VI.      Other Related Relief

20.      Any objections to the entry of this Order and the relief granted herein that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

21.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

22.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

23.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

24.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## Exhibit 1

**Bidding Procedures**

**[See Exhibit B to Motion]**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **MELINTA THERAPEUTICS, INC.,** *et al.*, | **Case No. 19-12748 (LSS)** |
| Debtors.[1] | **(Jointly Administered)** |

## BIDDING PROCEDURES

Melinta Therapeutics, Inc., a Delaware corporation ("**Melinta Therapeutics**"), and its wholly owned subsidiary debtors in the above-captioned Chapter 11 Cases[2] (collectively, the "**Debtors**") have executed a Restructuring Support Agreement (together with all exhibits, schedules, and attachments thereto, the "**Restructuring Support Agreement**"), dated as of December 27, 2019, with the lenders party to the Debtors' Prepetition Credit Agreement (collectively, the "**Supporting Lenders**"), pursuant to which, among other things, the Supporting Lenders propose to exchange secured claims against the Debtors arising under the Prepetition Credit Agreement (the "**Prepetition Credit Agreement Claims**"), in the aggregate amount of $140 million, for 100% of the Equity Interests (as defined in the Restructuring Support Agreement) of reorganized Melinta Therapeutics (the "**Reorganized Melinta Common Stock**"), pursuant to a pre-negotiated chapter 11 plan for the Debtors consistent with the Restructuring Support Agreement (the "**Plan**"). The Supporting Lenders' proposal to acquire the Debtors in accordance with the Restructuring Support Agreement is referred to herein as the "**Supporting Lender Transaction**."

On [February] [•], 2020, the Bankruptcy Court entered an order [Docket No. [•]] (the "**Bidding Procedures Order**") approving, among other things, these bidding procedures (these "**Bidding Procedures**"). These Bidding Procedures set forth the process by which the Debtors will solicit and evaluate higher or otherwise better Bids (as defined below) for the acquisition of the Debtors' business and, if applicable, conduct an Auction (as defined below) among Qualified Bidders (as defined below). In particular, the Debtors will consider Bids that are structured either as an offer to (a) purchase certain or all of the assets of the Debtors (the "**Assets**") in a sale pursuant to Bankruptcy Code section 363 (a "**Section 363 Asset Sale**") or (b) purchase the

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Melinta Therapeutics, Inc. (0364); Cempra Pharmaceuticals, Inc. (5814); CEM-102 Pharmaceuticals, Inc. (4262); Melinta Subsidiary Corp. (9437); Rempex Pharmaceuticals, Inc. (6000); and Targanta Therapeutics Corporation (1077). The address of the Debtors' corporate headquarters is 44 Whippany Road, Suite 280, Morristown, New Jersey 07960.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the motion for approval of, among other things, the Bidding Procedures (the "**Motion**") or, if not defined therein, the Bidding Procedures Order.

Reorganized Melinta Common Stock pursuant to a chapter 11 plan (a "**Plan Sale**").[3] If the Debtors receive one or more Qualified Bids (as defined below), in addition to the Supporting Lender Transaction, the Debtors will conduct an auction (the "**Auction**") among such Qualified Bidders in accordance with these Bidding Procedures.

## I.    Bidding Process

The Debtors and their advisors, in consultation with the Consultation Parties, shall (a) determine whether any person is a Qualified Bidder (as defined below), (b) coordinate the efforts of Potential Bidders (as defined below) in conducting their due-diligence investigations, (c) receive offers from Potential Bidders, and (d) negotiate any such Bids.

## A.    Supporting Lender Credit Bid

The Supporting Lenders shall be deemed to be a Qualified Bidder and are not required to make any Good-Faith Deposit. To the fullest extent permissible under Bankruptcy Code section 363(k), the Supporting Lenders may credit bid, as a Qualified Bid or subsequent Bid, in their sole and absolute discretion, any portion and up to the entire amount of the Prepetition Secured Obligations (as defined in, and in accordance with the terms of, the Cash Collateral Order) *plus* the Expense Reimbursement, *plus* postpetition interest, if any, that would be due and owing in accordance with the Cash Collateral Order if the Debtors selected an alternative Bid as the Successful Bid, including as part or all of an Overbid (as defined below), in accordance with the Auction procedures set forth herein, but subject to the rights of Vatera Healthcare Partners LLC, The Medicines Company, and the Official Committee of Unsecured Creditors to (i) challenge any increase in the Supporting Lender's secured claim based on the inclusion of default postpetition interest and (ii) dispute any Invoiced Fees (as defined in the Cash Collateral Order) in accordance with paragraph 9 of the Cash Collateral Order (the "**Credit Bid**"); *provided, however*, that the Supporting Lenders may not credit bid any Prepayment Fee (as defined in the Prepetition Credit Agreement) unless authorized to do so by an order of the Bankruptcy Court. The initial Credit Bid of the Supporting Lenders is $140 million (the "**Initial Credit Bid**"). Upon exercise of their Credit Bid, the Supporting Lenders shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any assets, and shall have the right to designate any person or entity in their sole and absolute discretion that shall take title to any assets that are subject to the Credit Bid. Except for the Supporting Lenders, no other person may credit bid.

## B.    Supporting Lender Expense Reimbursement

In recognition of the considerable time, energy, and resources that the Supporting Lenders have expended in connection with the Supporting Lender Transaction, the Debtors have agreed that if the Supporting Lenders are not the Successful Bidder (or if the Debtors consummate any Plan or sale of all or substantially all of the Debtors' Assets other than the

---

[3]    The term "**Transaction**," as used in these Bidding Procedures, refers to a Section 363 Asset Sale or a Plan Sale, as applicable.

Supporting Lender Transaction) the Supporting Lenders shall be entitled to reimbursement of their reasonable and actual fees and expenses incurred in connection with the Supporting Lender Transaction, up to $2,000,000 (the "**Expense Reimbursement**"), which amount may be added to the Supporting Lenders' Credit Bid in their sole and absolute discretion.

**II.    Key Dates For Potential Competing Bidders**

The Debtors shall assist Potential Bidders (as defined below) in conducting their respective due-diligence investigations and shall accept Bids (as defined below) until **March 2, 2020, at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

No later than the Bid Deadline, a Potential Bidder that desires to make a bid to consummate the Transaction shall deliver written copies of its Bid (as defined below) in electronic format to: (a) the Debtors, Melinta Therapeutics, Inc., 44 Whippany Road, Suite 280, Morristown, New Jersey 07960 (Attn: Jennifer A. Sanfilippo); (b) [proposed] counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, Illinois 60606-1720 (Attn: Ron E. Meisler and Christopher M. Dressel), Ron.Meisler@skadden.com and Christopher.Dressel@skadden.com and 920 North King Street, Wilmington, Delaware 19801 (Attn: Faiz Ahmad and Richard West), Faiz.Ahmad@skadden.com and Richard.West@skadden.com; (c) investment bankers to the Debtors, Jefferies, LLC, 520 Madison Avenue, New York, New York 10022 (Attn: Jeffrey Finger, Philip Engel, and Raynor Cordes), JFinger@jefferies.com, PEngel@jefferies.com, and RCordes@jefferies.com; and (d) [proposed] counsel for the Official Committee of Unsecured Creditors, Porzio, Bromberg & Newman, P.C., 100 Southgate Parkway, Morristown, New Jersey 07960 (Attn: Warren J. Martin Jr., Robert M. Schechter, and Rachel A. Parisi), WJMartin@pbnlaw.com, RMSchechter@pbnlaw.com, and RAParisi@pbnlaw.com.

The key dates for the Transaction process are as follows:

| | |
|---|---|
| February 27, 2020, at 4:00 p.m. EST | Sale Objection Deadline[4] |
| March 2, 2020, at 4:00 p.m. EST | Bid Deadline – Due Date for Bids and Deposits |
| March 6, 2020, at 9:00 a.m. EST | Auction |
| March 9, 2020, at 4:00 p.m. EST | Sale Objection Response Deadline |
| March 10, 2020, at 4:00 p.m. EST | Supplemental Limited Sale Objection Deadline (objections limited to identity of the Successful Bidder, changes to the Form Purchase Agreement, and adequate assurance of future performance) |
| March 12, 2020, at [•] [•]4:00 p.m. EST | Supplemental Limited Sale Objection Response Deadline |
| March 12 13, 2020, at [•] [•]9:30 a.m. EST | [Proposed] RSA/Sale Hearing |

---

4    This objection deadline applies to all objections to the Motion and the sale of the Assets to a Successful Bidder, with the exception of objections solely related to the identity of the Successful Bidder, any changes to the Form Purchase Agreement, and adequate assurance of future performance by the Successful Bidder.

**III.     Due Diligence**

**A.     Access to Diligence Materials**

To participate in the bidding process and to receive access to due diligence (the "**Diligence Materials**"), a party must submit to the Debtors (a) an executed confidentiality agreement in such form reasonably satisfactory to the Debtors, and (b) reasonable evidence demonstrating the party's financial capability to consummate a Transaction as reasonably determined by the Debtors. A party who qualifies for access to Diligence Materials pursuant to the prior sentence shall be a "**Potential Bidder**." The Supporting Lenders will be deemed a Potential Bidder at all times.

The Debtors will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence, as determined by the Debtors, including reasonable access to management, access to the electronic data room, and other information that a Potential Bidder may reasonably request, which information shall be substantially commensurate with that information given to the Supporting Lenders; *provided, however*, that the Debtors shall not be obligated to furnish any due-diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below). The availability of additional due diligence to a Qualified Bidder (as defined below) will cease on the Auction date; *provided, however*, that the Successful Bidder shall be permitted to continue to conduct due diligence until the closing of the Transaction. The Debtors reserve the right to withhold any Diligence Materials that the Debtors determine are business-sensitive or otherwise not appropriate for disclosure to a Potential Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder. The Debtors will make any diligence information available to the Supporting Lenders if such diligence has been made available to any other Potential Bidder.

Each Potential Bidder will be deemed to acknowledge and represent (as the Supporting Lenders have previously done) that it (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction to the extent of the assets and liabilities that are the subject of their Bid prior to making any such Bids, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or in its Modified Transaction Agreement (as defined below). All due-diligence requests must be directed to Jefferies, LLC, 520 Madison Avenue, New York, New York 10022 (Attn: Jeffrey Finger, Philip Engel, and Raynor Cordes).

**B.     Due Diligence from Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information and due-diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated Transaction.

4

## C.    Communications with Potential Bidders

There must be no communications with respect to Bids or potential Bids between and among Potential Bidders, or between Potential Bidders and the Consultation Parties (as defined below), unless the Debtors have previously authorized such communication (such authorization not to be unreasonably withheld) or with the participation of representative of the Debtors or their advisors; *provided* that nothing in these Bidding Procedures shall prohibit any Supporting Lender from communicating in any respect with any other Supporting Lender. Should any Potential Bidder attempt to communicate directly with a Consultation Party regarding a Bid or potential Bid, such Consultation Party shall immediately direct the Potential Bidder to the Debtors' counsel and investment banker. The Debtors reserve the right, in their reasonable business judgment, to disqualify any Potential Bidder(s) that have communications between and among themselves or with a Consultation Party regarding a Bid or potential Bid without the participation of the Debtors (or a representative of the Debtors) or the Debtors' prior consent (such consent not to be unreasonably withheld).

## IV.    Determination of Qualified Bid Status

To be eligible for consideration as a Qualified Bid and to participate in the Auction, each Potential Bidder (other than the Supporting Lenders, who shall be deemed a Qualified Bidder at all times) must deliver to the Debtors and their advisors a written, irrevocable offer (each, a "**Bid**") that must be determined by the Debtors, in their business judgment and in consultation with the Consultation Parties, to satisfy each of the following conditions:

(a)    *Good-Faith Offer; Partial Bids*: Each Bid must constitute a good-faith, *bona fide* offer to (i) purchase all or a portion of the Assets through a Section 363 Asset Sale or (ii) purchase the Reorganized Melinta Common Stock through a Plan Sale. A Bid may propose the acquisition of any one or more individual drug Assets (each, an "**Individual Drug Asset**"); *provided, however*, that partial Bids may be permitted only if (x) the combined consideration of the highest partial Bid received by the Debtors for each Individual Drug Asset exceeds the value of the Supporting Lender Transaction and (y) either (1) such partial Bids either close simultaneously unless otherwise agreed by the Supporting Lenders in their sole and absolute discretion or (2) the partial Bid closing first is an acquisition of assets relating only to Baxdela.

(b)    *Consideration*: Each Bid must (i) offer cash consideration for the Assets or the Reorganized Melinta Common Stock in an amount sufficient (when taken together with unacquired cash-on-hand on the expected closing date of the Transaction contemplated by such Bid, as forecasted in good faith by the Debtors) to repay in full, in cash, the amount of the then-current Credit Bid or (ii) if such bid proposes a Plan Sale, otherwise satisfy the requirements of Bankruptcy Code section 1129.

(c)    *Good-Faith Deposit*: Each Bid (other than the Supporting Lender Transaction) must be accompanied by a deposit in the amount of 10% of cash consideration of the Purchase Price (as defined in the Modified Transaction Agreement (as defined

below)), before any reductions for assumed liabilities (the "**Good-Faith Deposit**"). The Good-Faith Deposit shall come in the form of a wire transfer, certified check, or other form acceptable to the Debtors. Each Good-Faith Deposit will be deposited and held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. Requests for wire instructions should be directed to Jefferies, LLC, 520 Madison Avenue, New York, New York 10022 (Attn: Jeffrey Finger, Philip Engel, and Raynor Cordes).

(d)    *Same or Better Terms*: Each Bid must be on terms that in their totality are determined by the Debtors (in consultation with the Consultation Parties), in their business judgment, to be the same or better than the terms of the Supporting Lender Transaction in their totality.

(e)    *Executed Agreement*: Each Bid must include executed transaction documents, signed by an authorized representative of such Potential Bidder, pursuant to which the Potential Bidder proposes to effectuate a Transaction (a "**Modified Transaction Agreement**"). The Modified Transaction Agreement for a Bid that proposes a Section 363 Asset Sale must be based on the form of asset purchase agreement appended to the Motion (or filed subsequently as a supplement thereto) (the "**Form Purchase Agreement**");[5] the Modified Transaction Agreement for a Bid that proposes a Plan Sale must be based on the Restructuring Support Agreement and the Plan. Each Bid must also include a copy of the Modified Transaction Agreement marked against the Form Purchase Agreement or the Restructuring Support Agreement and the Plan, as applicable, to show all changes requested by the Potential Bidder (including those related to the assumption or assumption and assignment of contracts and licenses and other material terms such that the Debtors may determine how such Bid compares to the terms of the Form Purchase Agreement or the Restructuring Support Agreement and the Plan, as applicable, and competing Bids). Each Modified Transaction Agreement must provide (i) a commitment to close within two business days after all closing conditions are met and in any event no later than 75 days after the Auction (the "**Cash Collateral Outside Date**"), and (ii) a representation that the Potential Bidder will (A) make all necessary filings under the Hart Scott Rodino Antitrust Improvements Act of 1976, as amended (the "**HSR Act**") within five calendar days following the execution date of the Modified Transaction Agreement and (B) use at least "reasonable best efforts" to satisfy all regulatory conditions (including all necessary acts under the HSR Act).

(f)    *Minimum Bid*: A Bid must propose a minimum purchase price, including any assumption of ordinary-course liabilities (to the extent readily quantifiable) and any cure costs the Potential Bidder proposes to pay, that in the Debtors' reasonable business judgment (in consultation with the Consultation Parties) has a

---

[5]    The Form Purchase Agreement has been filed on the docket of the Chapter 11 Cases [Docket No. 248] and has been made available to Potential Bidders through the Debtors' electronic dataroom and is available on the Company's claims and noticing agent's website at http://www.kccllc.net/melinta.

value greater than the sum of: (i) (A) $140 million (representing the aggregate amount of Prepetition Credit Agreement Claims (and Expense Reimbursement, as applicable) to be satisfied pursuant to the Plan in connection with the Supporting Lender Transaction) *less* (B) the amount of unacquired cash-on-hand on the expected closing date of the Transaction contemplated by such Bid, as forecasted in good faith by the Debtors, *plus* (ii) either (A) in the case of a Bid structured as a Plan Sale or a Bid structured as a Section 363 Asset Sale of all of the Assets or the Hospital-Only Assets,[6] $1 million, or (B) in the case of any other partial Bid for one or more Individual Drug Assets, $500,000 (as applicable, the "**Overbid Amount**"), *plus* (iii) any incremental costs or cost savings, as the case may be, associated with closing the Transaction contemplated in such Bid as compared to the Supporting Lender Transaction (including incremental costs or cost savings, as the case may be, related to professional fees and time required to close such Transaction) (it being understood that if it would be less costly to close such Transaction than the Supporting Lender Transaction, then the amount contemplated by this clause (iii) will be a negative number) (the sum of (i) through (iii) being the "**Minimum Bid Amount**"); *provided* that notwithstanding the foregoing, all Bids must offer cash consideration in an amount (when taken together with unacquired cash-on-hand on the expected closing date of the Transaction contemplated by such Bid, as forecasted in good faith by the Debtors) sufficient to repay in full, in cash, the amount of the then-current Credit Bid, or, if such Bid proposes a Plan Sale, otherwise satisfy the requirements of Bankruptcy Code section 1129.

(g)     *Designation of Assigned Contracts and Leases*: A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Potential Bidder wishes to be assumed or assumed and assigned pursuant to the Transaction. A Bid must specify whether the Debtors or the Potential Bidder will be responsible for any cure costs associated with such assumption or assumption and assignment and include a good-faith estimate of such cure costs (which estimate shall be provided by the Debtors).

(h)     *Designation of Assumed Liabilities*: A Bid must identify all liabilities which the Potential Bidder proposes to assume.

(i)     *Corporate Authority*: A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Transaction and may not require, prior to consummation, the approval of the board of directors (or comparable governing body) and/or equity holders of such Potential Bidder; *provided* that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Transaction, then the Potential Bidder must furnish written evidence reasonably acceptable to the

---

[6]     The term "**Hospital-Only Assets**" means, collectively, Vabomore, Orbactiv, and Minocin for injection.

Debtors of the approval of the Transaction by the equity holder(s) of such Potential Bidder.

(j)     *Disclosure of Identity of Potential Bidder*: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets or the Reorganized Melinta Common Stock or otherwise participating in connection with such Bid (including the identity of any parent companies of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements, or understandings with the Debtors, the Supporting Lenders, or any other known, potential, prospective bidder, or Potential Bidder, or any officer, director, or equity holder of the Debtors.

(k)     *Proof of Financial Ability to Perform*: A Bid must include written evidence that the Debtors may reasonably conclude, in consultation with their advisors and the Consultation Parties, demonstrates that the Potential Bidder has the necessary financial ability to timely consummate a Transaction and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all contracts and leases to be assumed and assigned in such Transaction. Such information must include, *inter alia*, the following:

   (1)     contact names and telephone numbers for verification of financing sources;

   (2)     written evidence of the Potential Bidder's ability to finance its Bid with cash on hand, available lines of credit, uncalled capital commitments or otherwise available funds, and/or substantially final form financing commitment letter(s) with no diligence conditions, which letter(s) must be substantially complete and capable of execution prior to the RSA/Sale Hearing, in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a reputable financial institution (as determined in the Debtors' discretion) issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Transaction;

   (3)     the Potential Bidder's most current audited (if any) and latest unaudited financial statements or, if the bidder is an entity formed for the purpose of making a bid, the current audited (if any) and latest unaudited financial statements of the equity holder(s) of the bidder or such other form of financial disclosure, and a guaranty from such equity holder(s);

   (4)     a description of the Potential Bidder's *pro forma* capital structure; and

(5)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Potential Bidder has the ability to promptly close the Transaction.

(l)    *Regulatory and Third-Party Approvals*: A Bid must set forth each regulatory and third-party approval (including any consents required from counterparties to intellectual property licenses) required for the Potential Bidder to consummate the Transaction, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals, and the Debtors (in consultation with the Consultation Parties) may consider the timing of such approvals, and any actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible, when considering the other Bid Assessment Criteria (as defined below).

(m)    *Conditions/Contingencies*: Except as provided in the Restructuring Support Agreement or Form Purchase Agreement, a Bid must not be subject to material conditions or contingencies to closing, including, without limitation, governmental approval, obtaining financing, internal approvals, or further due diligence, other than regulatory and third-party approvals of the type addressed in paragraph IV(l). For the avoidance of doubt, the confirmation requirements prescribed by Bankruptcy Code section 1129 shall not be construed as impermissible conditions or contingencies for purposes of this paragraph IV(l).

(n)    *Bid Irrevocable*: A Bid must provide that it is irrevocable until two business days after the closing of the Transaction. Each Potential Bidder further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder (as defined below), as may be designated by the Debtors at the RSA/Sale Hearing or the Confirmation Hearing, as applicable, in the event the Successful Bidder fails to close as, provided in the Successful Bidder Transaction Agreement (as modified, if at all) and the Sale Order or the Confirmation Order, as applicable.

(o)    *As-Is, Where-Is*: A Bid structured as a Section 363 Asset Sale must include the following disclaimer in the Modified Transaction Agreement:

EXCEPT AS EXPRESSLY SET FORTH IN ARTICLE [•] OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY ANY SELLER PURSUANT TO THIS AGREEMENT (I) THE SELLERS MAKE NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, RELATING TO THE BUSINESS, THE ASSETS OR THE ASSUMED LIABILITIES, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO VALUE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR FOR ORDINARY PURPOSES, OR ANY OTHER MATTER, (II) THE SELLERS MAKE NO, AND HEREBY DISCLAIM ANY, OTHER REPRESENTATION OR WARRANTY REGARDING THE BUSINESS, THE ASSETS OR THE ASSUMED

LIABILITIES, AND (III) THE ASSETS AND THE ASSUMED LIABILITIES ARE CONVEYED ON AN "AS IS, WHERE IS" BASIS AS OF THE CLOSING, AND THE PURCHASER SHALL RELY UPON ITS OWN EXAMINATION THEREOF. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY ANY SELLER PURSUANT TO THIS AGREEMENT, THE SELLERS MAKE NO REPRESENTATION OR WARRANTY REGARDING ANY BUSINESS OTHER THAN THE BUSINESS, ANY ASSETS OTHER THAN THE ASSETS OR ANY LIABILITIES OTHER THAN THE ASSUMED LIABILITIES, AND NONE SHALL BE IMPLIED AT LAW OR IN EQUITY.

Each Bid that is structured as a Plan Sale must include substantially the same disclaimer, with appropriate modifications to reflect such structure.

(p)     *Time Frame for Closing*: A Bid by a Potential Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within 75 days following the conclusion of the Auction.

(q)     *Consent to Jurisdiction*: Each Potential Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, the Bidding Procedures, the Auction, any Modified Transaction Agreement, or the construction and enforcement of documents relating to any Transaction, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors, the Bidding Procedures, the Auction, any Modified Transaction Agreement, or the construction and enforcement of documents relating to any Transaction, and (iii) commit to the entry of a final order or judgment in any way related to the Debtors, the Bidding Procedures, the Auction, any Modified Transaction Agreement, or the construction and enforcement of documents relating to any Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

(r)     *No Bid Protections*: A Bid must not entitle the Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of payment or reimbursement, and, by submitting a Bid, the Potential Bidder waives the right to pursue a substantial contribution claim under Bankruptcy Code section 503 related in any way to the submission of its Bid or participation in any Auction. Each Potential Bidder presenting a Bid will bear its own costs and expenses (including legal fees) in connection with any proposed Transaction. For the avoidance of doubt, the Supporting Lenders shall not be considered a Potential Bidder for purposes of this paragraph.

A Bid received from a Potential Bidder that meets the above requirements, as determined by the Debtors, in their sole discretion, shall constitute a "**Qualified Bid**" (and such Potential Bidder, a "**Qualified Bidder**"); *provided* that if the Debtors receive a Bid prior to the Bid

Deadline that is not a Qualified Bid, the Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction or otherwise compete in the Auction as a Competing Bidder (defined below). The Supporting Lenders will be deemed a Qualified Bidder at all times.

All information disclosed by any Potential Bidder in connection with all of the preceding requirements will be made available by the Debtors to the Consultation Parties promptly upon the Debtors' receipt thereof but in any event no later than 24 hours following the earlier of receipt of a Bid and the Bid Deadline; *provided* that any confidential financing and/or equity commitment documents received from a Potential Bidder shall only be shared with the Consultation Parties on a professional-eyes'-only basis.

Within two business days after the Bid Deadline, the Debtors and their advisors (in consultation with the Consultation Parties) will determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. The Supporting Lender Transaction will be deemed a Qualified Bid, qualifying the Supporting Lenders as a Qualified Bidder to participate in the Auction. To the extent there is any dispute regarding whether a bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction.

Prior to the Auction, the Debtors and their advisors will evaluate Qualified Bids and Competing Bids identify the Bid that is, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, the highest or otherwise best Bid (the "**Starting Bid**"). In making such determination, the Debtors will take into account, among other things, the execution risk attendant to any submitted Bids. Within 24 hours of such determination, but in no event later than 24 hours before the start of the Auction, the Debtors will (a) notify the Supporting Lenders and the Consultation Parties as to which Bid is the Starting Bid and (b) distribute copies of the Starting Bid to each Bidder who has submitted a Qualified Bid or Competing Bid and the Consultation Parties.

If any Bid is determined by the Debtors not to be a Qualified Bid or Competing Bid, the Debtors will refund such Potential Bidder's Good-Faith Deposit and all accumulated interest thereon within ten business days after the Bid Deadline.

By submitting its Bid, each Potential Bidder is agreeing with each other Potential Bidder to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after the Auction.

## V.     Auction

For purposes hereof, all Qualified Bids (including the Supporting Lender Transaction) and all other Bids that the Debtors determine to admit to the Auction pursuant to clause (a) of the first paragraph of Section IX hereof are referred to, collectively, as the "**Competing Bids**," and the Bidders submitting such Bids, the "**Competing Bidders**." If one or more Competing Bids (other than the Supporting Lender Transaction) are received by the Bid Deadline, the Debtors will conduct an auction (the "**Auction**") to determine the highest or otherwise best Qualified Bid.

This determination shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the following: (a) the amount and nature of the total consideration to be received by the Debtors, including any assumed liabilities; (b) the number, type, and nature of any changes to the Form Purchase Agreement or the Restructuring Support Agreement and the Plan, as applicable, requested by each Qualified Bidder; (c) the extent to which such modifications or provisions are likely to delay closing of the Transaction and the cost to the Debtors of such modifications or delay; (d) the likelihood of the Qualified Bidder's ability to close a Transaction and the timing thereof; (e) the net benefit to the Debtors' estates; and (f) any other qualitative or quantitative factor the Debtors deem reasonably appropriate under the circumstances.

If no Competing Bids other than the Supporting Lender Transaction are received prior to the Bid Deadline, then the Auction will not occur, the Supporting Lender Transaction will be deemed the Successful Bid, and, subject to the termination rights under the Restructuring Support Agreement, the Debtors will pursue entry of an order by the Bankruptcy Court confirming the Plan (the "**Confirmation Order**") at a hearing to be scheduled (the "**Confirmation Hearing**").

## VI.   Procedures for Auction

The Auction, if necessary, shall take place on **March 6, 2020, at 9:00 a.m. (prevailing Eastern Time**) at the offices of [proposed] counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001, or such other place and time as the Debtors shall notify all Competing Bidders (including the Supporting Lenders) and, the Consultation Parties, and the U.S. Trustee. The Auction may be postponed, adjourned, or cancelled as the Debtors (in consultation with the Consultation Parties) deem appropriate. Reasonable notice as is reasonably practicable under the circumstances of such postponement or adjournment and the time and place for the commencement or resumption of the Auction or cancellation shall be given to all Competing Bidders and the U.S. Trustee. The Auction shall be conducted according to the following procedures:

## A.   Participation

Only (i)(a) the Debtors, (b) the Consultation Parties, (c) Vatera Healthcare Partners LLC, (d) The Medicines Company, and (e) the U.S. Trustee, and (f) any Competing Bidder (including the Supporting Lenders), in each case, along with their representatives and counsel; (ii) creditors of the Debtors who provide 48-hours' advance written notice of their intent to attend the auction to [proposed] counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, Illinois 60606-1720 (Attn: Ron E. Meisler and Christopher M. Dressel) and 920 North King Street, Wilmington, Delaware 19801 (Attn: Faiz Ahmad and Richard West); *provided* that the Debtors' right to object on an emergency basis to any such creditor's proposed attendance at the Auction is reserved; *provided, further,* that, the Debtors shall not be required to admit counsel or other representatives of any such creditor to the Auction; and (iii) such other parties as the Debtors shall determine, shall attend the Auction (such attendance to be in person), and only Competing Bidders (including the Supporting Lenders) will be entitled to make any Bids at the Auction.

**B.      The Debtors Shall Conduct the Auction**

The Debtors and their professionals shall direct and preside over the Auction, and the Auction shall be transcribed. Other than as expressly set forth herein, the Debtors may conduct the Auction in the manner they reasonably determine (in consultation with the Consultation Parties) will result in the highest or otherwise best Qualified Bid. The Debtors shall provide each participant in the Auction with a copy of the Modified Transaction Agreement associated with the Starting Bid. In addition, at the start of the Auction, the Debtors shall describe the terms of the Starting Bid. Each Competing Bidder (including the Supporting Lenders) participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or any Transaction and (b) has reviewed, understands, and accepts the Bidding Procedures.

All Competing Bidders, if any, may submit further Bids, along with a markup or a further markup of the applicable Modified Transaction Agreement. The Auction will be conducted in rounds. All Competing Bidders are required to bid in each round or they forfeit their right to participate in subsequent rounds. At any time, a Competing Bidder may request that the Debtors announce the then-current highest-and-best Bid. If requested, the Debtors shall use reasonable efforts to clarify any and all questions any Competing Bidder may have regarding the Debtors' announcement of the Starting Bid or the then-current and highest Bid.

**C.      Terms of Overbids**

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtors' announcement of the respective Starting Bid. Any Overbid for purposes of this Auction must comply with the following conditions:

(a)      *Minimum Overbid Increments*: Any Overbid after and above the respective Starting Bid or any subsequent Overbid shall be made in increments valued at not less than the applicable Overbid Amount. Additional consideration in excess of the amount set forth in the respective Starting Bid may include a Credit Bid, cash and/or non-cash consideration; *provided, however*, that an Overbid may propose non-cash consideration only to the extent permitted by paragraph IV(b); *provided, further, however*, that the value of such non-cash consideration shall be determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties. Notwithstanding the foregoing, (i) the Supporting Lenders will be entitled to make an Overbid for the full amount of their potential Credit Bid regardless of the increment between such Bid and the then-current highest alternative Bid and (ii) all Bids must offer cash consideration in an amount sufficient (when taken together with unacquired cash-on-hand on the expected closing date of the Transaction contemplated by such Bid, as forecasted in good faith by the Debtors) to repay in full, in cash, the amount of the then-current Credit Bid.

(b)      *Remaining Terms Are the Same as for Qualified Bids*: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; *provided, however*, that (i) the Bid Deadline shall not apply and (ii) no additional Good-Faith Deposit shall be required beyond the Good-Faith

13

Deposit previously submitted by a Qualified Bidder; *provided* that the Successful Bidder shall be required to make a representation prior to the conclusion of the Auction that it will provide any additional deposit necessary so that its Good-Faith Deposit will be equal to the amount of 10% of the cash purchase price contained in the Successful Bid. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes (if any) requested by the Qualified Bidder to the Restructuring Support Agreement and the Plan or a previously submitted Modified Transaction Agreement, in connection therewith (including any changes to the designated assigned contracts and leases and assumed liabilities). Any Overbid must remain open and binding on the Competing Bidder until and unless the Debtors accept a higher or otherwise better Overbid from another Qualified Bidder (except, to the extent required hereby, to serve as the Backup Bid).

At the Debtors' discretion (in consultation with the Consultation Parties), to the extent not previously provided (which shall be determined by the Debtors), a Competing Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) reasonably demonstrating such Competing Bidder's ability to close the Transaction proposed by such Overbid.

(c)     *Proof of Financial Ability to Perform*: An Overbid must include written evidence that the Debtors may reasonably conclude, in consultation with their advisors and the Consultation Parties, demonstrates that the Potential Bidder has the necessary financial ability to consummate a Transaction at the level of such Overbid.

## D.     Announcement and Consideration of Overbids

(a)     *Announcement of Overbids*: The Debtors shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, the basis for calculating such total consideration, and such other terms as the Debtors reasonably determine will facilitate the Auction.

(b)     *Consideration of Overbids*: Subject to the deadlines set forth herein, the Debtors reserve the right, in their reasonable business judgment, to make one or more continuances of the Auction to, among other things, facilitate discussions between the Debtors and individual Qualified Bidders or allow individual Competing Bidders to consider how they wish to proceed.

## E.     Closing the Auction

The Auction shall continue until there is one Qualified Bid that the Debtors determine in their reasonable business judgment (in consultation with the Consultation Parties) is the highest or otherwise best Qualified Bid at the Auction, and shall not close unless and until each Qualified Bidder has been given a reasonable opportunity to submit an Overbid at the Auction to any then-existing Overbids, subject, however, to the terms of Section IV.B hereof. Thereafter,

the Debtors shall select such Qualified Bid as the overall highest or otherwise best Qualified Bid (such Bid, the "**Successful Bid**," the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**," and the Qualified Bidder's transaction agreement, the "**Successful Bidder Transaction Agreement**"). In making this decision, the Debtors shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder submits fully executed Successful Bidder Transaction Agreement memorializing the terms of the Successful Bid.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall announce the Successful Bid, the Successful Bidder shall submit a fully executed Successful Bidder Transaction Agreement memorializing the terms of the Successful Bid, and the Debtors shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

**F.      Designation of Backup Bidder**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid at the Auction, as determined by the Debtors (in consultation with the Consultation Parties), in the exercise of their business judgment, will be designated as the backup bidder (the "**Backup Bidder**"); *provided* that the Supporting Lenders shall not be designated a Backup Bidder. The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "**Backup Bid**") open and irrevocable until the earlier of (a) 5:00 p.m. (prevailing Eastern Time) on the date that is at least (x) 45 calendar days after the date of entry of the Sale Order (if the Successful Bidder has bid in the form of a Section 363 Asset Sale), (y) 75 days after the date of entry of the Sale Order (if the Successful Bidder has bid in the form of a Section 363 Asset Sale and there has been a Cash Collateral Outside Date Extension) or (z) the Confirmation Order (if the Successful Bidder has bid in the form of a Plan Sale) (the "**Outside Backup Date**"), or (b) the closing of the Transaction with the Successful Bidder.

Following the RSA/Sale Hearing or the Confirmation Hearing, as applicable, if the Successful Bidder fails to consummate an approved transaction, the Backup Bidder will be deemed to have the new prevailing bid, and the Debtors will be authorized, but not required, to consummate the Transaction with the Backup Bidder without further order of the Bankruptcy Court, except, in the case of a Plan Sale, as required by Bankruptcy Code section 1127.

**G.      Additional Procedures**

The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any respect with the Bidding Procedures or the Restructuring Support Agreement.

**H.**    **Sale Is As Is/Where Is**

In the case of a Section 363 Asset Sale, except as otherwise provided in the Successful Bidder Transaction Agreement or the Sale Order, the Assets or any other assets of the Debtors sold pursuant to the Bidding Procedures, shall be conveyed at the closing of a transaction with a Successful Bidder in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**." Except as may be set forth in the Successful Bidder Purchase Agreement or the Sale Order, the Assets are sold free and clear of any and all liens, claims, interests, restrictions, charges, and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, restrictions, charges, and encumbrances to attach to the net proceeds of the sale with the same validity and in the same order of priority.

**I.**    **RSA/Sale Hearing / Confirmation Hearing**

If the Successful Bid is structured as a Section 363 Asset Sale, a hearing to consider approval of the Successful Bid (the "**RSA/Sale Hearing**") is currently scheduled to take place on [**March 12]13**, 2020, at [•] [•]**9:30 a**.m., prevailing Eastern Time, at the Bankruptcy Court. At the RSA/Sale Hearing, the Debtors will present such Successful Bid and/or such Backup Bid to the Bankruptcy Court for approval.

If the Successful Bid is structured as a Plan Sale, the Debtors will seek (a) assumption of the Debtors' RSA with the Supporting Lenders at the RSA/Sale Hearing and (b) approval of the Supporting Lender Transaction at a Confirmation Hearing to be held on a date to be determined.

**VII.**    **Return of Good-Faith Deposits of Qualified Bidders**

The Good-Faith Deposits of all Competing Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Good-Faith Deposit of any Competing Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Competing Bidder not later than ten business days after the Auction. If the Backup Bidder is not designated the Successful Bidder, the Good-Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder on the date that is the earlier of 72 hours after (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date. If the Successful Bidder is not the Supporting Lenders, the Good-Faith Deposit of the Successful Bidder shall be held until the closing of the Transaction and applied in accordance with the Successful Bid. In the case of a breach or failure to perform on the part of the Successful Bidder (including any Backup Bidder designated as a Successful Bidder), the defaulting Successful Bidder's Good-Faith Deposit shall be forfeited to the Debtors as liquidated damages, in addition to any and all rights, remedies and/or causes of action that may be available to the Debtors at law or in equity. The Debtors, on their behalf and on behalf of each of their respective estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures. Upon the return of the Good-Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

If the Successful Bidder timely closes the winning transaction, its Good-Faith Deposit shall be credited towards the purchase price.

## VIII.    The Consultation Parties

The Debtors shall consult with the Official Committee of Unsecured Creditors and any official committee appointed by the Bankruptcy Court and each of their respective advisors (collectively, the "**Consultation Parties**" and each, a "**Consultation Party**") as explicitly provided for in the Bidding Procedures.

## IX.    Reservation of Rights of the Debtors and Supporting Lenders

Except as otherwise provided in these Bidding Procedures, or the Bidding Procedures Order, the Debtors (in consultation with the Consultation Parties) reserve the right as they may reasonably determine to be in the best interest of their estates and in the exercise of their fiduciary duties to: (a) determine which bidders are Qualified Bidders and which Bids are Qualified Bids; *provided* that the Debtors, in consultation with the Consultation Parties, shall have the right to permit a Potential Bidder to attend and participate in the Auction as a Competing Bidder, even if its Bid is not otherwise a Qualified Bid, if the Debtors, in consultation with the Consultation Parties, believe in good faith that doing so will increase the potential for the submission of higher or otherwise better Bids; (b) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (c) reject any Bid (other than a Credit Bid by the Supporting Lenders) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (d) impose additional terms and conditions with respect to all Potential Bidders (other than the Supporting Lenders); (e) extend the deadlines set forth herein (with the approval of the Supporting Lenders); and (f) continue or cancel the Auction and/or RSA/Sale Hearing, including by announcement in open court without further notice (with the approval of the Supporting Lenders).

Notwithstanding anything to the contrary in these Bidding Procedures, the Bidding Procedures Order, or the Cash Collateral Order, (a) if (1) the Debtors, over the objection of the Supporting Lenders (as defined in the Restructuring Support Agreement), select as the Successful Bid a Bid that does not satisfy the requirements of paragraph (b), (e)(i), (e)(ii)(B), (i), (k)(2), or (m) of Section IV hereof, in each case as reasonably determined by the Requisite Supporting Lenders, or (2) the Successful Bid closes more than 45 days after the date of the Auction, then a Termination Event (as defined in the Cash Collateral Order) shall be deemed to occur under the Cash Collateral Order, unless the Successful Bidder makes an additional non-refundable deposit in the amount of 5% of the cash consideration of the Purchase Price, in which case the Cash Collateral Outside Date shall be extended to 75 days after the date of the Auction (a "**Cash Collateral Outside Date Extension**"), and (b) no Transaction (other than the Credit Bid of the Supporting Lenders) may be consummated unless it provides cash consideration in an amount (when taken together with actual unacquired cash-on-hand on the closing date of such Transaction) sufficient to repay in full, in cash, the amount of the highest Credit Bid of the Supporting Lenders.