# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **MELINTA THERAPEUTICS, INC.**, *et al.*, | **Case No. 19-12748 (LSS)** |
| Debtors.[1] | **(Jointly Administered)**<br>Related to Docket Nos. 16, 77, ___ |

## FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Melinta Therapeutics, Inc. ("**Melinta Therapeutics**" or "**Borrower**"), and its subsidiaries that are debtors and debtors-in-possession (the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Melinta Therapeutics, Inc. (0364); Cempra Pharmaceuticals, Inc. (5814); CEM-102 Pharmaceuticals, Inc. (4262); Melinta Subsidiary Corp. (9437); Rempex Pharmaceuticals, Inc. (6000); and Targanta Therapeutics Corporation (1077). The address of the Debtors' corporate headquarters is 44 Whippany Road, Suite 280, Morristown, New Jersey 07960.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an interim order

(the "**Interim Order**") and a final order (this "**Final Order**"), among other things:

    (i)      authorizing the Debtors to (a) continue to use the Cash Collateral (as defined below) (subject to the Budget (as defined below)) and all other Prepetition Collateral (as defined below) and (b) provide adequate protection to the Prepetition Secured Parties (as defined below) with respect to, *inter alia,* such use of their Cash Collateral and other Prepetition Collateral;

    (ii)     approving certain stipulations by the Debtors with respect to the Prepetition Credit Facility and Prepetition Loan Documents (each as defined below) and the Prepetition Collateral as set forth herein;

    (iii)    modifying the automatic stay as set forth herein, to the extent necessary, to implement and effectuate the foregoing and the other terms and provisions of the Interim Order and this Final Order;

    (iv)    (a) approving the waiver by the Debtors of any right to surcharge against the Adequate Protection Collateral, including pursuant to section 506(c) of the Bankruptcy Code or otherwise and (b) providing that the Prepetition Secured Parties are not subject to the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code or the equitable doctrine of "marshaling," or any other similar doctrine, with respect to the Adequate Protection Collateral; and

    (v)     granting related relief; and

the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C.

§ 1334 and the *Amended Standing Order of Reference from the United States District Court for*

*the District of Delaware*, dated February 29, 2012 (the "**Standing Order**"); and the Court having

authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the

Motion and the requested relief being a core proceeding that the Court can determine pursuant to

28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on

the Motion having been given to the parties listed therein, and it appearing that no other or

further notice need be provided; and the Court having reviewed and considered the Motion; and the Court having held an interim hearing on the Motion (the "**Interim Hearing**"); and, following the Interim Hearing, the Court having entered the *Interim Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 78]; and the Court having held a final hearing on the Motion (the "**Final Hearing**"); and the Debtors, the Committee (as defined below), Vatera Healthcare Partners LLC ("**Vatera**"), the Prepetition Secured Parties (as defined below), and The Medicines Company ("**MedCo**" and, together with the Debtors, the Committee, Vatera, and the Prepetition Secured Parties, the "**Settlement Parties**") having accepted and agreed to that certain Global Settlement Term Sheet, dated as of February 7, 2020 (the "**Global Settlement Term Sheet**"), pursuant to which, among other things, the Settlement Parties have consented to this Final Order; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and the Court having found that good and sufficient cause exists for the relief requested in the Motion; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.      *Petition Date*. On December 27, 2019 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing the Chapter 11 Cases.

B.      *Debtors-in-Possession*. The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      *Committee Formation*. On January 14, 2020, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors [Docket No. 104] (the "**Committee**").

D.      *Jurisdiction and Venue*. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the Standing Order. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue of the Chapter 11 Cases and related proceedings is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      *Notice*. The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 2002-1. Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and under the circumstances, no other or further notice of the Motion or the entry of this Final Order shall be required.

F.      *Debtors' Stipulations Regarding the Prepetition Credit Agreement.* After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Committee or any other party-in-interest to bring Challenges in accordance with paragraphs 15 and 16 below, the Debtors acknowledge, admit, stipulate, and agree that:

        (i)      <u>Prepetition Credit Facility</u>. Pursuant to that certain Facility Agreement, dated as of January 5, 2018 (as amended by that certain First Amendment to Facility Agreement, dated as of January 14, 2019, and as further amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed and delivered in connection therewith, including the Prepetition Security Agreement (as defined below), the "**Prepetition Loan Documents**"), among Melinta Therapeutics as Borrower, Cortland Capital Market Services, LLC, as administrative agent (in such capacity, the "**Prepetition Agent**"), and the lenders party thereto (the "**Prepetition Lenders**" and, together with the Prepetition Agent, the "**Prepetition Secured Parties**"), the Prepetition Lenders provided credit and other financial accommodations to the Borrower (the "**Prepetition Credit Facility**"), which Prepetition Credit Facility has been guaranteed on a joint-and-several basis by each of Melinta Therapeutics' Debtor subsidiaries pursuant to that certain Guaranty and Security Agreement, dated as of January 5, 2018, by and among the Debtors and the Prepetition Agent (the "**Prepetition Security Agreement**").

        (ii)      <u>Prepetition Secured Obligations</u>. As of the Petition Date, the Debtors were justly and lawfully indebted and liable to the Prepetition Secured Parties,

without defense, counterclaim, or offset of any kind, in respect of outstanding loans in the

aggregate principal amount of not less than $133,308,885 (the "**Principal Amount**"),

pursuant to and in accordance with the terms of the Prepetition Loan Documents (such

indebtedness, together with (a) accrued and unpaid interest thereon, (b) the Exit Fee (as

defined in the Prepetition Credit Facility), and (c) all other fees, expenses, charges,

liabilities, indemnities, and other obligations, in each case incurred in connection

therewith and due and payable by the Debtors pursuant to the terms of the Prepetition

Loan Documents, the "**Prepetition Secured Obligations**"); *provided, however*, that

(1) all rights of the Debtors and the Prepetition Secured Parties are reserved with respect

to whether the Prepayment Fee (as defined in the Prepetition Credit Agreement) would be

a Prepetition Secured Obligation in connection with any payment, repayment,

redemption, or prepayment of the loans under the Prepetition Credit Facility prior to

January 6, 2021, and (2) the Debtors acknowledge, admit, stipulate, and agree that, if not

a Prepetition Secured Obligation, an unsecured damages claim in an amount equal to or

greater than the Prepayment Fee (calculated in accordance with formula set forth in

Section 2.03(c)(i) of the Prepetition Credit Agreement, but disregarding the temporal

limitation set forth therein) will be due and owing by the Debtors for breach of the

Prepetition Credit Agreement in connection with any payment, repayment, redemption,

or prepayment of loans thereunder in these Chapter 11 Cases prior to January 6, 2021.

        (iii)      <u>Validity of Prepetition Secured Obligations</u>. (a) The Prepetition

Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the

Debtors, enforceable in accordance with the terms of the Prepetition Loan Documents

(other than in respect of the stay of enforcement arising from section 362 of the

Bankruptcy Code), and (b) no portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

(iv)    Prepetition Liens. The liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**"), pursuant to and in connection with the Prepetition Loan Documents, are (a) valid, binding, enforceable, non-avoidable, and properly perfected first-priority liens on and security interests in the Collateral (as defined in the Prepetition Security Agreement) (the "**Prepetition Collateral**") securing the Prepetition Secured Obligations, (b) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law, and (c) as of the Petition Date, subject only to those valid, enforceable, and non-avoidable liens that are (1) in existence on the Petition Date, (2) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (3) senior in priority to the Prepetition Liens granted to the Prepetition Secured Parties under and in connection with the Prepetition Loan Documents in accordance with applicable law (such liens, the "**Permitted Prior Liens**").

(v)    No Control. None of the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any Debtor's operations are conducted, or is a control person or insider of the Debtors by

virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Loan Documents.

(vi)    <u>No Claims or Causes of Action</u>. No claims, counterclaims, or causes of action of any kind or nature exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date, whether related to the Prepetition Loan Documents, any other agreement, the Debtors, or otherwise.

(vii)    <u>Releases</u>. Except as provided in paragraph F(ii)(1) hereof, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby unconditionally, irrevocably and fully, forever waives, discharges, and releases (1) any right to challenge any of the Prepetition Secured Obligations, and the validity, extent, proper perfection, and priority of the liens securing the Prepetition Secured Obligations and (2) the Prepetition Agent and the other Prepetition Secured Parties, and each of their respective former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors (each, solely in its capacity as such, and all of the foregoing, collectively, the "**Prepetition Secured Party Releasees**") of any and all claims relating to any of the Prepetition Loan Documents or any transactions contemplated under such documents, including any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the Prepetition Secured Obligations, the Prepetition Liens, or any other liens or claims of the Prepetition Secured Parties.

8

(viii)      Subject solely to Challenges brought in accordance with paragraphs 15 and 16 hereof, the Debtors' acknowledgements, stipulations, and releases (as set forth in this paragraph) shall be binding on the Debtors and their respective representatives, successors, and assigns, and on each of the Debtors' estates, all creditors thereof and holders of interests therein and each of their respective representatives, successors, and assigns, including any trustee or other representative appointed in the Chapter 11 Cases, whether such trustee or representative is appointed in chapter 7 or chapter 11.

G.      *Findings Regarding Use of Cash Collateral.*

(i)      Good and sufficient cause has been shown for the entry of this Final Order.

(ii)      The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b) and Bankruptcy Local Rule 4001-2, and have an immediate and critical need to continue to use the Prepetition Collateral (including "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code ("**Cash Collateral**")), in order to preserve, maintain, and maximize the value of their assets and businesses and to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, to fund the sale process set forth in the Bidding Procedures and Bidding Procedures Order and administer these Chapter 11 Cases, and to satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other

Prepetition Collateral is necessary and vital to the preservation and maintenance of the going-concern values of the Debtors and to the prosecution of these Chapter 11 Cases.

       (iii)       Based on the Motion, and the record presented to the Court at the Interim Hearing and the Final Hearing, (a) the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration and (b) Prepetition Secured Parties are entitled to the adequate protection provided in this Final Order.

       (iv)       Absent order of this Court and the provision of adequate protection, consent of the Prepetition Secured Parties is required for the Debtors' use of Cash Collateral and the other Prepetition Collateral. The Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral in accordance with and subject to the terms and conditions in this Final Order.

       (v)       The use of the Prepetition Collateral has been negotiated in good faith and at arm's-length among the Debtors and the Prepetition Secured Parties.

       (vi)       The Prepetition Secured Parties have acted in good faith regarding the Debtors' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors' Chapter 11 Cases and continued operation of their businesses (including the granting of Adequate Protection), in accordance with the terms hereof, and the Prepetition Secured Parties shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(vii)    Nothing in the Interim Order or this Final Order shall (a) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order, (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior), or (c) prejudice, limit, or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different, or additional adequate protection with respect to the Prepetition Collateral from and after the Petition Date or assert the interests of any of the Prepetition Secured Parties and the rights of the Debtors and any other party-in-interest to object to and contest such relief are hereby preserved.

H.    *Budget.* Attached hereto as **Exhibit 1** is a 13-week cash flow forecast setting forth all (i) actual cash receipts and cash disbursements on a weekly basis for the period beginning on the Petition Date and ending on February 1, 2020, and (ii) projected cash receipts and cash disbursements on a weekly basis for the period beginning on February 2, 2020, and ending on March 31, 2020 (the "**Initial Budget**"). The Initial Budget is an integral part of this Final Order and has been relied upon by the Prepetition Secured Parties and the Committee in consenting to this Final Order and the Debtors' use of the Cash Collateral.

I.    *Permitted Prior Liens; Continuation of Prepetition Liens.* Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including the Debtors, the Prepetition Secured Parties, or the Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection,

or extent of any alleged Permitted Prior Lien. The Prepetition Liens are continuing liens, and the

Adequate Protection Collateral is and will continue to be encumbered by such liens.

**IT IS HEREBY ORDERED THAT**:

1.      *Motion Granted*. The relief requested in the Motion is granted on a final basis in

accordance with the terms and conditions set forth in the Budget and this Final Order. Any

objections to the Motion with respect to the entry of this Final Order that have not been

withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied

and overruled.

2.      *Authorization to Use Cash Collateral*.

(a)      Subject to the terms and conditions of this Final Order, the Court hereby

authorizes the Debtors' use of Cash Collateral during the period beginning on the Petition

Date and ending on the Termination Date (as defined herein), solely for the

disbursements set forth in the Budget (as such budget may be modified from time to time

by the Debtors with the consent of the Prepetition Lenders as set forth in this paragraph,

including pursuant to any Supplemental Budget (as defined below), the "**Budget**"),

subject to any Permitted Variances (as defined below). The Debtors shall deliver to the

Prepetition Secured Parties, no later than by 11:59 p.m. (Eastern Time) on Thursday,

December 26, 2019, and every second Wednesday thereafter (or, to the extent such day is

not a business day, the next business day thereafter) (each such date, a "**Budget Delivery

Date**"), a Budget covering the period beginning on Sunday of the following week and

ending 13 weeks thereafter (each such Budget, a "**Supplemental Budget**"); *provided* that

the period covered by the initial Budget shall begin no later than the Petition Date. Each

12

Supplemental Budget shall be subject to the written approval of the Prepetition Lenders (which may be delivered by email), and, upon the receipt of such approval, the Supplemental Budget shall become the Budget for the period covered thereby for purposes of this Final Order, without further notice, hearing, or Court order.

(b)      Without modifying the Debtors' reporting obligations under the Interim Order for the period of time between the Petition Date and the date of this Final Order, the Debtors shall deliver to the Prepetition Secured Parties no later than by 11:59 p.m. (Eastern Time) on Wednesday, January 29, 2019, and every Wednesday thereafter (or, to the extent such day is not a business day, the next business day thereafter) (each such date, a "**Reporting Date**"), (i) a variance report in form reasonably satisfactory to the Prepetition Lenders setting forth for the period ending on the Saturday immediately preceding such Reporting Date (the "**Measurement Date**") and beginning (x) for the initial report, the Petition Date and (y) for each subsequent report, four weeks prior to such Measurement Date (each such period, a "**Testing Period**") (A) any variances (whether positive or negative) of actual total operating receipts or total operating expenses from the approved Budget for such Testing Period and (B) an explanation, in reasonable detail, for any variances (other than Permitted Variances), (ii) a report of the aggregate Liquidity of the Debtors in form reasonably satisfactory to the Prepetition Lenders and (iii) a schedule in form reasonably satisfactory to the Prepetition Lenders of professional fees actually paid by the Debtors since the Petition Date on a cumulative basis as of the Measurement Date.

(c)      During each Testing Period, the Debtors shall not permit:

(i)        the actual amount of aggregate operating receipts of the Debtors to be less than 85% of the projected aggregate operating receipts of the Debtors as set forth in the Budget for such Testing Period (such variance, the "**Permitted Receipts Variance**").

(ii)        the actual amount of aggregate operating expenses of the Debtors to exceed the projected aggregate operating expenses of the Debtors in the Budget for such Testing Period by more than 15% (such variance, the "**Permitted Expenditures Variance**," and together with the Permitted Receipts Variance, the "**Permitted Variances**"). All provisions in this Final Order relating to the Debtors' compliance with the Budget shall be construed as being qualified by the phrase "subject to Permitted Variances."

(d)        For the purposes of determining the Debtors' compliance with the Budget, to the extent that (i) the Debtors' budgeted operating expenses during a particular one-week period exceed the amount of operating expenses actually paid during such one-week Budget period (the amount of such excess, an "**Expense Carryforward**") or (ii) the Debtors' actual operating receipts during a particular one-week Budget period exceed the Debtors' budgeted operating receipts for such one-week Budget period (the amount of such excess, a "**Receipts Carryforward**"), then the Debtors shall be entitled to (x) apply the Expense Carryforward to decrease the amount of operating expenses actually paid during the two immediately subsequent one-week Budget periods on a dollar-for-dollar basis and (y) apply the Receipts Carryforward to increase the amount of operating receipts of the Debtors during the two immediately subsequent one-week Budget periods on a dollar-for-dollar basis, in each case, without double-counting.

14

(e)     The Debtors shall not permit, at any time, their aggregate Liquidity[4] to be less than $28,000,000 (the "**Minimum Required Liquidity**") and shall notify the Prepetition Secured Parties within one calendar day if the Debtors' aggregate Liquidity at any time falls below the Minimum Required Liquidity (a "**Liquidity Termination Event**").

(f)     The Debtors shall deliver to the attorneys and financial advisor to the Committee each Supplemental Budget and each report described in paragraphs 2(a) and 2(b) substantially contemporaneously with the delivery thereof to the Prepetition Secured Parties.

3.     *Release of Prepetition Secured Party Releasees*. The release set forth in paragraph F(vii) hereof in favor of the Prepetition Secured Party Releasees was approved upon entry of the Interim Order, subject to the provisions in paragraphs 15 and 16 below.

4.     *Adequate Protection of Prepetition Secured Parties*. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, for the reasons provided for under the Bankruptcy Code, including the provisions of this Final Order granting priming liens on the Prepetition Collateral, the Debtors' use, sale, or lease of Cash Collateral and other Prepetition Collateral, the imposition of the automatic stay, and/or the Carve-Out (as defined herein). In consideration of the foregoing, the Prepetition Secured Parties are hereby granted the following (collectively, "**Adequate Protection**"):

---

[4]     "**Liquidity**" shall mean unrestricted and unencumbered cash and cash equivalents (except as restricted or encumbered by the terms of the Interim Order, this Final Order, or the Prepetition Loan Documents).

(a)    *Adequate Protection Liens.* The Prepetition Agent (for itself and for the benefit of the Prepetition Lenders) is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements, or other agreements) a valid, perfected, binding and continuing security interest in and lien upon any and all tangible and intangible prepetition and postpetition assets of the Debtors, whether existing on the Petition Date or thereafter acquired, including any and all cash of the Debtors (subject to the Carve-Out) and any investment of such cash, inventory, accounts receivable, other rights to payment, whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, the proceeds of any and all commercial tort claims of the Debtors of any kind or nature, any claim or rights under section 549 of the Bankruptcy Code, rights under license agreements and other intellectual property, letter-of-credit rights, investment property and support obligations, all books and records pertaining to the property described in this paragraph, all property of the Debtors held by any Prepetition Secured Party, all other goods (including fixtures) and personal property of the Debtors, whether tangible or intangible and wherever located, capital stock of subsidiaries, wherever located, and, to the extent not covered by the foregoing, all other assets or property of the Debtors, whether tangible, intangible, real, personal or mixed, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, excluding, however, the Debtors' claims and causes of action under sections 502(d), 506(c), 544,

16

545, 547, 548, 550, and 553 of the Bankruptcy Code and under any applicable state

Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform

Fraudulent Conveyance Act and similar statutes or common law, and any commercial tort

claims (collectively, the "**Avoidance Actions**," which, for the avoidance of doubt,

excludes the Debtors' claims or causes of action under section 549 of the Bankruptcy

Code or similar state or other applicable law and the proceeds of each of the foregoing),

but including any proceeds or property recovered, unencumbered or otherwise from

Avoidance Actions, whether by judgment, settlement, or otherwise ("**Avoidance**

**Proceeds**") (collectively, the "**Adequate Protection Collateral**," and the liens granted

thereon as Adequate Protection under the Interim Order and this Final Order, the

"**Adequate Protection Liens**"), which Adequate Protection Liens shall secure the

Adequate Protection Obligations, and shall be subject and subordinate only to the Carve-

Out and the Permitted Prior Liens.

(b)      *Adequate Protection Superpriority Claims.* The Prepetition Agent (for

itself and for the benefit of the Prepetition Lenders) is hereby granted an allowed

superpriority administrative expense claim as provided for in section 507(b) of the

Bankruptcy Code, for and equal in amount to the aggregate diminution in the value of the

Prepetition Secured Parties' prepetition security interests in the Prepetition Collateral

from and after the Petition Date with, except as set forth in this Final Order, priority in

payment over any and all administrative expenses of the kind specified or ordered

pursuant to any provision of the Bankruptcy Code (the "**Adequate Protection**

**Superpriority Claims**"), which Adequate Protection Superpriority Claims (subject to the

Carve-Out) shall have recourse to and be payable from all of the Adequate Protection

17

Collateral, subject to the Carve-Out. The Adequate Protection Superpriority Claims shall be subject and subordinate only to the Carve-Out and the Permitted Prior Liens.

(c)    *Prepetition Secured Parties' Fees and Expenses.* The Debtors shall make current cash payments of the reasonable and documented prepetition and postpetition fees and expenses incurred by the Prepetition Secured Parties in connection with the Chapter 11 Cases in any manner (including (x) the annual, non-refundable agency fee for calendar year 2020 specified in the Prepetition Credit Agreement, (y) in the case of the advisors to the Prepetition Lenders, Sullivan & Cromwell, LLP, Houlihan Lokey Capital, Inc. and Landis Rath & Cobb LLP, and (z) in the case of the advisors to the Prepetition Agent, Holland & Knight LLP and Landis Rath & Cobb LLP (it being understood that the fees and expenses of Landis Rath & Cobb LLP shall be allocated as appropriate, and without duplication, between the Prepetition Lenders and the Prepetition Agent) (the "**Adequate Protection Expenses**" and together with the Adequate Protection Superpriority Claims, the "**Adequate Protection Obligations**")) promptly upon receipt of invoices therefor, which payments (to the extent for fees, expenses, and disbursements of professional advisors incurred after the Petition Date) shall be made in accordance with the procedures set forth in paragraph 9 hereof with respect to payment of the fees and expenses of the Prepetition Secured Parties.

(d)    *Additional Adequate Protection.* As additional Adequate Protection, the Debtors agree as follows:

(i)    The Debtors shall, as soon as practicable in advance of the filing with the Bankruptcy Court, but no later than two business days prior to filing, deliver to the Prepetition Secured Parties copies of all material documents,

18

motions and pleadings related to the Interim Order and this Final Order and provide the Prepetition Lenders with a reasonable opportunity to review and comment on all such documents, which documents shall be reasonably satisfactory to the Prepetition Lenders;

(ii) The Debtors shall deliver to the Prepetition Secured Parties promptly after the same are available, copies of all reporting and information related to any proposed asset sales or other dispositions;

(iii) The Debtors shall allow the Prepetition Secured Parties access to, upon reasonable notice during normal business hours, all financial advisors and advisors engaged by the Debtors (which engagement, with respect to any financial professionals and advisors engaged after the Petition Date, shall be consistent with the Budget and on terms and conditions reasonably satisfactory to the Prepetition Lenders);

(iv) The Debtors shall deliver to the legal counsel to the Prepetition Secured Parties, at least two business days in advance of filing with the Court, copies of all proposed non-ministerial or non-administrative orders to be entered by the Court or any other court having jurisdiction over the insolvency proceeding of any Debtor pending outside of the Court in respect of first day motions and applications ("**First Day Orders**") and second day motions and applications ("**Second Day Orders**," together with the First Day Orders, the "**Initial Orders**") and motions seeking approval of the Initial Orders, which shall be in form and substance reasonably satisfactory to the Prepetition Lenders except for the Interim Order and this Final Order;

19

(v)     The Debtors shall provide the Prepetition Secured Parties with reasonable access to non-privileged information (including historical information) and relevant personnel regarding strategic planning, cash and liquidity management, operational and restructuring activities, in each case subject to customary confidentiality restrictions;

(vi)     The Debtors shall deliver to counsel to the Prepetition Secured Parties (i) as soon as reasonably practicable and, in any event, at least one business day prior to filing or distribution, copies of all proposed non-ministerial or non-administrative pleadings, motions, applications, orders, financial information, responses to requests for information, whether informal or ordered by the Court, and (ii) contemporaneously with delivery to such party, any other documents distributed by or on behalf of the Debtors to the Committee or unofficial committee appointed or appearing in the Chapter 11 Cases or any other party in interest (except in any such party's capacity as a Consultation Party, as defined in the Bidding Procedures), and shall consult in good faith with the Prepetition Lenders' advisors regarding the form and substance of any such document; *provided* that any pleadings seeking emergency relief shall be provided to the Prepetition Secured Parties solely to the extent reasonably practicable;

(vii)     If not otherwise provided through the Court's electronic docketing system, as soon as available, the Debtors shall deliver to counsel to the Prepetition Secured Parties promptly as soon as available, copies of all final pleadings, motions, applications, orders, financial information, and other documents filed by or on behalf of the Debtors with the Court in the Chapter 11 Cases, or distributed

20

by or on behalf of the Debtors to the Committee or unofficial committee appointed or appearing in the Chapter 11 Cases;

(viii)    The Debtors shall provide the Prepetition Secured Parties no less than five business days' (or such shorter notice acceptable to the Prepetition Lenders in their reasonable discretion) prior written notice prior to any assumption or rejection of any Debtor's material contracts or material non-residential real property leases pursuant to section 365 of the Bankruptcy Code; and

(ix)    If the Debtors select a Successful Bidder other than the Prepetition Lenders at the Auction (as defined in the Bidding Procedures) (or otherwise enter into an agreement to sell substantially all of their assets to third parties outside the ordinary course of business):

(1)    If the Debtors continue to use the Cash Collateral after March 27, 2020, a $500,000 adequate protection payment shall be added to the Adequate Protection Superpriority Claims.

(2)    The Debtors shall be authorized and directed to pay to the Prepetition Agent, within two business days of the conclusion of the Auction, all accrued and unpaid interest due and payable under the Prepetition Credit Facility as of such date, including postpetition interest accruing on any overdue interest as of such date, and postpetition interest shall thereafter accrue on the outstanding Principal Amount of the loans and any overdue interest under the Prepetition Credit Facility and shall be payable on each Interest Payment Date (as defined in the Prepetition Credit Agreement); *provided* that the right of the United States Trustee and, following the termination of the Global Settlement Term Sheet, the Committee, to argue that payment of any postpetition fees or interest pursuant to this paragraph 4(d)(ix)(2) was not permitted under Bankruptcy Code section 506(b) is preserved.

21

(3)    The Debtors shall provide the Prepetition Secured Parties with twice-weekly telephonic updates on the status and timing of the consummation of the transaction with such Successful Bidder.

5.    *Carve-Out.*

(a)    As used in this Final Order, the "**Carve-Out**" shall mean a carve-out from the Adequate Protection Superpriority Claims, the Adequate Protection Liens, and the Prepetition Liens, in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, *plus* interest at the statutory rate (without regard to the Carve-Out Trigger Notice); (ii) all reasonable fees and expenses incurred by a trustee and payable under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $50,000 (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed by final order of the Court at any time, for the Debtors' professionals and the Committee's professionals, respectively, all unpaid fees and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code or by the Committee pursuant to sections 328 and 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**") at any time on or before the date of delivery by the Prepetition Lenders or the Prepetition Agent of a Carve-Out Trigger Notice (such day, the "**Carve-Out Trigger Date**") and, whether allowed by the Court prior to or after the Carve-Out Trigger Date; (iv) to the extent allowed by final order of the Court, Professional Fees incurred after the Carve-Out Trigger Date in an amount not to exceed $2,000,000 (the "**Post Trigger Date Carve-Out Amount**"); and (v) amounts held as of the Petition Date as a retainer by the Professional Persons retained by the Debtors to be used to pay Professional Fees allowed by final order of the Court

(clauses (i) through (v), collectively, the "**Carve**-**Out Amount**"). For purposes of the foregoing, "**Carve**-**Out Trigger Notice**" shall mean a written notice delivered by email by the Prepetition Lenders or Prepetition Agent to the Debtors' lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence of a Termination Event, stating that the Post Trigger Date Carve-Out Amount has been invoked.

(b)      Prior to the occurrence of the Carve-Out Trigger Date, the Debtors are authorized, for the Debtors' Professional Persons and the Committee's Professional Persons, respectively, to pay Professional Fees that are authorized to be paid in accordance with any order entered by the Court establishing procedures for the payment of compensation to Professional Persons in these Chapter 11 Cases, as the same may be due and payable, and such payments shall not reduce the Carve-Out Amount.

(c)      The Debtors shall maintain the Post Trigger Date Carve-Out Amount in a segregated non-interest bearing account (the "**Carve**-**Out Account**"). Within two business days after the delivery of a Carve-Out Trigger Notice, the Debtors shall deposit into the Carve-Out Account cash in an amount equal to the then incurred but unpaid Professional Fees (the "**Pre Trigger Date Carve-Out Reserve**" and, together with the Post Trigger Date Carve-Out Amount, collectively, the "**Carve**-**Out Reserve**").

(d)      The Carve-Out Reserve shall be held in the Carve-Out Account in trust to pay the Professional Fees and other obligations benefiting from the Carve-Out, and the Carve-Out Reserve shall be available only to satisfy such obligations benefiting from the Carve-Out until paid in full.

23

(e)    Notwithstanding anything to the contrary herein, the Prepetition Agent on behalf of itself and the other Prepetition Secured Parties, shall not sweep or foreclose on the Carve-Out Reserve. Following satisfaction in cash in full of all obligations benefitting from the Carve-Out, the Debtors shall remit any residual cash in the Carve-Out Reserve to the Prepetition Agent. Further, notwithstanding anything to the contrary herein, (i) the failure of the Carve-Out Reserve to satisfy in full the allowed Professional Fees shall not affect the priority of the Carve-Out and (ii) in no way shall the Carve-Out, the Post Trigger Date Carve-Out Amount or the Carve-Out Reserve, or any of the foregoing be construed as a cap or limitation on the amount of the allowed Professional Fees due and payable by the Debtors.

(f)    Notwithstanding anything to the contrary herein, the Carve-Out shall be senior to the Adequate Protection Superpriority Claims, the Adequate Protection Liens, the Prepetition Liens, and all other liens and claims granted under the Interim Order and this Final Order or otherwise securing or in respect of any Adequate Protection Obligations.

6.    *No Direct Obligation to Pay Allowed Professional Fees.* Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Notwithstanding any provision in this paragraph 6 to the contrary, no portion of the Carve-Out, any Cash Collateral, or any Adequate Protection Collateral shall be utilized for the payment of professional fees and disbursements to the extent restricted under paragraph 10 hereof. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the

24

Debtors, the Committee, any other official or unofficial committee in these Chapter 11 Cases or any successor case or of any other person or entity, or shall affect the right of any Person, including the Prepetition Secured Parties, to object to the allowance and payment of any such fees and expenses.

7.      *Termination of Cash Collateral Use*. In the absence of a further order of this Court, and notwithstanding anything herein to the contrary except the Carve-Out, and after delivery (including delivery by electronic mail or facsimile) of notice of the occurrence of a Termination Event by the Prepetition Lenders or Prepetition Agent to the Debtors, the Committee, the Prepetition Secured Parties, and the U.S. Trustee, and upon the expiration of the Remedies Notice Period, the Debtors shall no longer be authorized pursuant to this Final Order to use Cash Collateral other than with respect to the Carve-Out, and such Cash Collateral use shall automatically terminate on the date upon which any of the following events occurs (such date being referred to herein as the "**Termination Date**," and each of the following events, a "**Termination Event**"); *provided* that, notwithstanding anything to the contrary herein, during the five business day period following the Termination Event, the Debtors may use Cash Collateral to pay regular payroll and other expenses critical to keep the business of the Debtors operating solely in accordance with the Budget:

(a)      [Reserved]

(b)      April 30, 2020, unless extended with the written consent of the Prepetition Lenders, which extension shall be effective without further application to, or approval by, this Court;

(c)      The filing by any Debtor or any of its controlled affiliates (collectively, the "**Debtor Parties**") of a reorganization plan, other than (i) the Plan contemplated by

25

(and as defined in) the Restructuring Support Agreement or (ii) a plan to which the Prepetition Lenders have provided their prior written consent (to be given in their sole and absolute discretion);

(d)      (i) The Interim Order or this Final Order or any material provision thereof or any order entered in connection with the Bidding Procedures and the sale transaction contemplated thereby is reversed, vacated, stayed, or otherwise ceases to be in full force and effect, (ii) entry of an order without the prior consent of the Prepetition Lenders amending, supplementing, or otherwise modifying the Interim Order or this Final Order or any order entered in connection with the Bidding Procedures and the sale transaction contemplated thereby (other than immaterial modifications to correct grammatical or typographical errors), or (iii) failure by any Debtor Party to perform under any order entered by the Bankruptcy Court in a material respect;

(e)      The filing of a motion by any Debtor Party seeking entry of, or the entry of any order without the prior consent of the Prepetition Lenders that authorizes any of the following:

(i)      a priority claim or administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, or 1114 of the Bankruptcy Code) (and all rights to charge the Collateral and all collateral securing the Prepetition Secured Obligations under section 506(c) shall be waived) equal or superior to the priority

26

claim of the Prepetition Secured Parties in respect of the Adequate Protection

Obligations, except with respect to the Carve-Out;

(ii)    except pursuant to the Interim Order and this Final Order, any lien

on any Adequate Protection Collateral having a priority equal or superior to the

Adequate Protection Liens, except with respect to the Carve-Out;

(iii)    any payments to critical vendors other than in accordance with the

Budget, or any order that seeks authority to make such payments other than in

accordance with the Budget;

(iv)    except as set forth in the Bidding Procedures and the Bidding

Procedures Order, the consummation of any sale of all or substantially all the

assets of the Debtors pursuant to section 363 of the Bankruptcy Code, through a

confirmed plan of reorganization in the Chapter 11 Cases or otherwise;

(v)    except as consented to by the Prepetition Lenders, the return of the

Debtors' property pursuant to section 546(h) of the Bankruptcy Code;

(vi)    authorizing or directing payment of any claim or claims under

section 506(c) or 552(b) of the Bankruptcy Code or requiring the marshaling of

assets or any other similar remedy against or with respect to any of the Adequate

Protection Collateral or from the Prepetition Agent or any of the Prepetition

Lenders, to the extent not dismissed or denied within 45 days after the filing of

such motion;

(vii)    except as set forth in the Interim Order, or this Final Order,

granting of (A) relief from the automatic stay in the Chapter 11 Cases to permit

foreclosure or enforcement on, or any right or remedy with respect to any material

27

asset of the Debtor or (B) any relief that would impair the material rights and interests of the Prepetition Agent and the Prepetition Lenders in their capacities as such (regardless of whether such relief was sought by the Debtors or a third party); and/or

(viii)   payment of or granting adequate protection with respect to Prepetition Secured Obligations, other than as set forth in the Interim Order or this Final Order, and the Budget.

(f)   The payment of any Indebtedness or other payables or liabilities, except as otherwise provided in the Budget and as permitted by the Interim Order or this Final Order;

(g)   The occurrence of a Liquidity Termination Event;

(h)   The occurrence of a deemed Termination Event under the Bidding Procedures;

(i)   The dismissal of any of the Chapter 11 Cases or conversion of any of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, or the filing of any motion to so dismiss or convert brought by any Debtor;

(j)   Appointment of a Chapter 11 trustee or an examiner or any similar insolvency official or administrator, with expanded powers, or the filing of any motion to so appoint brought by any Debtor;

(k)   Any of the Adequate Protection Liens or the Adequate Protection Superpriority Claims granted under the Interim Order or this Final Order cease to be valid, perfected, and enforceable in any respect;

(l)     Any Debtor Party (or any person claiming by or through any Debtor Party, with the consent of any Debtor Party) shall obtain court authorization to commence, or shall commence, join in, assist, or otherwise participate as an adverse party in any suit or other proceeding against the Prepetition Agent or any of the Prepetition Lenders relating to the Interim Order or this Final Order or the Prepetition Credit Agreement;

(m)     [Reserved]

(n)     Any Debtor Party (or any person on behalf of any Debtor Party, with the consent of any Debtor Party), shall file a motion or other pleading seeking, or otherwise consenting to, any of the matters set forth in subparagraphs (i) through (l) above or the granting of any other relief that if granted would give rise to a Termination Event;

(o)     An order of this Court or any other court of competent jurisdiction shall be entered reversing, amending, supplementing, staying, vacating, or otherwise amending, supplementing, or modifying the Interim Order or this Final Order, without the prior written consent of the Prepetition Lenders, or a Debtor Party shall apply for the authority to do so;

(p)     Except for a Challenge brought pursuant to paragraph 15, this Final Order shall cease to create valid and perfected liens on the Adequate Protection Collateral of any Debtor or to be in full force and effect, shall have been reversed, modified, amended, stayed, vacated, or subject to stay pending appeal, in the case of modification or amendment, without prior written consent of the Prepetition Lenders;

(q)     Except for a Challenge brought pursuant to paragraph 15 hereof, an order shall have been entered by this Court avoiding or requiring disgorgement by any of the

Prepetition Lenders under the Prepetition Credit Agreement of any amounts received in respect of obligations thereunder;

(r)    An order shall have been entered by this Court or any other court of competent jurisdiction terminating or modifying the exclusive right of any Debtor to file a Chapter 11 plan pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the Prepetition Lenders;

(s)    Any of the Debtor Parties shall fail to comply in any material respect with this Final Order;

(t)    [Reserved]

(u)    Except for a Challenge brought pursuant to paragraph 15, an order shall have been entered by this Court precluding the Prepetition Agent and/or the Prepetition Lenders from "credit bidding" the full amount of the Prepetition Secured Obligations (other than the Prepayment Fee (as defined in the Prepetition Credit Agreement)) in accordance with the terms and conditions of this Final Order and/or the Bidding Procedures, or any of the Debtor Parties shall seek, support, or fail to contest in good faith the entry of any such order;

(v)    Any Debtor Party shall take any action in support of any matter set forth in this paragraph 7 or any other person shall do so and such application is not contested in good faith by the Debtor Parties and the relief requested is granted in an order that is not stayed pending appeal;

(w)    Any Debtor Party shall obtain court authorization to commence, or shall commence, join in, assist, or otherwise participate as an adverse party in any suit or other proceeding seeking, or otherwise consenting to (i) the invalidation, subordination, or

30

other challenging of the Adequate Protection Superpriority Claims and Adequate

Protection Liens granted to the Prepetition Agent and the Prepetition Lenders in the

Interim Order or this Final Order or (ii) any relief under section 506(c) of the Bankruptcy

Code with respect to any Adequate Protection Collateral of any Debtor;

(x)     Any Debtor Party shall challenge, support, engage in, or encourage a

challenge of (i) the validity, perfection, priority, extent, or enforceability of any of the

Prepetition Loan Documents of the liens securing the Prepetition Secured Obligations,

including, without limitation, seeking to equitably subordinate or avoid the Prepetition

Liens securing such Prepetition Secured Obligations or (ii) any payments made to any

Prepetition Lender under the Prepetition Credit Agreement with respect to the obligations

thereunder (other than to challenge the occurrence of a Termination Event).

Notwithstanding the foregoing, nothing in this paragraph is intended to, nor shall it,

prevent the Debtor Parties from responding to information requests made by the

Committee in the exercise of the Committee's rights and duties under the Bankruptcy

Code;

(y)     Without the consent of the Prepetition Lenders, the filing of any motion by

any Debtor Party seeking approval of (or the entry of an order by the Bankruptcy Court

approving) adequate protection to any prepetition agent, trustee, or lender that is

inconsistent with this Final Order;

(z)     Without the Prepetition Lenders' consent, the entry of any order by this

Court granting, or the filing by any Debtor Party of any motion or other request with this

Court (in each case, other than the Interim Order and Final Order and the Motion or

permitted amendments or modifications thereto) seeking authority to use any cash

31

proceeds of any of the Adequate Protection Collateral without the Prepetition Lenders'

consent or to obtain any financing under section 364 of the Bankruptcy Code;

(aa)    Any Debtor Party or any person on behalf of any Debtor Party shall file

any motion seeking authority to consummate a sale of assets of the Debtors or the

Collateral, other than as otherwise permitted in the Bidding Procedures Order;

(bb)    If any Debtor Party is enjoined, restrained, or in any way prevented by

court order from continuing to conduct all or any part of the business affairs of the Debtor

Parties, taken as a whole, which could reasonably be expected to have a Material Adverse

Effect[5]; *provided* that the Debtor Parties shall have ten business days after the entry of

such an order to obtain a court order vacating, staying, or otherwise obtaining relief from

this Court or another court to address any such court order; or

(cc)    The failure of the Debtors to comply with the Milestones annexed hereto

as **Exhibit 2**, unless such failure is caused by (i) any action or inaction by any Prepetition

Secured Party or (ii) this Court's schedule.

8.    *Automatic Stay*.

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are

hereby modified to the extent necessary to permit the Prepetition Secured Parties to

---

[5]    "**Material Adverse Effect**" means a material adverse effect on (a) the business, results of operations, financial condition, or assets of the Debtor Parties, taken as a whole; (b) the validity or enforceability of any material provision of the Interim Order or this Final Order; (c) the ability of the Debtors to timely perform their obligations under this Final Order; (d) the creation, perfection, or priority of any of the Adequate Protection Liens or Adequate Protection Superpriority Claims granted hereunder (other than as a result of the failure of the Prepetition Secured Parties to take any action required by the Interim Order or this Final Order and within their control); or (e) any of the rights and remedies of the Prepetition Secured Parties under the Interim Order or this Final Order.

enforce all of their rights and remedies against the Prepetition Collateral and Adequate

Protection Collateral, including the Cash Collateral, provided for in this Final Order

and immediately upon the occurrence of a Termination Event and the provision of the

Remedies Notice (as defined below), to, unless the Court orders otherwise during the

Remedies Notice Period (as defined below), upon the occurrence of a Termination Event

and the giving by the Prepetition Lenders or the Prepetition Agent five business days'

prior written notice (the "**Remedies Notice Period**") delivered by email to the Debtors'

lead restructuring counsel (with a copy to the Committee and the U.S. Trustee) (the

"**Remedies Notice**") withdraw consent to the Debtors' continued use of any Cash

Collateral; *provided* that, during the Remedies Notice Period, the Debtors (i) shall be

permitted to continue to use Cash Collateral in accordance with the Budget solely to pay

regular payroll and other critical expenses necessary to avoid immediate and irreparable

harm to the business of the Debtors and (ii) may request an expedited hearing before the

Court concerning the proposed termination of the Debtors' use of Cash Collateral.

(b)     No rights, protections, or remedies of the Prepetition Secured Parties

granted by the provisions of this Final Order shall be limited, modified, or impaired in

any way by (i) any actual or purported withdrawal of the consent of any party to the

Debtors' authority to continue to use Cash Collateral, (ii) any actual or purported

termination of the Debtors' authority to continue to use Cash Collateral, or (iii) the terms

of any other order or stipulation related to the Debtors' continued use of Cash Collateral

or the provision of adequate protection to any party.

9.     *Payment of Prepetition Secured Parties Fees and Expenses*. The Debtors shall

make current cash payments of the reasonable and documented prepetition and postpetition fees

33

and expenses incurred by the Prepetition Secured Parties in connection with the Chapter 11

Cases in any manner (including, in the case of the advisors to the Prepetition Lenders, Sullivan &

Cromwell, LLP, Houlihan Lokey Capital, Inc., and Landis Rath & Cobb LLP, and in the case of

the advisors to the Prepetition Agent, Holland & Knight LLP and Landis Rath & Cobb LLP,

promptly upon receipt of invoices therefor), which payments (to the extent for fees, expenses,

and disbursements incurred after the Petition Date) shall be made within ten days (which time

period may be extended by the applicable professional) after the receipt by the Debtors, the

Committee and the U.S. Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced**

**Fees**") and without the necessity of filing formal fee applications, including such amounts arising

before or after the Petition Date. The Debtors, the Committee, Vatera, MedCo, and the U.S.

Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**"),

including on the basis that the invoices supporting the Invoiced Fees do not contain sufficient

detail, within the Review Period by filing with the Court a motion or other pleading setting forth

the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases

for such objections; *provided* that payment of any undisputed portion of Invoiced Fees shall not

be delayed based on any objections thereto.

10.    *Limitation on Charging Expenses Against Collateral*. Except to the extent of the

Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future

proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings

under the Bankruptcy Code, shall be charged against or recovered from the Adequate Protection

Collateral (including Cash Collateral) or the Prepetition Collateral pursuant to section 506(c) of

the Bankruptcy Code or any similar principle of law, without the prior written consent of the

Prepetition Lenders, and no such consent shall be implied from any other action, inaction, or

34

acquiescence by the Prepetition Secured Parties, and nothing contained in this Final Order shall

be deemed to be a consent by the Prepetition Secured Parties to any charge, lien, assessment, or

claim against the Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or

otherwise.

11.     *Payments Free and Clear*. Subject to paragraph 15 hereof, any and all payments

remitted to the Prepetition Secured Parties pursuant to the provisions of this Final Order shall be

received free and clear of any claim, charge, assessment, or other liability.

12.     *Reservation of Rights of Prepetition Secured Parties*. Under the circumstances

and given that the above-described adequate protection is consistent with the Bankruptcy Code,

including section 506(b) thereof, the Court finds that the adequate protection provided herein is

reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that

any of the Prepetition Secured Parties may request further or different adequate protection,

subject in all respects to the rights of the Debtors and the Committee to object to and contest

such requests.

13.     *Perfection of Adequate Protection Liens*.

(a)     The Prepetition Agent and the other Prepetition Secured Parties are hereby

authorized, but not required, to file or record (and to execute in the name of the Debtors,

as their true and lawful attorneys, with full power of substitution, to the maximum extent

permitted by law) financing statements, trademark filings, account control agreements,

copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or

take any other action in order to validate and perfect the liens and security interests

granted to them hereunder. Whether or not the Prepetition Secured Parties shall, in their

sole discretion, choose to file such financing statements, trademark filings, copyright

filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, at the time and on the date of entry of the Interim Order. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

(b)     This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement, or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, a certified copy of this Final Order may, in the discretion of the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Prepetition Agent and other

36

Prepetition Secured Parties to take all actions, as applicable, referenced in this

subparagraph (b) and the immediately preceding subparagraph (a).

14.     *Preservation of Rights Granted Under This Final Order.*

(a)     Other than the Carve-Out, Permitted Prior Liens and other claims and liens

expressly granted by this Final Order, no claim or lien having a priority superior to or that

is *pari passu* with those granted by this Final Order to the Prepetition Secured Parties

shall be permitted until all of the Adequate Protection Obligations have been indefeasibly

paid in full in cash, and, except as otherwise expressly provided in this Final Order, the

Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest

that is avoided and preserved for the benefit of the Debtors' estates under section 551 of

the Bankruptcy Code, (ii) subordinated to or made *pari passu* with any other lien or

security interest, whether under section 364(d) of the Bankruptcy Code or otherwise,

(iii) subordinated to or made *pari passu* with any liens arising after the Petition Date,

including any liens or security interests granted in favor of any federal, state, municipal,

or other domestic or foreign governmental unit (including any regulatory body),

commission, board, or court for any liability of the Debtors, or (iv) subject or junior to

any intercompany or affiliate liens or security interests of the Debtors.

(b)     Notwithstanding any order that may be entered converting any of the

Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of

the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at

any time entered, (i) the Adequate Protection Obligations and the Adequate Protection

Liens shall continue in full force and effect and shall maintain their priorities as provided

in this Final Order until all Adequate Protection Obligations shall have been indefeasibly

37

paid in full in cash (and such Adequate Protection Superpriority Claims and Adequate Protection Liens shall, notwithstanding such dismissal or conversion, remain binding on all parties in interest), (ii) the other rights granted by this Final Order shall not be affected, and (iii) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph 14 and otherwise in this Final Order.

(c)     To the fullest extent permitted by Section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Final Order are hereafter reversed or modified on appeal, such reversal or modification on appeal shall not affect the validity or priority of any Adequate Protection Obligations or Adequate Protection Liens incurred prior to the actual receipt of written notice by each Prepetition Secured Party, as applicable, of the effective date of such reversal or modification, unless the incurrence of such Adequate Protection Obligations or the granting of such Adequate Protection Liens were stayed pending appeal.

(d)     Except as expressly provided in this Final Order, the Adequate Protection Obligations, the Adequate Protection Liens, and all other rights and remedies of the Prepetition Agent and the other Prepetition Secured Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired, or discharged by the entry of an order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, or terminating the joint administration of the Chapter 11 Cases, (ii) approving the sale of any Adequate Protection Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section

38

1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any Adequate Protection Obligations. The terms and provisions of this Final Order shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Obligations, the Adequate Protection Liens, and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Final Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash, as set forth herein.

15.    *Effect of Stipulations on Third Parties.*

(a)    The Debtors' stipulations, admissions, agreements, and releases contained in this Final Order shall be binding upon (i) the Debtors, upon entry of the Interim Order, in all circumstances and for all purposes, and (ii) the Debtors' estates and all other parties in interest, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (including the Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, upon entry of the Interim Order, in all circumstances and for all purposes, unless (A) such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing granted by the Court, has timely filed an adversary proceeding (subject to the limitations contained herein, including, *inter alia*, in this paragraph 15) (1) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Obligations or the Prepetition Liens or (2) otherwise asserting or prosecuting any action

for preferences, fraudulent transfers or conveyances, other avoidance power claims, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (collectively, a "**Challenge**") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to any claims of the Debtors against the Prepetition Secured Parties, the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, the Prepetition Collateral, or otherwise; *provided* that all pleadings filed in connection with a Challenge shall set forth the basis for such challenge or claim, (B) such Challenge has been filed prior to the latest of (1) (Y) with respect to parties in interest (other than the Committee), the earlier of (i) two business days prior to the deadline ordered by the Court for submitting qualified bids in an auction for substantially all of the Debtors' assets and (ii) 75 calendar days after entry of the Interim Order and (Z) with respect to the Committee the earlier of (i) two business days prior to the deadline ordered by the Court for submitting qualified bids in an auction for substantially all of the Debtors' assets and (ii) 60 calendar days after its appointment, (2) any such later date as has been agreed to, in writing, by the Prepetition Lenders, and (3) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable time period set forth in this paragraph 15 (the time period established by the foregoing clauses (1) through (3), the "**Challenge Period**"); *provided, further*, that, if any chapter 7 or chapter 11 trustee is appointed, the

Challenge Period shall terminate on the later of the deadline set forth in paragraph (a)(ii)(B)(1) above or ten calendar days after such party's appointment, and (C) there is a final non-appealable order sustaining such Challenge in favor of the plaintiff in such timely filed adversary proceeding or contested matter. Any Challenge not so specified and filed prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred; *provided, further*, that the Challenge Period for the Committee, MedCo, and Vatera shall be tolled during the period commencing upon the entry of this Final Order and ending upon the earlier of (x) the termination of the Global Settlement Term Sheet and (y) the Effective Date of a Plan effectuating the Supporting Lender Transaction (each as defined in the *Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and its Debtor Affiliates* [Docket No. 120]) (such period the "**Tolling Period**"), and neither the Committee, MedCo, nor Vatera shall assert or investigate any potential Challenges during the Tolling Period; *provided*, *further*, that upon the Effective Date of a Plan effectuating the Supporting Lender Transaction, the Committee, MedCo and Vatera shall waive all Challenges against the Prepetition Secured Parties and their Representatives.

(b)    Any party which believes it is the holder of a Permitted Prior Lien must initiate a Challenge as to the priority of its lien before expiration of the Challenge Period or its liens and claims shall be deemed junior in priority to the Prepetition Liens and the Adequate Protection Liens.

(c)    If no such Challenge is filed during the Challenge Period or if the Court does not rule in favor of the plaintiff in any such proceeding, then (i) the Debtors' stipulations, admissions, agreements, and releases contained in the Interim Order and this

41

Final Order shall be binding on all parties in interest, including the Committee (ii) the

obligations of the Debtors under the Prepetition Loan Documents, including the

Prepetition Secured Obligations, shall constitute allowed claims not subject to defense,

claim, counterclaim, recharacterization, subordination, offset, or avoidance, for all

purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s), (iii) the

Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid,

binding, and perfected security interests, and liens, not subject to recharacterization,

subordination, avoidance, or other defense, (iv) the Prepetition Secured Obligations and

the Prepetition Liens shall not be subject to any other or further claim or challenge by a

Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases,

any trustee or examiner with enlarged powers appointed or elected in any of the

Chapter 11 Cases or any subsequent chapter 7 case of the Debtors or any other party in

interest acting or seeking to act on behalf of the Debtors' estates, and (v) any defenses,

claims, causes of action, counterclaims, and offsets by the Committee, any non-statutory

committees appointed or formed in the Chapter 11 Cases, or any other party acting or

seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy

Code or otherwise, against any of the Prepetition Secured Parties and their

Representatives arising out of or relating to any claims of the Debtors against the

Prepetition Secured Parties, the Prepetition Loan Documents or otherwise shall be

deemed forever waived, released, and barred. If any such Challenge is filed during the

Challenge Period, the stipulations, admissions, agreements, and releases contained in the

Interim Order and this Final Order shall nonetheless remain binding and preclusive (as

provided in this subparagraph (c)) on the Committee and on any other person or entity,

except to the extent that, and after, such stipulations, admissions, agreements, and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of the Court or any other court of competent jurisdiction. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, or any non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including Challenges with respect to the Prepetition Loan Documents, the Prepetition Secured Obligations or the Prepetition Liens, or claims, counterclaims, or causes of action of the Debtors against any Prepetition Secured Party.

16.    *Limitation on Use of Collateral*. Notwithstanding anything herein or in any other order entered by the Court to the contrary, no proceeds of the Adequate Protection Collateral, Prepetition Collateral (including Cash Collateral), or the Carve-Out may be used (a) for Professional Fees incurred for (i) any litigation or threatened litigation (whether by contested matter, adversary proceeding, or otherwise, including any investigation in connection with litigation or threatened litigation) against any of the Prepetition Secured Parties or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent, amount, or priority of any claim, lien, or security interest held or asserted by any of the Prepetition Secured Parties or (ii) asserting any defense, claim, cause of action, counterclaim, or offset with respect to the Prepetition Secured Obligations (including for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise) or the Prepetition Liens or against any of the Prepetition Secured Parties or their respective Representatives, (b) to prevent, hinder, or otherwise delay any of the Prepetition

43

Secured Parties' assertion, enforcement, or realization on the Prepetition Collateral or the

Adequate Protection Collateral in accordance with the Prepetition Loan Documents or this Final

Order, except in connection with an emergency hearing during the Remedies Notice Period set

forth in paragraph 8(a) hereof, (c) to seek to modify any of the rights granted to the Prepetition

Secured Parties under this Final Order or the Prepetition Loan Documents, in each of the

foregoing cases without such parties' prior written consent, which may be given or withheld by

such party in the exercise of its respective sole discretion, or (d) to pay any amount on account of

any claims arising prior to the Petition Date unless such payments are approved by an order of

the Court (including hereunder); *provided* that notwithstanding anything to the contrary herein,

the Committee may use the proceeds of the Adequate Protection Collateral (including Cash

Collateral), to investigate (but not prosecute or initiate the prosecution of, including the

preparation of any complaint or motion on account of) prior to (but not after) the delivery of a

Carve-Out Trigger Notice, (y) the claims and liens of the Prepetition Secured Parties, and

(z) potential claims, counterclaims, causes of action, or defenses against the Prepetition Secured

Parties; *provided, further*, that no more than an aggregate of $50,000 of the proceeds of the

Adequate Protection Collateral (including Cash Collateral) may be used by the Committee in

respect of the investigations set forth in the preceding proviso (the "**Investigation Budget**");

*provided, further*, that no portion of the Investigation Budget shall be available to the Committee

during the Tolling Period.

17.    [Reserved]

18.    *Binding Effect; Successors and Assigns*. Subject to paragraph 15 hereof, the

provisions of this Final Order, including all findings herein, shall be binding upon all parties in

interest in the Chapter 11 Cases, including the Prepetition Secured Parties, the Committee, any

non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, and their

respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter

appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to

section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of

any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall

inure to the benefit of the Prepetition Secured Parties, the Debtors, and their respective

successors and assigns; *provided* that the Prepetition Secured Parties shall have no obligation to

permit the use of the Adequate Protection Collateral or Prepetition Collateral (including Cash

Collateral) by any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed

for the estates of the Debtors.

19.    *Limitation of Liability*. The Prepetition Secured Parties shall not, in their

capacities as lenders and lienholders, or providers of cash collateral, under the Prepetition Loan

Documents or this Final Order, (a) be deemed to be in "control" of the operations of the Debtors,

(b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates, and

(c) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the

operation or management of the Debtors, so long as the actions of the Prepetition Secured Parties

do not constitute, within the meaning of 42 U.S.C. §9601(20)(F), actual participation in the

management or operation or affairs of a vessel or facility owned by a Debtor, or otherwise cause

liability to arise to the federal or state government or status of responsible person or managing

agent to exist under applicable law (as such terms, or any similar terms, are used in the United

States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§

9601 *et seq.* as amended, or any similar federal or state statute).

20.    *Inapplicability of Bar Date; Master Proof of Claim and Transfers*. Any order entered by the Court establishing a bar date for any claims (including administrative claims) in any of the Chapter 11 Cases or any subsequent chapter 7 case of any of the Debtors shall not apply to any Prepetition Secured Party with respect to the Prepetition Secured Obligations. The Prepetition Secured Parties shall not be required to file proofs of claim or requests for allowance and payment of administrative expenses authorized by this Final Order in any of the Chapter 11 Cases or any subsequent chapter 7 case of any of the Debtors. The provisions of the Interim Order and this Final Order relating to the amount and/or priority of the Prepetition Secured Obligations, the Adequate Protection Superpriority Claims, the Adequate Protection Liens, any other Adequate Protection Obligations granted pursuant to this Final Order, and the Prepetition Liens, shall constitute a sufficient and timely filed proof of claim and/or administrative expense request in respect of such obligations and such secured status. However, in order to facilitate the processing of claims, to ease the burden upon the Court, and to reduce an unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized, but not required, to file in the Debtors' lead Chapter 11 Case *In re Melinta Therapeutics, Inc., et al.*, Case No. 19-12748 (LSS), a single, master proof of claim on behalf of the Prepetition Secured Parties, on account of any and all of their respective claims arising under the applicable Prepetition Loan Documents and hereunder (each, a "**Master Proof of Claim**") applicable against each of the Debtors. Upon the filing of a Master Proof of Claim, the Prepetition Agent and the Prepetition Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Loan Documents, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns)

46

named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases. The Master Proof of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party, or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims, and the Debtors shall take all actions reasonably requested by any Prepetition Secured Party to implement or evidence such transfer in accordance with the terms of the Prepetition Loan Documents. Nothing in this Final Order shall waive the right of any Prepetition Secured Party to file its own proof of claim against any of the Debtors. The provisions of this paragraph 20 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in the Chapter 11 Cases. The Master Proof of Claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements, or other documents will be provided upon reasonable written request to counsel to the Prepetition Agent.

21.     *Effectiveness*. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.

22.     Notwithstanding Bankruptcy Rule 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

23.     *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

24.     *Disposition of Adequate Protection Collateral*. Unless the Prepetition Secured Obligations (excluding any Prepayment Fee (as defined in the Prepetition Credit Agreement), unless this Court has entered an order allowing the Prepayment Fee as a secured claim against the Debtors) are indefeasibly paid in full, in cash, upon the closing of a sale or other disposition of the Adequate Protection Collateral or Prepetition Collateral, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Adequate Protection Collateral or any Prepetition Collateral, other than in the ordinary course of business (or, except in accordance with the Bidding Procedures and the Bidding Procedures Order enter into any binding agreement to do so) without the prior written consent of the Prepetition Lenders (and no such consent shall be implied from any other action, inaction, or acquiescence by any Prepetition Secured Party or any order of this Court).

25.     *Credit Bidding*.

(a)     The Prepetition Secured Parties shall have the right to credit bid, in accordance with the Prepetition Credit Agreement and subject to the Carve-Out, up to the full amount of the Adequate Protection Obligations in any sale of the Adequate Protection Collateral, in each case pursuant to section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code or otherwise. The applicable Prepetition Secured Parties shall have the right to credit bid up to the full amount of the applicable Prepetition Secured Obligations in any sale of the Prepetition Collateral;

48

*provided* that, following the disallowance of any Prepetition Secured Obligations or the avoidance of liens securing such obligations, in each case solely in a Challenge pursuant to paragraph 15 of this Final Order and as approved by a final, non-appealable order by this Court or any other court of competent jurisdiction, any party-in-interest shall be entitled to move this Court for an appropriate remedy to compensate the Debtors for the decrease in the value of such credit bid. Subject to any such Challenge, the Debtors shall pay the fees and expenses of the Prepetition Secured Parties in connection with any such credit bid, subject to the procedures set forth in paragraph 9 hereof. Notwithstanding anything herein to the contrary, the Supporting Lenders may not credit bid any Prepayment Fee (as defined in the Prepetition Credit Agreement) unless authorized to do so by an order of the Bankruptcy Court.

(b)    The Committee, MedCo, and Vatera shall withdraw (as applicable), and, during the Tolling Period, shall not file, refile, or support in any way, any objection to the Prepetition Secured Parties' credit bid as set forth in Section I.A. of the Bidding Procedures, and agree for the purposes of any Auction (as defined in the Bidding Procedures) and the sale process that the Prepetition Secured Parties' prepetition secured claim (excluding, for the avoidance of doubt, postpetition interest and other adequate protection obligations) is $142,426,658. Notwithstanding the foregoing, the Committee, MedCo, and Vatera reserve all rights to (i) challenge any increase in the Prepetition Secured Parties' secured claim based on the inclusion of postpetition interest at the default rate and (ii) dispute any Invoiced Fees in accordance with paragraph 9 hereof; *provided, however*, that the Settlement Parties will work in good faith to resolve any such disputes prior to the commencement of any Auction.

49

26.     [Reserved]

27.     *No Marshaling*. In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Adequate Protection Collateral or Prepetition Collateral, and the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

28.     *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

29.     *Necessary Action*. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

30.     *Retention of Jurisdiction*. The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

50

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

Dated: February 11th, 2020
Wilmington, Delaware