**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re

**MELINTA THERAPEUTICS, INC., et al.,**

                                Debtors.1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Chapter 11
Case No. Case No. 19-12748 (LSS)

**Jointly Administered**
Objection Deadline: February 14, 2020 4:00 p.m.
Hearing Date: February 21, 2020 at 11:00 a.m.

## LIMITED OBJECTION OF THE U. S. SECURITIES AND EXCHANGE COMMISSION TO APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE DEBTORS' PLAN OF REORGANIZATION

The U.S. Securities and Exchange Commission ("SEC" or "Commission"), a statutory party to these proceedings[2], objects to approval of the Disclosure Statement ("Disclosure Statement") and confirmation of the Chapter 11 Plan ("Plan") of Melinta Therapeutics, Inc. and its affiliated debtors (collectively, "Melinta" or the "Debtors"), dated January 17, 2020. In support of its limited objection, the Commission respectfully states as follows:[3]

### INTRODUCTION

The Commission objects to approval of the Disclosure Statement and confirmation of the Plan, which includes a liquidation option, because it would release the liability of, and permanently enjoin actions against, non-debtor third parties and the potentially liquidating

---

[1] Other affiliated debtors are: Melinta Therapeutics, Inc.; Cempra Pharmaceuticals, Inc.; CEM-102 Pharmaceuticals, Inc.; Melinta Subsidiary Corp.; Rempex Pharmaceuticals, Inc.; and Targanta Therapeutics Corporation.

[2] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue[.]" 11 U.S.C. § 1109(a).

[3] Unless separately defined herein, capitalized terms have the meanings ascribed to them in the Plan.

1

debtors in contravention of Sections 524(e) and 1141(d)(3) of 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").[4]

As a general matter, nondebtor third party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by Chapter 11 discharge provisions. Such releases have special significance for public investors because they may enable nondebtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including violations of the federal securities laws or breaches of fiduciary duty under state law.

While such releases may be allowed if parties expressly consent to them in exchange for consideration from each released party, those circumstances are not present here. Nor are there exceptional circumstances that would support non-consensual releases. The Commission has similar concerns regarding an exculpation clause in the Plan that provides that the exculpated parties shall have no liability for any acts or omissions taken in connection with the restructuring, including certain prepetition conduct, but excluding fraud or willful misconduct.

In addition, the SEC objects to the Debtors' inclusion of a permanent injunction in the Plan, which could serve to enjoin any action post-confirmation against the liquidating Debtors or their estates. Section 1141(d)(3) of the Bankruptcy Code provides that liquidating corporate debtors are not eligible for a discharge. And here, the Plan provides for the possibility of a liquidating transaction. If the Debtors ultimately pursue liquidation, the Plan provision that

---

4  A court may disapprove a disclosure statement if the plan, on its face, does not meet the confirmation standards of Chapter 11. *In re Moshe*, 567 B.R. 438, 444 (Bankr. E.D.N.Y. 2017). In addition, the Debtors are seeking approval of the form of notice and opt out from the release that contemplate the propriety of the release in question, so that an objection to the release at this stage of the case is proper.

effectively provides a discharge to the Debtors through a permanent injunction contravenes Section 1141(d)(3) of the Bankruptcy Code.

Thus, the Plan should be amended to provide: (i) that either (a) the release and exculpation provisions should be deleted from the Plan or (b) the Interests in Melinta Therapeutics and Section 510(b) Claims be carved out of the release, or be required to "opt in" to the release in order to be bound, the SEC be carved out of the releases,[5] and the exculpation clause be narrowly tailored to cover only estate fiduciaries and to exclude prepetition conduct; and (ii) for removal or modification of the permanent injunction to comply with Section 1141(d)(3).

## BACKGROUND

On December 27, 2019, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On January 17, 2020, the Debtors filed the Plan and Disclosure Statement.

Melinta is a publicly held biopharmaceutical company focused on developing and commercializing differentiated antibiotics. (Discl. Stmt. at 6). Melinta's stock trades publicly on the NASDAQ under the ticker symbol "MLNT." (Discl. Stmt. at 12) As of November 6, 2019, Melinta had 13,750,691 outstanding shares of common stock, and on December 26, 2019, the last trading day prior to the Petition Date, Melinta's common stock closed at $1.49 per share. *Id*. Pursuant to the RSA between the Debtors and the PrePetition Lenders, the Plan contemplates either the transfer of the company pursuant to a stock sale to the PrePetition Lenders or a potential sale of the Debtors' assets to a hypothetical third party for a higher offer, in which case

---

5 The SEC staff has requested that the Debtors incorporate in the Plan or confirmation order a government carve-out from non-debtor releases similar to that typically provided to the SEC in Chapter 11 cases. The SEC reserves its rights to object on this point in the event that the Debtors fail to incorporate an acceptable carve-out provision.

the Debtors will liquidate and distribute the sale proceeds pursuant to the Plan. *Id*. at 18-19.

Melinta's public shareholders (Class 8) and holders of Section 510(b) claims[6] (Class 7) are

deemed to reject the Plan and will not receive any distribution. (Discl. Stmt. at 35-36)

The third-party releases in the Plan (the "Releases") provide releases in favor of numerous parties, including: (a) the Debtors; (b) the Supporting Lenders; (c) the Prepetition Agent; and (d) with respect to each of (a), (b), and (c), current and former predecessors, successors, affiliates, subsidiaries, portfolio companies, professional advisors, consultants, and numerous others who are not directly related to the bankruptcy case. (Plan at 12, defining the "Released Parties")  The Releases are for any and all claims and causes of action and a wide range of other obligations, but exclude claims arising from intentional fraud or willful misconduct. (Plan at 45-46)  Melinta's public shareholders and Section 510(b) claimants are deemed to consent to the Releases unless they affirmatively opt out on a notice of non-voting status issued to them as part of the Plan solicitation process. (Plan at 12, defining the "Releasing Parties")

The Plan's exculpation provision provides that Exculpated Parties, including a wide range of non-debtors with no connection with the bankruptcy case, shall have no liability to creditors and interest holders for acts or omissions taken in connection with prepetition restructuring efforts and the bankruptcy case, although fraud or willful misconduct are carved out.  (Plan at 46).  The Plan also includes a provision permanently enjoining actions against the

---

6 The Plan defines a Section 510(b) claim as "any Claim arising from rescission of a purchase or sale of an equity security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such an equity security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim." *Plan* at 13.

Debtors, their estates, or their property on account of claims held prior to the bankruptcy filing. (Plan at 46-47)

## DISCUSSION

### I. The Releases are not consensual and do not satisfy the standard to be approved as nonconsensual releases.

A. <u>The Releases are Not Consensual</u>.

Section 524(e) of the Bankruptcy Code addresses the scope of a bankruptcy discharge and states, in relevant part, that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e). The Bankruptcy Code contemplates that a discharge only affects the debts of those submitting to its burdens.  *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 211 (3d Cir. 2000).  Nonetheless, courts in this District have held that third party releases of non-debtors may be allowed if they are consensual.  *See In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)); *Cf. In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (court held that debtors must give creditors and interest holders an opportunity to individually consent to the release, apart from voting on the plan).

In the Commission's view, releases should be considered to be consensual only if the affected parties provide affirmative consent.  Here, by contrast, the Debtors propose that inaction constitutes consent, and the class 8 Melinta Equity Interest holders and class 7 Section 510(b) claimants must opt out of the Releases in order to avoid being bound.  Bankruptcy courts in this Circuit have generally held that an opt-out mechanism is not sufficient to support a third party release, particularly with respect to those who do not return a ballot.  *See In re Emerge Energy Services LP, et al.,* No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del.

5

Dec. 5, 2019) (court denied confirmation of plan where third party releases bound creditors and interest holders who did not return a ballot or opt-out form; releases were held to be non-consensual)*; Washington Mutual*, 442 B.R. at 355 ("[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release"); *In re Spansion, Inc.*, 426 B.R. 114, 144-45 (Bankr. D. Del. 2010) (court found releases consensual only with respect to parties voting to accept the Plan, and unimpaired creditors deemed to have accepted the Plan); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (court found nondebtor releases consensual and binding only on creditors and interest holders voting to accept the plan).  Thus, simply abstaining from voting or voting to reject a plan but failing to opt out of the Releases does not constitute "consent."  *But see In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (in nonpublic company case, nondebtor releases deemed consensual with respect to both impaired creditors who abstained from voting on the Plan, and those who voted to reject the plan and did not otherwise opt out of the releases).

Here, the Plan deems the consent of Melinta's public shareholders and Section 510(b) claimants to the Releases to be established by silence or failure to opt out.  In this context, this is inconsistent with basic contract principles. *See In re Emerge Energy Services LP, et al.,* No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) citing *Restatement (Second) of Contracts* § 19 (Am. Law Inst. 1981) and *In re SunEdison, lnc*., 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third party release.") *citing In re Washington Mutual, Inc*., 442 B.R. at 352. The Restatement of Contracts makes clear that silence or failure to act cannot be deemed consent under the facts of this case.

Under the Restatement, silence can be deemed to be acceptance only:

> (1)
>> (a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.
>> (b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
>> (c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.
>
> (2) An offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms unless they are manifestly unreasonable.  But if the act is wrongful as against the offeror it is an acceptance only if ratified by him.

Restatement (Second) of Contracts, § 69; *see also Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting.").

None of the situations enumerated in the Restatement apply here.  The Debtors cannot rely on the silence of the Melinta's public shareholders and Section 510(b) claimants, who are not even entitled to vote on the Plan, as a manifestation of their acceptance of the Releases.  Indeed, there can be no contractual consent by silence because the Debtors are not offering anything of benefit to these parties.  Rather, they are extinguishing a right the shareholders and Section 510(b) claimants may have against non-debtor third parties unless they affirmatively object by submitting an opt-out form.  This is a particularly onerous requirement to place on public investors, who must rely on broker-dealer intermediaries to deliver the appropriate forms and instructions to them.[7]

---

[7] Melinta's shares continue to trade and, as a result, a buyer who purchases shares after the notice of non-voting status was distributed would not automatically receive that notice.  The buyer would have to contact the broker-

    B. <u>The Non-Debtor Releases do not satisfy the standard to be approved as nonconsensual because they are not: (i) fair to the releasing parties; (ii) necessary to the reorganization; and (iii) supported by the facts of this case.</u>

The Debtors cannot show that the Releases are "consensual," nor can they justify the imposition of the Releases on a non-consensual basis. The Third Circuit has indicated that allowing non-consensual non-debtor releases is an "extraordinary remedy" that should be used only sparingly. *See In re Continental Airlines*, 203 F.3d 203, 217 (3rd Cir. 2000).[8] The hallmarks of permissible non-consensual non-debtor releases include: (i) fairness, particularly whether the release was given in exchange for fair consideration, beyond what the class was entitled to as creditors under the plan; (ii) necessity to the reorganization; and (iii) specific factual findings to support these conclusions. *Id.* at 214-15. Specifically, courts in Delaware have considered the following factors in determining whether a non-consensual release satisfies the "hallmarks" discussed in *Continental*: "(i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting

---

dealer to request the relevant forms. But such shareholder could nonetheless be bound by the Releases, which apply to conduct up to the Effective Date of the Plan (which will occur after plan confirmation).

8  In *Continental Airlines*, the Third Circuit rejected a plan provision that released and permanently enjoined shareholder lawsuits against present and former officers and directors who were not in bankruptcy. The court held that the release and injunctive provisions fell squarely into the Section 524(e) prohibition because they amounted to nothing more than a lockstep discharge of nondebtor liability. The Court held open the possibility that "there are circumstances under which [it] might validate a nonconsensual release that is both necessary and given in exchange for fair consideration," Id. at 214, n.11, but made this comment in light of releases and permanent injunctions issued in such extraordinary cases as *Robins, Manville, and Drexel*; *See Menard-Sanford v. Mabey* (In re A.H. Robins Co.), 880 F.2d 694 (4th Cir. 1989); *MacArthur Co. v. Johns-Manville Corp.* (In re Johns-Manville Corp.), 837 F.2d 89 (2d Cir.1988); *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc.* (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285 (2d Cir. 1992); *see also Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 143 (2d. Cir. 2005) (the Second Circuit held a "nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. . . .").

creditors received reasonable compensation in exchange for the release." *In re Spansion, Inc.*, 426 B.R. 114, 144-145 (Bankr. D. Del. 2010).

Here, the Debtors have not argued that the Releases can be imposed without consent. In any event, such an argument would lack merit because there is no factual basis to support the necessity of the Releases to the reorganization, particularly here where there is also the possibility of a liquidation. Specifically, when applying the *Continental* factors to the facts of this case, it is clear that the Releases contravene Bankruptcy Code Section 524(e) and applicable Third Circuit law. There is no evidence that fair consideration was provided specifically in exchange for the release of claims against nondebtors or that all of the nondebtor Released Parties made contributions to the Plan. Indeed, "Released Parties" include not only the enumerated parties, but also, among others, those parties' current and former officers and directors and entities, as well as former predecessors, successors, affiliates and others who may not have contributed anything to the Plan or the restructuring process. There has not been an adequate showing that all of the Released Parties have provided a critical financial contribution, or that the Releases are fair to Melinta's shareholders and Section 510(b) claimants who, under any scenario, will receive nothing under the Plan.

In addition, in the Commission's view, the exculpation clause in the Plan constitutes an impermissible non-debtor release and discharge since it limits the liability of various non-estate fiduciaries for conduct that occurred prior to the Chapter 11 case, and hence falls squarely within the scope of Section 524(e). Although actual fraud and willful misconduct are carved out, the exculpation provision could still potentially release various non-scienter-based claims. *See Washington Mutual*, 442 B.R. at 350, *citing In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000)* (exculpations are limited to actions by estate fiduciaries in the bankruptcy case).

**II.     Neither a discharge nor a permanent injunction is appropriate in the liquidation scenario.**

The Plan contemplates either the transfer of the company to the PrePetition Lenders in exchange for its secured claims or the sale of all of the Debtors' assets to an unrelated purchaser and subsequent liquidation. Pursuant to the bankruptcy court's recently approved sale order [Docket No. 280], the bankruptcy court will be considering competing bids and will be conducting an open auction for a pre-confirmation sale of the company on March 6th. In that case, the Debtors may be sold to an unrelated third party resulting in a liquidation and thus clearly would not be entitled to a discharge.

One of the fundamental tenets of bankruptcy reorganization law is the granting of a discharge of a corporate debtor's remaining liabilities once creditors are paid in accordance with a reorganization plan.[9] But Section 1141(d)(3) of the Bankruptcy Code provides that the confirmation of a plan does <u>not</u> discharge a debtor if: (i) the plan provides for the liquidation of all or substantially all of the property of the estate; (ii) the debtor does not engage in business after consummation of the plan; and (iii) the debtor would be denied a discharge under Section 727(a) of the Bankruptcy Code if the case were a Chapter 7 liquidation case.[10] 11 U.S.C. 1141(d)(3); *see also In re Wood Family Interests, Ltd.*, 135 B.R. 407, 410 (Bankr. D. Colo. 1989) (holding that a discharge is not available to corporate or partnership debtors who propose a liquidating plan of reorganization).

Section 1141(d)(3) was specifically drafted to prevent trafficking in corporate shells. *See In re Fairchild Aircraft Corp.*, 128 B.R. 976, 982 (Bankr. W.D. Tex. 1991); H.R. Rep. No. 595,

---

9  Generally, the confirmation of a plan discharges a debtor from any debt that arose before the date of such confirmation. *See* 11 U.S.C. § 1141(d)(1)(A).

10 Section 727(a) provides that the court shall grant the debtor a discharge, unless, among other things, "the debtor is not an individual[.]"  11 U.S.C. 727(a)(1).

95th Cong., 1st Sess. 384, 418-19 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 98-99, 129-130 (1978). *See also In re Goodman*, 873 F. 2d 598, 602 (2d Cir. 1989) ("Congress deliberately excluded [liquidating] corporations from eligibility for discharge … to avoid trafficking in corporate shells …."). The court in *Fairchild Aircraft* noted that the protection against trafficking in corporate shells afforded by Section 1141(d)(3) is particularly important with respect to publicly traded companies:

> Without it, entities would be tempted to pick up the shell, issue new stock, and start a new business without the dead weight of old debt, undermining not only the integrity and *bona fides* of the bankruptcy system but also the underlying salutary function of the securities laws.

*Fairchild Aircraft*, 128 B.R. at 982 n.6. *See also* Report of the Commission on Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93rd Cong., 1st Sess. (1973), *reprinted in Collier On Bankruptcy*, Appendix Volume B at App. Pt. 4-703 through App. Pt. 4-704 (16th rev. ed. 2017) (Denying a corporate debtor a discharge "restricts the manipulative use of bankruptcy shells in violation of securities laws and other legislation protecting public investors in and creditors of corporations."). Therefore, in accordance with Section 1141(d)(3), the Debtors would not be entitled to a discharge in the event of liquidation and the Plan must be revised to limit the injunction provision accordingly.

## CONCLUSION

For all of the foregoing reasons, the SEC requests that the Court deny approval of the Disclosure Statement and confirmation of the Plan unless the Plan is amended to provide: (i) that either (a) the Releases and exculpation provision should be deleted from the Plan or (b) the Interests in Melinta Therapeutics and Section 510(b) Claims be carved out of the Releases, or be required to "opt in" to the Releases in order to be bound, the SEC be carved out of the

Releases and the exculpation clause be narrowly tailored to cover only estate fiduciaries and to exclude prepetition conduct; and (ii) for removal or modification of the permanent injunction to comply with Section 1141(d)(3).

Dated: New York, New York

      February 14, 2020

                UNITED STATES SECURITIES AND
                EXCHANGE COMMISSION

                By: /s/Alan Maza
                    Alan Maza
                    New York Regional Office
                    Brookfield Place
                    200 Vesey St., Suite 400
                    New York, New York 10281
                    Phone: (212) 336-0133
                    Mazaa@sec.gov

Of Counsel: Alistaire Bambach
             Morgan Bradylyons