IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*<br><br>**MELINTA THERAPEUTICS, INC.,** *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 19-12748 (LSS)**<br><br>**Jointly Administered**<br><br>**Re: D.I. 122** |

**OBJECTION AND RESERVATION OF RIGHTS OF UNITED STATES TRUSTEE TO MOTION OF DEBTORS FOR ORDER (I) APPROVING ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT, (II) APPROVING SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF DEBTORS' PROPOSED PLAN OF REORGANIZATION, (III) APPROVING FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH, AND (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), by and through his undersigned counsel, hereby files his Objection and Reservation of Rights ("Objection") with respect to the *Motion of Debtors For Order (I) Approving Adequacy of Debtors' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of Debtors' Proposed Plan of Reorganization, (III) Approving Form of Various Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates With Respect Thereto* (the "Motion"), and in support thereof states as follows:

**JURISDICTION**

1. The Court has jurisdiction to hear this Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Melinta Therapeutics, Inc. (0364); Cempra Pharmaceuticals, Inc. (5814); CEM-102 Pharmaceuticals, Inc. (4262); Melinta Subsidiary Corp. (9437); Rempex Pharmaceuticals, Inc. (6000); and Targanta Therapeutics Corporation (1077). The address of the Debtors' corporate headquarters is 44 Whippany Road, Suite 280, Morristown, New Jersey 07960.

oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.  Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor and comment on plans and disclosure statements filed in Chapter 11 cases.

4.  Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to this Objection.

## BACKGROUND

### A. Overview

5.  On December 27, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On December 30, 2019, the Court ordered that the cases would be jointly administered for procedural purposes only, and the Order "should not be deemed or construed as directing or otherwise effecting any substantive consolidation of any of the Chapter 11 cases."  (D.I. 48).

6.  On January 14, 2020, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") in this case.

7.  On January 17, 2020, Debtors filed the underlying Motion, along with the *Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and its Debtor Affiliates* (the "Plan") (D.I. 120) and the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of*

*Melinta Therapeutics, Inc. and its Debtor Affiliates* (the "Disclosure Statement") (D.I. 121). The Motion seeks approval of the adequacy of the Disclosure Statement, the solicitation procedures described in the Motion, the forms of various ballots and notices attached to the proposed form of order, and a schedule for the confirmation process. (Motion, ¶5).

8. The Motion, Disclosure Statement and Plan are based, in large part, on the relief originally sought in Debtors' Bid Procedures Motion filed on December 30, 2019 (D.I. 67) and the Debtors' proposed form of final cash collateral order that accompanied Debtors' December 27, 2019 first day motion seeking approval to use cash collateral (D.I. 16). In order to resolve objections raised by several parties in interest to, *inter alia*, the Bid Procedures Motion and the final form of cash collateral order, a Global Settlement Term Sheet ("Global Term Sheet") dated as of February 7, 2020 was entered into by and among the Debtors, the Committee, Deerfield Private Design Fund III, L.P. and Deerfield Private Design Fund IV, L.P. (collectively, "Deerfield"), Vatera Healthcare Partners LLC ("Vatera") and The Medicines Company ("MedCo"). (D.I. 275).

9. The Global Term Sheet provided that the previously filed Disclosure Statement and Plan would be modified to implement the terms of the settlement set forth therein. In addition, based on the Global Term Sheet, many substantive changes were made both to the Bid Procedures and to the proposed final form of cash collateral order. These changes are reflected in the Court's Final Order Authorizing Use of Cash Collateral (D.I. 279) and Bid Procedures Order (D.I. 280), both entered on February 11, 2020.

10. As of the filing of this Objection, Debtors have not filed an amended form of order, Disclosure Statement or Plan incorporating the provisions of the Global Term Sheet, the revised bidding procedures approved by the Court or the revised terms of the final cash collateral order.

Upon information and belief, modified documents are in process for filing at some point prior to the February 21, 2020 Disclosure Statement hearing. The U.S. Trustee reserves the right to raise further objections if/when the necessary amended filings occur.

### B. Relevant Provisions

11. According to the Disclosure Statement, although the Plan was jointly proposed it "constitutes a separate plan for each of the Debtors for voting purposes and, except as set forth in section 5.01 of the Plan, does not constitute a substantive consolidation of the Debtors' estates." (Disclosure Statement, §VI.B.1., p. 31). Further, "all Claims against or Interests in a particular Debtor are placed in the [eight] Classes …with respect to each Debtor…." and a "Claim or Interest is placed in a particular Class for "all purposes including voting, Confirmation, **and distribution** under the Plan." *Id*. at p.32 (emphasis added).

12. This language however is misleading at best and does not accurately describe the consolidated manner in which distributions will occur. The referenced section 5.01 of the Plan is entitled "Substantive Consolidation" and provides as follows:

> This Plan contemplates and is predicated upon the deemed substantive consolidation of the Estate and Chapter 11 Case of each Debtor with the Estate and Chapter 11 Case of each other Debtor for distribution purposes only. On the Effective Date, each Claim filed or to be filed against any Debtor shall be deemed filed only against Melinta Therapeutics and shall be deemed a single Claim against and a single obligation of Melinta Therapeutics for distribution purposes only and the claims register shall be updated accordingly.

This same provision is set forth at the top of page 37 of the Disclosure Statement.

13. Debtors do not clearly describe the manner in which they seek to substantively consolidate the Estates for distribution purposes, nor have they described the effect this will have on Claimants. Further, Debtors have not set forth in the Disclosure Statement the basis for substantive consolidation of the Debtors for distribution purposes. The Debtors have failed to

provide the required Financial and Liquidation analyses both on a consolidated and nonconsolidated basis.

14. Only Class 3 (Secured Prepetition Credit Agreement Claims) and Class 4 (General Unsecured Claims) are entitled to vote on the Plan. As to Class 3, if the Supporting Lenders are the Successful Bidders, each Holder of an Allowed Secured Prepetition Credit Agreement Claim will receive the Holder's pro rata share of reorganized Melinta Common Stock. If a third party is the Successful Bidder, each Holder will receive their pro rata share of Distributable Cash until the Secured Prepetition Credit Agreement Claims are paid in full. (Disclosure Statement, p. 34).

15. As to Class 4, if the Supporting Lenders are the Successful Bidders, General Unsecured Claimants will receive no recovery. If the Supporting Lenders are not the Successful Bidders, the Secured Credit Agreement Claims must be paid in full before General Unsecured Claimants receive any recovery. The Disclosure Statement fails to address the amount of Secured Credit Agreement Claims that must be paid before a recovery to General Unsecured Claimants is possible.

16. Class 8 includes all Holders of Allowed Interests in Melinta Therapeutics, *i.e.,* the parent Debtor's current shareholders. They will not receive any property or recovery under the Plan and their interests will be canceled. Members of this Class are deemed to reject the Plan and are not entitled to vote.

17. Even though the Class 4 General Unsecured Claimants will likely recover nothing and the Class 8 Interest Holders are definitely recovering nothing, unless members of these classes take affirmative action they will be deemed to have released not only the Debtors and their Directors and Officers, but also a wide range of third parties including the Supporting Lenders. (*See* Exhibits B-2, C-2, C-3 and C-4 of the proposed form of order attached as Exhibit A to the

Motion). Each ballot or notice included in these exhibits requires that the Claim or Interest Holder check the "opt-out" box and return the document by the Voting Deadline in order not to be bound by the third party release in exchange for which they are receiving little or no consideration.

18. Paragraphs 18 through 20 of the proposed form of order set out the manner by which Interest Holders will be notified of the confirmation process and provided an opportunity to opt out of the third party release. It is a time consuming, tedious and expensive process for the Debtors, the Chapter 11 claims agent and the impacted brokers, and it is highly unlikely that the materials will reach all Interest Holders in time for them to analyze the information and return the opt-out form by the Voting Deadline. The Debtors have no control over the brokers, and there is no way of knowing if the Interest Holders actually receive their Notice.

## LEGAL ARGUMENT

### A.    The Disclosure Statement does not Contain Adequate Information

19. "[T]he general purpose of a disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan." *In re Phoenix Petroleum, Inc.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001). Section 1125(a) of the Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail to enable such hypothetical, reasonable investor to make an informed judgment about the plan".

20. For several reasons, the Disclosure Statement here does not contain adequate information to allow a creditor to make an informed judgment. First, important provisions from the Global Term Sheet, the approved revised bid procedures and the Final Cash Collateral Order are missing. Second, Debtors have not provided information regarding the effect of substantive

consolidation for distribution purposes and there is insufficient information available to allow a creditor to determine if they will receive at least as much as they would in a chapter 7 liquidation. A liquidation analysis on both a per Debtor and consolidated basis has not been included.

21. The application of the "best interest test" involves a hypothetical application of chapter 7 to a chapter 11 plan. *See In re Stone & Webster, Inc.*, 286 B.R. 532 (Bankr. D. Del. 2002). If the plan fails the section 1129(a)(7) test, then the creditors are better off in a chapter 7 liquidation. Here, there is no information demonstrating that a chapter 7 trustee would distribute cash proceeds less efficiently. Accordingly, the Disclosure Statement fails to provide sufficient and important information necessary for creditors to make an informed decision regarding whether to vote in favor of or to reject the Plan.

22. The U.S. Trustee reserves all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection, file a Motion and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent if any modifications are made.

**B.** **The Disclosure Statement Sets Forth no Basis for Substantive Consolidation for Distribution Purposes**

23. As set forth by the Third Circuit Court of Appeals in *Genesis Health,* 402 F.3d 416 (3d Cir. 2005), "[s]ubstantive consolidation treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and labilities. . . . The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor." *Id.* at 423.

24. Substantive consolidation is a "remedy to be used 'sparingly.'" *In re Owens Corning*, 419 F. 3d 19, 205 (3d Cir. 2005)(citations omitted); *Genesis,* 402 F.3d at 423

("Because its effect radically rearranges legal boundaries, assets and labilities, substantive consolidation is typically a sparingly used remedy.")  The standard for substantive consolidation was enunciated by Third Circuit in *Owens Corning* as follows: "In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) post-petition their assets and liabilities are so scrambles that separating them is prohibitive and hurts all creditors." 419 F. 3d at 211.

25.     The Court in *Owens Corning* further indicated that "[p]roponents of substantive consolidation have the burden of showing one or the other rationale for consolidation.  The second rationale needs no explanation.  The first, however, is more nuanced. A *prima facie* case for it typically exists when, based on the parties' prepetition dealings, a proponent proves corporate disregard creating contractual expectations of creditors that they were dealing with debtors as one indistinguishable entity." *Id.*  (citations omitted).

26.     The purpose of substantive consolidation is to "rectify the seldom-seen situation that calls for this last-resort remedy" that merges the assets and liabilities of separate entities, and cannot be used for improper purposes, such as, "a ploy to deprive one group of creditors of their right while providing a windfall to other creditors." *Id.* at 199-200.

27.     As described in the Background section above, the Plan and Disclosure Statement do not address the effect of or reason for substantive consolidation solely for distribution purposes.  The Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (D.I. 234 – 243) set forth numerous assets and liabilities held by each Debtor.  Further, the Financial and Liquidation Analyses that must accompany the Disclosure Statement should

provide information to the Claim and Interest Holders on both a consolidated and non-consolidated basis so informed decisions may be made.

28. Because an evidentiary predicate is necessary on whether the elements required for substantive consolidation have been met, the U.S. Trustee reserves argument on this issue until the record on the hearings are closed.[2]  At this time though the relevant question is whether Debtors have provided adequate information to allow the Claim Holders to make informed decisions regarding the prosed plan.

C. **The Debtors Should not Incur the Time and Expense to Send out Notices with Opt – Out Provisions to Non-Voting Classes Deemed to Reject the Plan**

29. As described in the Disclosure Statement, the Third Party Releases in the Plan include the Debtors' public shareholders as releasing parties.  These Interest Holders will receive no distribution under the Plan, have no right to vote on the Plan, and are deemed to reject the Plan.  The only way that a shareholder can avoid being deemed to give the Third Party Releases is to return a form opting out of such releases by the Voting Deadline.[3]

30. The process of delivering the Notices to the Interest Holders is time consuming and expensive not only for the Debtors, but also the Debtors' claims agent and the brokers who will be called upon to forward the Notices to the actual Interest Holders.  Based on a recent opinion from Judge Owens of this Court, it is respectfully submitted that this time and expense

---

[2] Substantive consolidation for plan purposes may have an unfair impact on the unsecured creditors of one or more of the Debtors.  The U.S. Trustee leaves the Debtors to their burden on that issue as well.

[3] Third Party Releases will also be deemed to be given by any general unsecured creditor that votes in favor of the Plan or that does not return an Opt-Out response by the Voting Deadline, despite the fact that general unsecured creditors may receive no distribution at all under the Plan.  The U.S. Trustee reserve the right to raise objections regarding this opt-out provision at the confirmation hearing.

should not be incurred, as consent to the third party release should not be inferred from the failure of an Interest Holder to return the opt-out form.

31. In a December 5, 2019 opinion issued in *Emerge Energy Services LP*, 2019 WL 7634308, Case No. 19-11563 (Bankr. D. Del. Dec. 5, 2019), Judge Owens ruled that consent to a third-party release "cannot be inferred by the failure of a creditor or equity holder to return a ballot or Opt-Out Form." *Id.* at *18. The Court reached this conclusion even though the Opt-Out Form sent to the interest holders provided conspicuous notice of how to opt-out and the implication of the failure to do so. The Court also rejected the Debtor's argument that inferred consent from "silence" should be approved as typical, customary, and routine. *Id.* The Court held that failure to return a notice can be due to "carelessness, inattentiveness, or mistake", rather than constituting the manifestation of an intent to agree to a third-party release. *Id.*

32. In *Emerge,* as in this case, the shareholders were receiving no distribution under the plan, had no right to vote on the plan, and were deemed to have rejected the plan.

33. Consent should not be assumed by silence, which could be caused by factors such as a package being wrongly addressed or misdelivered, or other mail failures or delays. The risk of mail errors should be borne by the beneficiaries of the releases, not by the Debtors' public shareholders. That is especially true when stock is held in street name, and the Debtors will not have mailed opt-out forms directly to most of the beneficial stockholders. Rather, the Debtors will serve the opt-out forms on brokers and expect the brokers to pass such forms along to the beneficial stockholders. The Debtors' lack of control over the brokers means that neither the Debtors nor the Court will have any way of knowing whether any particular beneficial stockholder actually received notice of their right to opt-out of the release.

34. If consent cannot be inferred from an Interest Holder's failure to return a form, it is submitted that there is no need to serve the opt-out forms in the first instance, which will save both time and costs.

## RESERVATION OF RIGHTS

35. The U.S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection, file a Motion and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent. The U.S. Trustee further reserves the right to raise issues as appropriate at the confirmation hearing for the Plan.

WHEREFORE, the U.S. Trustee requests that this Court enter an order consistent with the objections outlined above and grant such other and further relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**

By:   */s/ Linda Richenderfer*
Linda Richenderfer (#4138)
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491

Dated: February 14, 2020

**CERTIFICATE OF SERVICE**

I, Linda Richenderfer, Esq., do hereby certify that on this 14th day of February, 2020, I served the attached *Objection and Reservation of Rights of the United States Trustee to Motion of Debtors For Order (I) Approving Adequacy of Debtors' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of Debtors' Proposed Plan of Reorganization, (III) Approving Form of Various Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates With Respect Thereto* on counsel via electronic mail and/or ECF Notification.

/s/ *Linda Richenderfer*
Linda Richenderfer, Esq.