## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **MELINTA THERAPEUTICS, INC.**, *et al.*, | **Case No. 19-12748 (LSS)** |
| **Debtors.**[1] | **Jointly Administered**<br>**Related to Docket Nos. 342, 447, 448, 449, 476, 477, 478, 481, 484, 485, 487, 515** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING MODIFIED AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF MELINTA THERAPEUTICS, INC. AND ITS DEBTOR AFFILIATES

The Court having considered the *Modified Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates*, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**," "**Melinta**" or the "**Company**," or, as applicable after the Effective Date, the "**Reorganized Debtor**"), dated as of March 31, 2020, and attached hereto as **Exhibit A** (as may be amended or supplemented from time to time in accordance with its terms and including all exhibits and supplements thereto, the "**Plan**"),[2] and the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates*, dated as of February 25, 2020 [Docket No. 345] (the "**Disclosure Statement**"); and upon the *Order (I) Approving*

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Melinta Therapeutics, Inc. (0364); Cempra Pharmaceuticals, Inc. (5814); CEM-102 Pharmaceuticals, Inc. (4262); Melinta Subsidiary Corp. (9437); Rempex Pharmaceuticals, Inc. (6000); and Targanta Therapeutics Corporation (1077). The address of the Debtors' corporate headquarters is 44 Whippany Road, Suite 280, Morristown, New Jersey 07960.

[2]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as **Exhibit A**.

*Adequacy of Debtors' Disclosure Statement, (II) Approving Solicitation and Notice Procedures with Respect to Confirmation of Debtors' Proposed Plan of Reorganization, (III) Approving Form of Various Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto*, entered on February 25, 2020 [Docket No. 342] (the "**Solicitation Procedures Order**"); and the *Supplement to Amended Disclosure Statement for Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates*, [Docket No. 447] dated March 23, 2020 (the "**Disclosure Statement Supplement**"); and the Court on April 2, 2020, having held a hearing pursuant to Bankruptcy Code section 1129 to consider Confirmation (the "**Confirmation Hearing**"); and the Court having considered the *Debtor's Memorandum of Law (I) in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates and (II) in Response to Objections Thereto*, filed by the Debtors on March 31, 2020 [Docket No. 485] (the "**Confirmation Brief**"), the *Declaration of Peter Milligan in Support of Confirmation of the Modified Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates* [Docket No. 484] (the "**Milligan Declaration**"), the *Declaration of Ryan Mersch in Support of Confirmation of the Modified Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates* [Docket No. 478] (the "**Portage Point Declaration**"), the *Declaration of Aron Schwartz in Support of Confirmation of Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates* [Docket No. 477], and the *Declaration of P. Joseph Morrow IV of Kurtzman Carson Consultants LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates* [Docket No. 487] (the "**Voting Certification**"), each filed by the Debtors (and in the case of the Voting Certification, the Claims and Solicitation Agent

(as defined below)) in advance of the Confirmation Hearing; the Court having admitted into the

record and considered evidence at the Confirmation Hearing; the Court having overruled any and

all unresolved objections to confirmation of the Plan and all reservations of rights not consensually

resolved or withdrawn unless otherwise indicated herein; and after due deliberation thereon, good

and sufficient cause appearing therefor, and, in addition to the following, in accordance with the

findings and decrees made by the Court on the record at the Confirmation Hearing,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED, AND

ORDERED THAT:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.    **Jurisdiction; Venue; Core Proceeding**. This Court has jurisdiction over

the above-captioned chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine

whether the Plan complies with the applicable provisions of title 11 of the United States Code

(the "**Bankruptcy Code**") and should be confirmed.

B.    **Eligibility for Relief**. The Debtors were and are Entities eligible for relief

under Bankruptcy Code section 109.

C.    **Commencement and Administration of the Chapter 11 Cases**. On

December 27, 2019 (the "**Petition Date**"), the Debtors each commenced a case by filing a

petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The

---

[3]    All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to
Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. Each
finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall
also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or
may be deemed a finding of fact, shall also constitute a finding of fact.

Chapter 11 Cases are jointly administered. The Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee has been appointed in the Chapter 11 Cases.

        **D.**     **Filing of Plan and Plan Exhibits**. On January 17, 2020, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates* [Docket No. 120] and the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates* [Docket No. 121]. On February 25, 2020, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliates* [Docket No. 344] and the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Melinta Therapeutics, Inc. and Its Debtor Affiliate* [Docket No. 345]. On March 23, 2020, the Debtors filed the first Plan Supplement [Docket No. 448], which contained the Administrative Claim Request Form; the form of GUC Trust Agreement; the Reorganized Melinta Governance Documents; the redacted Company Disclosure Letter, and a Non-Exclusive List of Retained Causes of Action. On March 24, 2020, the Debtors filed their second Plan Supplement [Docket No. 449], which contained the Schedule of Assumed Executory Contracts and Unexpired Leases; the Schedule of Rejected Executory Contracts and Unexpired Leases, and Financial Projections for the Reorganized Debtors. On March 30, 2020, the Debtors filed their third Plan Supplement [Docket No. 476], which contained the corrected Reorganized Melinta Governance Documents and the Schedule of Directors and Officers of Reorganized Debtors. On March 23, 2020, the Debtors filed the Disclosure Statement Supplement. The Plan Supplement and the documents contained therein, as amended, comply with the terms of the Plan, and the filing and notice of the Plan Supplement materials were good and proper, and in accordance with the Bankruptcy Code,

the Bankruptcy Rules, and the Solicitation Procedures Order, and no other or further notice is or shall be required.

E.    **Transmittal of Solicitation Package**. Beginning on February 27, 2020, the Debtors, through their solicitation agent, Kurtzman Carson Consultants LLC (the "**Claims and Solicitation Agent**"), caused the applicable forms of ballots in the forms attached to the Solicitation Procedures Order (as modified, collectively, the "**Ballots**"), Opt-Out Forms, and the Solicitation Packages (as defined in the Solicitation Procedures Order) to be served and distributed as required by the Solicitation Procedures Order, Bankruptcy Code section 1125, Bankruptcy Rules 3017 and 3018, the local rules for this Court (the "**Local Rules**"), all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation, all as set forth in the Affidavits of Service of Sydney Reitzel regarding service of solicitation materials filed on March 4, 2020 [Docket No. 379] and March 17, 2020 [Docket No. 423] (the "**Solicitation Affidavits**"). The Solicitation Packages were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for creditors to accept or reject the Plan and those parties entitled to opt out of the Third-Party Release (as defined herein). The transmittal and service of the Solicitation Packages, Ballots, and Opt-Out Forms were adequate and sufficient under the circumstances and no other or further notice is or shall be required.

F.    **Adequate Notice**. As described herein and as evidenced by the Solicitation Affidavits, due, adequate, and sufficient notice of the Plan and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, was given in compliance with the Bankruptcy Code and the Bankruptcy Rules. The Debtors, through the Claims and Solicitation Agent, caused the Confirmation Hearing Notice (as set forth in Exhibit

A-2 to the Solicitation Procedures Order) to be transmitted to the parties identified in the Solicitation Affidavits. The Debtors also published the Confirmation Hearing Notice in the national and international editions of *The New York Times* on February 28, 2020, and March 3, 2020, respectively, as evidenced by the Solicitation Affidavits, in compliance with the Solicitation Procedures Order and Bankruptcy Rule 2002(l). Thus, the Debtors have given proper, adequate, and sufficient notice of the Confirmation Hearing and no other or further notice is or shall be required.

G.      **Solicitation**. Votes on the Plan were solicited in good faith and in compliance with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Supplement, the Solicitation Procedures Order, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation. Pursuant to the Solicitation Procedures (as set forth in the Solicitation Procedures Order), the Debtors transmitted Solicitation Packages (as defined in the Solicitation Procedures Order) to those Holders of Claims entitled to vote on the Plan as of the February 20, 2020 record date, or those creditors who filed proofs of claim in advance of the March 6, 2020 Bar Date.

H.      **Voting Certification**. On March 31, 2020, the Claims and Solicitation Agent filed the Voting Certification, certifying the method and results of the ballot tabulation for the Classes entitled to vote under the Plan, Classes 3 and 4 (collectively, the "**Voting Classes**"). As evidenced by the Voting Certification, as supplemented on the record at the Confirmation Hearing, both Voting Classes voted to accept the Plan, without including any acceptance of the Plan by any insider, in accordance with Bankruptcy Code section 1126.

I.      **Plan Modifications**. Subsequent to solicitation, the Debtors made certain modifications to the Plan. All such modifications since the entry of the Solicitation Procedures Order are consistent with all of the provisions of the Bankruptcy Code, including Bankruptcy Code sections 1122, 1123, 1125, and 1127. None of the aforementioned modifications is material or adversely affects the treatment of any Holder of a Claim or Interest under the Plan. Accordingly, pursuant to Bankruptcy Code section 1127(a), none of the modifications require additional disclosure under Bankruptcy Code section 1125 or re-solicitation of votes under Bankruptcy Code section 1126. Prior notice regarding the substance of any modifications to the Plan, together with the filing with the Bankruptcy Court of the Plan as modified, and the disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing (including in the Disclosure Statement Supplement) constitute due and sufficient notice of any and all such modifications. Further, in accordance with Bankruptcy Code section 1127 and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan modifications. No Holder of a Claim shall be permitted to change its vote as a consequence of the Plan modifications unless otherwise agreed to by the Holder of the Claim and the Debtors and such change is approved by the Court in accordance with Bankruptcy Rule 3018(a). The modifications to the Plan are hereby approved, pursuant to Bankruptcy Code section 1127 and Bankruptcy Rule 3019. The Plan as modified shall constitute the Plan submitted for Confirmation.

J.      **Bankruptcy Rule 3016**. The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

**K.**      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))**. The

Plan satisfies Bankruptcy Code section 1129(a)(1) because it complies with the applicable

provisions of the Bankruptcy Code, including, but not limited to: (a) the proper classification of

Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of Unimpaired

Classes of Claims and Interests (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of

Impaired Classes of Claims and Interests (11 U.S.C. § 1123(a)(3)); (d) provision for the same

treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for

adequate and proper means for implementation of the Plan (11 U.S.C. § 1123(a)(5)); (f) the

prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6));

(g) adequate disclosure of the identities and affiliations of the directors and officers of the

Reorganized Debtors as set forth in the Plan Supplement; and (h) additional plan provisions

permitted to effectuate the restructuring of the Chapter 11 Cases (11 U.S.C. § 1123(b)).

(a)      **Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))**. The

classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In

accordance with Bankruptcy Code sections 1122(a) and 1123(a)(1), Article III of the Plan

adequately and properly identifies and classifies all Claims and Interests (other than

Administrative Claims, Professional Claims, and Priority Tax Claims, which are addressed in

Article II of the Plan, and which are not required to be designated as separate Classes pursuant to

Bankruptcy Code section 1123(a)(1)). The Plan provides for the separate classification of Claims

and Interests into eight Classes based on differences in the legal nature or priority of such Claims

and Interests. Each Class of Claims and Interests contains only Claims or Interests that are

substantially similar to the other Claims and Interests within that Class, and such classification

therefore satisfies Bankruptcy Code section 1122. Valid business, factual, and legal reasons exist

for the separate classification of the various Classes of Claims and Interests under the Plan, the classifications were not made for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests. Accordingly, the requirements of Bankruptcy Code section 1123(a)(1) are satisfied.

(b)    **Specified Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2))**. The Plan specifies in Article III that Classes 1, 2, 5, and 6 are Unimpaired, thereby satisfying Bankruptcy Code section 1123(a)(2).

(c)    **Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))**. The Plan specifies in Article III that Classes 3, 4, 7, and 8 are Impaired, thereby satisfying Bankruptcy Code section 1123(a)(3).

(d)    **No Discrimination (11 U.S.C. § 1123(a)(4))**. Article III of the Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(4).

(e)    **Implementation of the Plan (11 U.S.C. § 1123(a)(5))**. Article V of the Plan provides for adequate and proper means for implementation of the Plan, thereby satisfying Bankruptcy Code section 1123(a)(5).

(f)    **Non-voting Equity Securities (11 U.S.C. § 1123(a)(6))**. The Reorganized Debtors' corporate governance documents include a provision prohibiting the issuance of non-voting equity securities pursuant to and to the extent required by Bankruptcy Code section 1123(a)(6). Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(6).

(g)    **Selection of Successor Entities (11 U.S.C. § 1123(a)(7))**. The Debtors have properly and adequately disclosed the identity and affiliations of all individuals

proposed to serve as the Debtors' directors and officers on or after the Effective Date, as set forth in Exhibit I of the third Plan Supplement [Docket No. 476]. The appointment, employment, or manner of selection of such individuals or entities and the proposed compensation and indemnification arrangements for such individuals are consistent with the interests of Holders of Claims and Interests and with public policy. Thus, Bankruptcy Code section 1123(a)(7) is satisfied.

(h)     **Postpetition Personal Service Payments (11 U.S.C. § 1123(a)(8))**. The Debtors are not "individuals" (as that term is defined in the Bankruptcy Code), as such Bankruptcy Code section 1123(a)(8) is inapplicable to the Plan.

(i)     **Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))**. Pursuant to Article III of the Plan, as set forth in Bankruptcy Code section 1123(b)(1), Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (Intercompany Claims), and Class 6 (Intercompany Interests) are Unimpaired and Class 3 (Secured Prepetition Credit Agreement Claims), Class 4 (General Unsecured Claims), Class 7 (Section 510(b) Claims and Recharacterized Claims), and Class 8 (Interests in Melinta Therapeutics) are Impaired.

(j)     **Assumption and Rejection (11 U.S.C. § 1123(b)(2))**. Article VI of the Plan addresses the assumption and rejection of Executory Contracts and meets the requirements of Bankruptcy Code section 365. The *Notice of Proposed Assumption or Assumption and Assignment of Certain Executory Contracts* [Docket No. 287] (the "**Cure Notice**"), the Supplemental Notice of Proposed Assumption of Certain Executory Contracts [Docket No. 451], and Exhibit F of the Plan Supplement provided adequate notice of the Debtors' assumption of Executory Contracts and the Cure Amounts relating thereto. The time

given to parties-in-interest to object to the assumption or rejection of their Executory Contracts and the Cure Amounts relating thereto was and will be good and sufficient, and no other or further notice is required.

(k)      **Global Settlement; Retention of Claims and Causes of Action and Reservation of Rights (11 U.S.C. § 1123(b)(3))**. Pursuant to Bankruptcy Code section 1123(b)(3) and Bankruptcy Rule 9019, the Global Settlement Term Sheet [Docket No. 275] (as amended and restated by the Amended and Restated Global Settlement Term Sheet [Docket No. 411], the "**Global Settlement Term Sheet**" and the settlement embodied therein and incorporated into the Plan, the "**Global Settlement**") constitutes a good faith compromise or settlement of all Claims, Interests, and controversies resolved thereunder, and the entry of this Confirmation Order constitutes approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromise and settlement is (a) in the best interests of the Debtors, their Estates, and their respective property and stakeholders, including the holders of Claims and Interests, and (b) fair, equitable, and within the range of reasonableness. Further, in accordance and compliance with Bankruptcy Code section 1123(b)(3)(A), Section 5.10 of the Plan properly retains certain Causes of Action and certain Avoidance Actions of the Debtors and, in accordance and compliance with Bankruptcy Code section 1123(b)(3)(B), Section 5.04 of the Plan properly transfers the GUC Trust Causes of Action to the GUC Trust.

(l)      **No Sale of Substantially All Assets (11 U.S.C. § 1123(b)(4))**. The Plan does not contemplate the sale of the Debtors' assets. The distribution of 100% of the Reorganized Melinta Common Stock to the Holders of Secured Prepetition Credit Agreement Claims in full and final satisfaction, settlement, and release of and in exchange for each and

every Allowed Secured Prepetition Credit Agreement Claim is not a sale of such Reorganized

Melinta Common Stock. Thus, Bankruptcy Code section 1123(b)(4) is inapplicable.

(m)    **Rights of Holders of Classes of Claims (11 U.S.C. § 1123(b)(5))**.
In accordance and in compliance with Bankruptcy Code section 1123(b)(5), the Plan properly

modifies the rights of Holders of Claims in Class 3 (Secured Prepetition Credit Agreement

Claims), Class 4 (General Unsecured Claims), and Class 7 (Section 510(b) Claims and

Recharacterized Claims). The Plan leaves unaffected the rights of Holders of Claims in Class 1

(Other Priority Claims), Class 2 (Other Secured Claims) Class 5 (Intercompany Claims), and

Class 6 (Intercompany Interests). Thus, the Plan complies with Bankruptcy Code section

1123(b)(5).

(n)    **Additional Plan Provisions (11 U.S.C. § 1123(b)(6))**. The Plan's
additional provisions are appropriate and consistent with the applicable provisions of the

Bankruptcy Code, including, without limitation, provisions for: (i) the Global Settlement; (ii)

distributions to Holders of Claims; (iii) transferring of the GUC Trust Assets to the GUC Trust;

(iv) releases by the Debtors of the Released Parties; (v) releases by the Releasing Parties of the

Released Parties; (vi) the injunction contained at Section 9.07 of the Plan; and (vii) the

exculpation of the Exculpated Parties.

(o)    **Debtors Are Not Individuals (11 U.S.C. § 1123(c))**. The Debtors
are not individuals. Accordingly, Bankruptcy Code section 1123(c) is inapplicable in these

Chapter 11 Cases.

(p)    **Cure of Defaults (11 U.S.C. § 1123(d))**. Section 6.02 of the Plan
provides for the satisfaction of any defaults associated with each Executory Contract to be

assumed pursuant to the Plan in accordance with Bankruptcy Code section 365(b)(1). Thus, the

Plan complies with Bankruptcy Code section 1123(d).

        **L.**      **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**.

The Debtors have complied with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Solicitation Procedures Order, and other orders of this Court, thereby

satisfying Bankruptcy Code section 1129(a)(2).

        **M.**      **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**. The Debtors

have proposed the Plan in good faith and not by any means forbidden by law. In determining that

the Plan has been proposed in good faith, the Court has examined the totality of the

circumstances surrounding the filing of the Chapter 11 Cases, and the formulation, negotiation,

and terms of the Plan and all modifications thereto, the Restructuring Support Agreement, and

the Global Settlement Term Sheet and the Global Settlement contemplated thereby. The Chapter

11 Cases were filed, and the Plan and all modifications thereto, the Restructuring Support

Agreement, and the Global Settlement Term Sheet were proposed, with the legitimate and honest

purpose of reorganizing and maximizing the value of the Debtors and the recovery to Holders of

Claims and Interests. Therefore, the Debtors have proposed the Plan in good faith and not by any

means forbidden by law, and Bankruptcy Code section 1129(a)(3) is satisfied with respect to the

Plan.

        **N.**      **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**.

Any payment made or to be made by the Debtors for services or for costs and expenses in

connection with the Chapter 11 Cases, including administrative expense and substantial

contribution claims under Bankruptcy Code sections 503 and 507, or in connection with the Plan

and incident to the Chapter 11 Cases, either has been approved by or is subject to the approval of the Court as reasonable, thereby satisfying Bankruptcy Code section 1129(a)(4).

O.      **Disclosure of Identities of Successor Entities (11 U.S.C. § 1129(a)(5))**. The Debtors, as proponents of the Plan, have complied with Bankruptcy Code section 1129(a)(5). The Debtors have properly and adequately disclosed the identity and affiliations of all individuals proposed to serve as the Debtors' directors and officers on or after the Effective Date, as set forth in Exhibit I of the third Plan Supplement Docket No. 476]. The appointment, employment, or manner of selection of such individuals or entities and the proposed compensation and indemnification arrangements for such individuals are consistent with the interests of Holders of Claims and Interests and with public policy.

P.      **No Rate Changes (11 U.S.C. § 1129(a)(6))**. Bankruptcy Code Section 1129(a)(6) is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

Q.      **Best Interests Test (11 U.S.C. § 1129(a)(7))**. The liquidation analysis attached as Exhibit B to the Disclosure Statement, the Portage Point Declaration, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors upon hypothetical conversion to a case under chapter 7 of the Bankruptcy Code, and (4) establish that each Holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Therefore, the Plan satisfies Bankruptcy Code section 1129(a)(7).

R.      **Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8))**. Classes 1, 2, 5, and 6 are Unimpaired by the Plan and therefore, under Bankruptcy Code section 1126(f), such Classes are conclusively presumed to have accepted the Plan. All Voting Classes voted to accept the Plan, without including any acceptance of the Plan by any insider. The Plan has not been accepted by Classes 7, and 8, each of which is deemed to reject the Plan. Therefore, Bankruptcy Code section 1129(a)(8) has not been satisfied with respect to these Classes that are deemed to reject the Plan. Accordingly, Confirmation is sought pursuant to Bankruptcy Code section 1129(b) with respect to such Classes.

S.      **Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))**. The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of Bankruptcy Code sections 1129(a)(9)(A) and (B), and the treatment of Priority Tax Claims under the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9)(C).

T.      **Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))**. At least one Impaired Class of Claims in the Chapter 11 Cases voted to accept the Plan determined without including any acceptance of the Plan by any "insiders." Therefore, Bankruptcy Code section 1129(a)(10) is satisfied with respect to the Plan.

U.      **Feasibility (11 U.S.C. § 1129(a)(11))**. The information in the Disclosure Statement and the financial projections attached as Exhibit H to the second Plan Supplement (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) together with the evidence presented at the Confirmation Hearing, establishes that the Plan is feasible and provides adequate and appropriate means for its implementation, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(11).

V.    **Payment of Fees (11 U.S.C. § 1129(a)(12))**. The Debtors have paid or, pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying Bankruptcy Code section 1129(a)(12).

W.    **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))**. The Debtors did not provide any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at any time prior to confirmation of the Plan and therefore, Bankruptcy Code section 1129(a)(13) is inapplicable in these Chapter 11 Cases.

X.    **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))**. The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, Bankruptcy Code section 1129(a)(14) is inapplicable in these Chapter 11 Cases.

Y.    **Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))**. The Debtors are not individuals, and accordingly, Bankruptcy Code section 1129(a)(15) is inapplicable in these Chapter 11 Cases.

Z.    **No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))**. Each of Debtors is a moneyed business, commercial corporation, or trust and accordingly, Bankruptcy Code section 1129(a)(16) is inapplicable in these Chapter 11 Cases.

AA.    **Section 1129(b); Confirmation of the Plan Over Nonacceptance of Impaired Classes**. Classes 7 and 8 are deemed to reject the Plan (the "**Rejecting Classes**"). Pursuant to Bankruptcy Code section 1129(b), the Plan may be confirmed notwithstanding that not all Impaired Classes have voted to accept the Plan. All of the requirements of Bankruptcy Code section 1129(a) with respect to such Classes, other than section 1129(a)(8), have been met. With respect to the Rejecting Classes, no Holders of Claims or Interests junior to the Holders of

such Classes will receive or retain any property under the Plan on account of such Claims or Interests. Additionally, no Class of Claims or Interests is receiving property under the Plan having a value more than the Allowed amount of such Claim or Interest. Further, the Plan does not unfairly discriminate among Classes of Claims and Interests because Holders of Claims with similar legal rights will not be receiving materially different treatment under the Plan. Specifically, classifications and recoveries under the Plan are based on the legal rights of Holders of Claims, including rights under applicable credit and debt agreements and security interests against the applicable Debtor. Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by Bankruptcy Code section 1129(b), and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding such Classes' rejection or deemed rejection of the Plan.

BB. **Only One Plan (11 U.S.C. § 1129(c))**. The Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, Bankruptcy Code section 1129(c) is inapplicable in these Chapter 11 Cases.

CC. **Principal Purpose of Plan (11 U.S.C. § 1129(d))**. No party-in-interest that is a Governmental Unit has objected to the confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

DD. **Small Business Case (11 U.S.C. § 1129(e))**. None of these Chapter 11 Cases are a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, Bankruptcy Code section 1129(e) is inapplicable.

EE.    **Global Settlement**. In accordance with Bankruptcy Rule 9019, the Plan is dependent upon and incorporates the terms of the Global Settlement. The Global Settlement is fair, equitable, reasonable, and appropriate in light of the facts and circumstances, and is in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests. The terms of the Global Settlement are approved, and the Debtors, the Reorganized Debtors, the Settlement Parties (as defined in the Global Settlement Term Sheet), the GUC Trustee, and the GUC Trust Oversight Committee as applicable, are directed to implement, effectuate, and consummate any and all transactions contemplated by the Global Settlement.

FF.    **Reorganized Melinta Common Stock.** Issuance of the Reorganized Melinta Common Stock is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors are authorized, without further approval of this Court, the board of directors or other governing body of any Debtor, the stockholders or other equity holders of any Debtor, or any other party, to issue the Reorganized Melinta Common Stock in accordance with the Plan, and to execute and deliver all agreements, documents, instruments, and certificates relating thereto. Pursuant to Bankruptcy Code section 1145(a), because the Reorganized Melinta Common Stock is being issued to the Holders of Secured Prepetition Credit Agreement Claims in exchange for such Claims, section 5 of the Securities Act and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealing in, a security do not apply to such issuance. Further, the issuance of any securities pursuant to the Plan (including the issuance of the Reorganized Melinta Common Stock) is subject to and made in good faith and in reliance upon exemptions from the registration requirements of section 5 of the Securities Act and any state or local laws requiring registration for offer or sale of a security or registration or

licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to Bankruptcy Code section 1145(a) and/or any other available exemption from registration, as applicable.

GG.    **GUC Trust**. Entry into the GUC Trust Agreement is in the best interests of the Debtors and the Debtors' Estates and creditors. Each of the establishment of the GUC Trust, the selection of Sean A. Gumbs of FTI Consulting, Inc. to serve as the GUC Trustee, and the form of the proposed GUC Trust Agreement (as it may be modified or amended) is appropriate and in the best interests of the Debtors' stakeholders. The GUC Trust Agreement shall, upon execution, be valid, binding, and enforceable in accordance with its terms. The Holders of Allowed Claims in Class 4 (General Unsecured Claims) shall receive beneficial interests in the GUC Trust entitling each Holder of and Allowed Class 4 General Unsecured Claim to receive its Pro Rata Share of any GUC Trust Distributable Cash, in accordance with the terms set forth in the Plan, the GUC Trust Agreement, and the Global Settlement Term Sheet.

HH.    **Executory Contracts**. The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts and unexpired leases pursuant to Article VI of the Plan, which provides that except as otherwise provided under the Plan, each Executory Contract and Unexpired Lease of the Debtors shall be deemed automatically rejected (subject to certain exceptions, including, without limitation, those contracts that are expressly assumed pursuant to Section 6.03 of the Plan) pursuant to Bankruptcy Code sections 365 and 1123 subject to the occurrence of the Effective Date with such rejection to be effective as of such date. Each assumption or rejection of an Executory Contract pursuant to Article VI of the Plan shall be legal, valid, and binding upon the Debtors or Reorganized Debtors and their successors or assignees (if any) and all non-debtor parties (and their assignees or successors) to such Executory Contract, all to the same extent as if such

assumption or rejection had been effectuated pursuant to an order of the Court entered before the

Confirmation Date under Bankruptcy Code section 365.

II.     **Adequate Assurance**. The Debtors have cured, or provided adequate

assurance that the Reorganized Debtors or their successors or assignees (if any) will cure,

defaults (if any) under or relating to each of the executory contracts that are being assumed by

the Debtors pursuant to the Plan. In addition, the Debtors have provided adequate assurance of

future performance regarding the Executory Contracts that are being assumed by the Debtors, as

contemplated pursuant to Bankruptcy Code section 365(b)(1)(C).

JJ.     **Releases**.

(a)     The release, injunction, indemnification, and exculpation

provisions described in Article IX of the Plan, including Sections 9.04, 9.05, 9.06, and 9.07, were

adequately disclosed and explained in the Disclosure Statement, in the Plan, and further on the

Ballots and Opt-Out Forms with respect to the third-party releases set forth in Section 9.05 of the

Plan (the "**Third-Party Release**"); are otherwise approved by this Court as appropriate pursuant

to applicable law. The Third-Party Release is consensual as to each of the Releasing Parties and

is binding upon each Releasing Party, including each Releasing Party that was afforded an

opportunity to "opt out" of the Third-Party Release and did not timely do so in accordance with

the procedures specified in the Plan, the Disclosure Statement, and the Ballots. Each of the

release, injunction, indemnification, and exculpation provisions set forth in the Plan: (i) is within

the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (ii) is an essential means of

implementing the Plan pursuant to Bankruptcy Code section 1123(a)(5); (iii) is an integral and

nonseverable element of the transactions incorporated into the Plan; (iv) confers a material

benefit on, and is in the best interests of, the Debtors, their Estates, and the Holders of Claims

and Interests; (v) is important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, operation, and reorganization; and (vi) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The failure to give effect to the release, injunction, indemnification, and exculpation provisions set forth in the Plan, as approved by this Confirmation Order, would impair the Debtors' ability to confirm and implement the Plan.

(b)     The Debtors Release set forth in Section 9.04 of the Plan is the product of extensive good faith, arm's-length negotiations and settlements of the matters covered thereby. The compromises and settlements reflected therein are made in exchange for consideration and are fair, equitable, and reasonable, and are integral elements of the Chapter 11 Cases in accordance with the Plan.

**KK.     Plan Conditions to Consummation**. Each of the conditions precedent to the Effective Date, as set forth in Section 10.02 of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

**LL.     [Reserved]**

**MM.     Burden of Proof**. The Debtors, as proponents of the Plan, have met their burden of proving the elements of Bankruptcy Code sections 1129(a) and (b) by a preponderance of the evidence, which is the applicable evidentiary standard.

**NN.     Retention of Jurisdiction**. This Court properly may retain jurisdiction over the matters set forth in Article XI of the Plan.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

## I.    Confirmation of the Plan

1.    **Confirmation**. The Plan, attached hereto as **Exhibit A**, including all Exhibits attached thereto or included in the Plan Supplement, is approved and confirmed under Bankruptcy Code section 1129. The Debtors are authorized to implement their provisions and consummate the Plan without any further authorization except as expressly required by the Plan or this Confirmation Order.

2.    **Notice**. Notice of the Plan, its exhibits, and all amendments and modifications thereto, the Disclosure Statement and the Solicitation Packages was proper and adequate.

3.    **Objections**. For the reasons stated on the record at the Confirmation Hearing, all Objections and all reservations of rights that have not been withdrawn, waived, or settled pertaining to the Confirmation of the Plan are overruled on the merits.

4.    **Authorization to Implement the Plan**. Upon the entry of this Confirmation Order, the Debtors, the Reorganized Debtors, the Settlement Parties, the GUC Trust, the GUC Trustee, the GUC Trust Oversight Committee, and any third-party Distribution Agent, as applicable, and their respective professionals, are authorized to take, or cause to be taken, all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into, or otherwise make effective all documents arising in connection therewith, prior to, on, and after the Effective Date. All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by this Court, such that no further approval, act, or action need be taken under any applicable law, order, rule, or regulation, including, without limitation, (a) the incurrence of all obligations contemplated by the Plan and

the making of Distributions and (b) the implementation of all settlements and compromises as set forth in or contemplated by the Plan.

5.      The Debtors are authorized to make payments required to be made under the Plan at any time on and after the Effective Date.

6.      **Vesting of Assets and Operation as of the Effective Date.** Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates, including Causes of Action that are not released pursuant to the Plan (including, without limitation, pursuant to Section 9.04 thereof) or an order of the Bankruptcy Court, whether arising before or after the Petition Date, including any actions or categories of actions specifically enumerated in Exhibit E to the Plan Supplement, shall vest in the Reorganized Debtors which, as Debtors, owned such property or interest in property as of the Effective Date, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests. As of and following the Effective Date, the Reorganized Debtors, or the GUC Trust (as applicable) may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

7.      **Discharge, Releases, Injunctions, Limitations of Liability, and Exculpation**. All discharge, releases, injunctions, limitations of liability, and exculpation provisions in the Plan, including, without limitation, those in Article IX of the Plan, are fair and equitable and are in the best interest of the Debtors and all parties-in-interest. Pursuant to the applicable provisions of the Bankruptcy Code and other applicable law, such provisions shall be effective and binding on all persons and entities, to the extent provided therein, and are hereby

approved in their entirety. The Debtor Release set forth in Section 9.04 of the Plan is given for valuable consideration.

8.    **Plan Classification and Treatment**. All Claims and Interests shall be, and hereby are, classified and treated as set forth in the Plan. The Plan's classification scheme shall be, and hereby is, approved. The classifications set forth in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any creditor as representing the actual classification of such Claims under the Plan for distribution purposes; and (d) shall not bind the Debtors, the Reorganized Debtors, the GUC Trust, the GUC Trustee, or any third-party Distribution Agent. The treatment of Claims and Interests as provided for in the Plan is approved.

9.    **Cancellation of Equity Securities and Related Documents**. Except as otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, securities, and other documents, in each case evidencing Interests in Melinta Therapeutics shall be deemed canceled and surrendered without any need for further action or approval of the Bankruptcy Court or any Holder or other person, and the obligations of the Debtors or the Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed terminated.

10.    **Substantive Consolidation**. In light of the fact that substantive consolidation will promote a more equitable distribution of the Debtors' assets, the substantive consolidation of the Chapter 11 Cases and Estates that comprise the Debtors is in the best interests of the Debtors' stakeholders and is appropriate under Bankruptcy Code section 105(a)

and is hereby approved for distribution purposes only. On the Effective Date, each Claim filed or

to be filed against any Debtor shall be deemed filed only against Melinta Therapeutics and shall

be deemed a single Claim against and a single obligation of Melinta Therapeutics for distribution

purposes only and the claims register shall be updated accordingly without the need for further

Court Order. This limited substantive consolidation effected pursuant to Section 5.01 of the Plan

shall not otherwise affect the rights of any Holder of any Claim, or affect the obligations of any

Debtor with respect to such Claim.

11. **Reorganized Corporate Governance Documents; Dissolution of**

**Certain Entities**. The terms of the corporate governance documents for Reorganized Melinta, as

set forth in the third Plan Supplement (collectively, the "**New Corporate Governance**

**Documents**"), and all related documents are approved in all respects. On the Effective Date,

without further approval of this Court, the board of directors or other governing body of any

Debtor or Reorganized Debtor, the stockholders or other equity holders of any Debtor or

Reorganized Debtor, or any other party, each Reorganized Debtor will be and is authorized to

enter into and/or execute the applicable New Corporate Governance Documents and any other

documents or agreements related thereto, perform all of its obligations thereunder, and take such

other actions as any of the stockholders, directors, or responsible officers of such Reorganized

Debtor may determine are necessary, appropriate, or desirable in connection with the

consummation of the transactions contemplated by, or related to, the New Corporate Governance

Documents. On the Effective Date, Rib-X Therapeutics Ltd. shall be deemed dissolved under

applicable law for all purposes without the necessity for any other or further actions to be taken

by or on behalf of such Entities or payments to be made in connection therewith; *provided,*

*however*, the Debtors or the Reorganized Debtors, as applicable, may, but are not required, to take any actions they determine to be desirable to effectuate the foregoing.

12.    **Issuance of the Reorganized Melinta Common Stock**. Issuance of the Reorganized Melinta Common Stock in accordance with the Plan is approved. The Debtors and the Reorganized Debtors, as applicable, are authorized and empowered, without further approval of this Court, the board of directors or other governing body of any Debtor or Reorganized Debtor, the stockholders or other equity holders of any Debtor or Reorganized Debtor, or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the Reorganized Melinta Common Stock in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto. The Reorganized Melinta Common Stock to be issued under the Plan is hereby deemed issued as of the Effective Date regardless of the date on which it is actually distributed. All Reorganized Melinta Common Stock issued by the Reorganized Debtors pursuant to the provisions of the Plan is hereby deemed to be duly authorized, validly issued, fully paid, and non-assessable, and shall be free and clear of all taxes, Liens, preemptive rights, subscription rights, and similar rights, other than any rights set forth in the New Corporate Governance Documents.

13.    **Exemption from Registration**. The offering, issuance, and distribution of any securities pursuant to the Plan (including the Reorganized Melinta Common Stock) will be exempt from the registration requirements of section 5 of the Securities Act and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealing in, a security, in each case, pursuant to section 1145 of the Bankruptcy Code and any other available exemption from registration, and such securities shall

be treated as having been issued pursuant to the Plan and section 1145 of the Bankruptcy Code.

In reliance upon these exemptions, the offer, issuance, and distribution of securities pursuant to

the Plan will not be registered under the Securities Act or any applicable state "Blue Sky" laws.

14.     On and after the Effective Date, Reorganized Melinta Therapeutics will be

a private company, and the governance of the Reorganized Debtors, and all documents or

agreements relating thereto, shall be determined by the Supporting Lenders in their sole

discretion and described and included in the Plan Supplement.

15.     As of the Effective Date: (a) any Reorganized Melinta Common Stock

will not be registered under the Securities Act, listed on a national securities exchange, or quoted

in the over-the-counter marketplace; (b) Reorganized Melinta Therapeutics and the other

Reorganized Debtors will not be reporting companies under the Securities Act; (c) Reorganized

Melinta Therapeutics and the other Reorganized Debtors will not be required to, and will not, file

reports or other information with the Securities and Exchange Commission or any other person

or agency; and (d) Reorganized Melinta Therapeutics and the other Reorganized Debtors will not

be required to file monthly operating reports with the Bankruptcy Court after the Effective Date.

16.     **Exemption from Certain Transfer Taxes and Recording Fees**. To the

fullest extent contemplated by Bankruptcy Code section 1146(a), any transfers of property

pursuant to the Plan or any transfers of property made in connection therewith (whether such

transfers are made by the Debtors, Reorganized Debtors, or other Person) shall not be subject to

any stamp tax or similar tax, and upon entry of this Confirmation Order, the appropriate state or

local governmental officials or agents shall forgo the collection of any such tax or governmental

assessment and accept for filing and recordation any of the foregoing instruments or other

documents without the payment of any such tax or governmental assessment. The Bankruptcy

Court shall retain specific jurisdiction with respect to these matters.

17.     **Utility Deposits**. On the Effective Date, the Debtors are authorized to

release any and all funds deposited into any segregated accounts maintained for the benefit of

any utility companies pursuant to any interim or final order of the Court approving the Debtors'

proposed form of adequate assurance of payment for future utility services and granting related

relief.

18.     **Continued Effect of Stays, Injunctions, and Trading Procedures.**

Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in

effect in the Chapter 11 Cases under Bankruptcy Code sections 105(a) or 362 or any order of this

Court shall remain in full force and effect until the Effective Date. The notice and hearing

procedures for trading in, or claims of worthlessness with respect to, Interests in Melinta

Therapeutics [Docket No. 284], shall remain in full force and effect notwithstanding the

occurrence of the Effective Date.

**II.     Unexpired Leases and Executory Contracts**

19.     **Rejection and Assumption of Executory Contracts and Unexpired**

**Leases**. The Executory Contract and Unexpired Lease provisions of Article VI of the Plan are

approved.

(a)     Upon the occurrence of the Effective Date, each Executory

Contract and Unexpired Lease shall be deemed rejected in accordance with, and subject to,

sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such

Executory Contract or Unexpired Lease: (i) is listed on the Schedule of Assumed Executory

Contracts contained in the Plan Supplement; (ii) has been previously assumed by the Debtors by

Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is an Insurance Contract. This Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements of the Plan.

(i)  **[Reserved]**

(ii)  **Rejection Damages Claim Procedures**. Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date, the effective date of rejection, or the date notice of such rejection is transmitted by the Reorganized Debtors, as applicable, to the counterparty to such Executory Contract or Unexpired Lease. The Reorganized Debtors shall provide the GUC Trustee with a copy of all notices of rejection transmitted to counterparties as and when transmitted. The Reorganized Debtors or the GUC Trustee, as applicable, shall be entitled to object to, and seek disallowance of, any proofs of Claim arising from the rejection of Executory Contracts and Unexpired Leases, including on the grounds that they were not timely filed and served.

(iii)  **Reservation of Rights**. Notwithstanding anything herein to the contrary, prior to the Effective Date, the Debtors may amend their decision with respect to

29

the rejection of any Executory Contract or Unexpired Lease, without limiting the Debtors' right under paragraph 19(c)(vi) of this Order to amend their decision with respect to certain Executory Contracts and Unexpired Leases until the earlier of (x) 21 days following the entry of a Final Order determining the Cure Amount as greater than the amount that had been posited by the Debtors or the Reorganized Debtors or requiring adequate assurance of future performance in an amount greater than had been proposed by the Debtors or the Reorganized Debtors or (y) payment of the Cure Amount.

(b)    **Executory Contracts and Unexpired Leases to Be Assumed.**

Upon the occurrence of the Effective Date, and subject to paragraph 35, each Executory Contract that (i) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases contained in the Plan Supplement; (ii) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is an Insurance Contract, shall be deemed assumed, in accordance with, and subject to, sections 105, 365 and 1123 of the Bankruptcy Code as of the Effective Date; *provided, however*, that no Executory Contract subject to a timely filed objection to assumption (whether to Cure Amount, adequate assurance of future performance, or otherwise) pending as of the Effective Date shall be assumed prior to the resolution of such objection.

(c)    This Confirmation Order is an order of the Bankruptcy Court approving such assumptions pursuant to sections 105, 365 and 1123 of the Bankruptcy Code as of the Effective Date. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents,

30

or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized

Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision shall

be deemed modified such that the transactions contemplated by the Plan will not entitle the non-

Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any

other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease

assumed pursuant to Article VI of the Plan will revest in and be fully enforceable by the

Reorganized Debtors except as modified by the provisions of the Plan, any order of the

Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(i)      **Modifications, Etc.** Unless otherwise provided in the Plan,

each Executory Contract or Unexpired Lease that is assumed shall include all modifications,

amendments, supplements, restatements, or other agreements that in any manner affect such

Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all

easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and

any other interests, unless any of the foregoing agreements have been previously rejected or

repudiated or are rejected or repudiated pursuant to the Plan. Modifications, amendments,

supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that

have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the

prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or

amount of any Claims that may arise in connection therewith.

(ii)      **Proofs of Claim Based on Assumed Contracts or Leases**.

Any and all proofs of Claim based on Executory Contracts and Unexpired Leases that have been

assumed or assumed and assigned in the Chapter 11 Cases, including under the Plan, except

proofs of Claim asserting Cure Amounts, pursuant to the order approving such assumption or

31

assumption and assignment, including the Sale Order and the Confirmation Order, shall be deemed Disallowed and expunged from the Claims register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

(iii)    **Cure Proceedings and Payments**. Except with respect to Executory Contracts and Unexpired Leases for which the Cure Amount is zero dollars, or for which the Cure Amount is in dispute, the Cure Amount shall be satisfied by the Reorganized Debtors, if any, by payment of the Cure Amount in Cash within 30 days following the occurrence of the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.

(iv)    Any provisions or terms of the Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by payment of the Cure Amount, or by an agreed-upon waiver of the Cure Amount. If there is a dispute regarding such Cure Amount, the ability of the Reorganized Debtors to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the Cure Amount shall occur within 30 days after entry of a Final Order resolving such dispute, approving such assumption, or as may be agreed upon by the Reorganized Debtors and the counterparty to the Executory Contract or Unexpired Lease; *provided, however*, that the Reorganized Debtors shall have the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease within 21 days following the entry of a Final Order determining the Cure Amount as greater than the amount that had been posited by the

Reorganized Debtors, or requiring adequate assurance of future performance in an amount greater than had been proposed by the Reorganized Debtors.

(v)     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cure Amount, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption, as applicable.

(vi)    **Reservation of Rights**. Notwithstanding anything to the contrary herein, prior to the Effective Date, the Debtors may amend their decision with respect to the assumption of any Executory Contract or Unexpired Lease and provide a new notice amending the information provided in the applicable notice. In the case of an Executory Contract or Unexpired Lease designated for assumption that is the subject of a Cure Amount objection that has not been resolved prior to the Effective Date, the Reorganized Debtors may designate such Executory Contract or Unexpired Lease for rejection at any time prior to the earlier of (x) 21 days following the entry of a Final Order determining the Cure Amount as greater than the amount that had been posited by the Debtors or the Reorganized Debtors or requiring adequate assurance of future performance in an amount greater than had been proposed by the Debtors or the Reorganized Debtors or (y) payment of the Cure Amount, as set forth in Section 6.03 of the Plan, and shall promptly thereafter provide such notice of such designation to the GUC Trustee.

(vii)   **Related Documents**. Except as otherwise provided for in the Plan, all notes, instruments, certificates, agreements, indentures, mortgages and other

documents related to Executory Contracts and Unexpired Leases that are rejected pursuant to the Plan or otherwise shall not be enforceable against the Reorganized Debtors or their property.

(d)    **General Reservation of Rights**. Neither the exclusion nor inclusion of any contract or lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors, the Reorganized Debtors, the Committee, or the GUC Trustee, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors, the Reorganized Debtors or the GUC Trustee, or any of their Affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtors shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

20.    **Postpetition Contracts and Leases**. Contracts and leases entered into after the Petition Date by the Debtors may be performed by the Reorganized Debtors in the ordinary course of business in accordance with the terms thereof.

21.    **Amendment of Contract Schedules**. For the avoidance of doubt, the Debtors may amend, modify, or supplement the Schedule of Assumed Executory Contracts and the Schedule of Rejected Executory Contracts from time to time, but only within the timeframes set forth herein, including, without limitation, in paragraphs 19(a)(iii), 19(c)(iv), 19(c)(vi), and 19(d) hereof.

## III.    Bar Dates and Other Deadlines

22.    **Administrative Claims Bar Date**. Except as otherwise provided herein or in the Plan and as set forth in Sections 2.02 and 2.03 of the Plan, all requests for payment of an Administrative Claim must be filed, in substantially the form of the Administrative Claim

Request Form contained in Exhibit A to the Plan Supplement, with the Claims and Solicitation

Agent and served on counsel for the Debtors and the GUC Trustee no later than the

Administrative Claims Bar Date, which shall be thirty days after the Effective Date of the Plan,

unless otherwise ordered by the Bankruptcy Court (except with respect to (a) Professional

Claims; (b) Administrative Claims Allowed by a Final Order of the Bankruptcy Court on or

before the Effective Date; (c) Administrative Claims that are not Disputed and arose in the

ordinary course of business and were paid or are to be paid in accordance with the terms and

conditions of the particular transaction giving rise to such Administrative Claim;

(d) Restructuring Expenses; or (e) Administrative Claims arising under chapter 123 of title 28 of

the United States Code). Holders of Administrative Claims that are required to, but do not, file

and request payment of such Administrative Claim(s) by the applicable Administrative Claims

Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative

Claims against the Debtors or their property and such Administrative Claims shall be deemed

disallowed in full as of the Effective Date, absent further order of this Court.

23.     **Professional Claims.** In accordance with and pursuant to Section 2.03 of

the Plan, the amount of Professional Claims owing to the Professionals will be paid in Cash upon

approval of such Claims by the Bankruptcy Court; *provided* that, in accordance with Section

2.03 of the Plan, all final requests for payment of Professional Claims must be filed no later than

45 days after the Effective Date; *provided, further*, that all requests for payment of Professional

Claims shall be made in accordance with the applicable terms of the *Order Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket

No. 256].

24.     **Distribution Record Date**. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the Distribution Record Date for determining which Holders of certain Allowed Claims are eligible to receive distributions under the Plan shall be the Confirmation Date.

## IV.     GUC Trust

25.     **GUC Trust Oversight Committee**. The appointment of TrialCard Inc., Lonza Ltd., and Amplity, Inc. to the GUC Trust Oversight Committee is hereby approved. Each of the members of the GUC Trust Oversight Committee shall have all rights, powers, duties, and protections afforded the GUC Trust Oversight Committee and its members under the Plan and the GUC Trust Agreement. The Oversight Committee shall terminate and be disbanded, with all members deemed to have resigned therefrom upon the earlier of (a) the payment in full of all Allowed Class 4 General Unsecured Claims and (b) the termination of the GUC Trust Agreement in accordance with its terms.

26.     **GUC Trust**. The formation, rights, powers, duties, structure, obligations, and other matters pertaining to the GUC Trust shall be governed by Article V of the Plan and the GUC Trust Agreement (which such agreement shall be substantially in the form of Exhibit B to the Plan Supplement) is hereby approved. Sean A. Gumbs of FTI Consulting, Inc. is hereby appointed as the GUC Trustee.

27.     The GUC Trust Oversight Committee shall oversee the GUC Trustee and the GUC Trustee shall consult with, and seek the consent of, the Oversight Committee as provided for the in GUC Trust Agreement. In furtherance of and consistent with the purpose of the GUC Trust, the Plan, and this Confirmation Order, subject to the terms and conditions contained in the GUC Trust Agreement, in the Plan, or in this Confirmation Order, the GUC

Trustee shall (a) hold the GUC Trust Assets for the benefit of Beneficiaries (as defined in the GUC Trust Agreement), and (b) authorize and effectuate distributions of GUC Trust Distributable Cash, if any, in its commercially reasonable determination (in consultation with the GUC Trust Oversight Committee). The GUC Trustee shall be responsible for all decisions and duties with respect to the GUC Trust and the GUC Trust Assets. In all circumstances, the GUC Trustee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the GUC Trust, and shall use commercially reasonable efforts to dispose of the GUC Trust Assets and to make timely distributions and not unduly prolong the duration of the GUC Trust.

28.      **Transfer of GUC Trust Assets**. On the Effective Date, (a) the Initial GUC Trust Funding Amount shall be transferred to the GUC Trust and (b) all GUC Trust Causes of Action shall be vested in the GUC Trust. The GUC Trust will be administered by the GUC Trustee subject to the oversight and direction of the GUC Trust Oversight Committee. On the Effective Date, or as soon as reasonably practical thereafter and provided that the Global Settlement Term Sheet remains in full force and effect and has not terminated, the Vatera GUC Trust Contribution shall be transferred to the GUC Trust. The Debtors and the Reorganized Debtors shall have no direct or indirect control, influence, or authority over the GUC Trust, the GUC Trustee, or the GUC Trust Oversight Committee or any of their respective decisions. The GUC Trust shall be a legally separate and distinct Entity from the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary herein, the GUC Trust Oversight Committee and the GUC Trustee shall collectively have the exclusive control over all aspects of the GUC Trust Causes of Action, including the investigation, prosecution and disposition of same, in accordance with the terms of the GUC Trust Agreement, and the Reorganized Debtors shall have no rights, powers or duties with respect to any aspect of any of the GUC Trust Assets.

29.    The Reorganized Debtors shall reasonably cooperate in good faith with the GUC Trustee in the administration of the GUC Trust, the parties agreeing, that (a) the GUC Trustee may make reasonable requests for records and documents held by the Reorganized Debtors and assistance from individual persons employed by the Reorganized Debtors, in connection with the GUC Trustee's pursuit of objections to claims and his administration of the GUC Trust and the Reorganized Debtors shall provide reasonable cooperation in responding to such requests, at no cost to the GUC Liquidating Trust; *provided, however*, that the GUC Trustee shall use reasonable best efforts to make all such requests within 60 days of the Effective Date, (b) the Reorganized Debtors are not fiduciaries or agents of the GUC Trust and owe no duties or obligations to the GUC Trust or the Beneficiaries except as otherwise set forth in the Confirmation Order, the Plan, or this Agreement, (c) the Reorganized Debtors, by providing information to the GUC Trustee, shall not be deemed to warrant as to the accuracy or completeness of any information provided, (d) the GUC Trustee shall reimburse the Reorganized Debtor for any legal fees reasonably incurred to the extent that a representative of a reorganized Debtor must provide testimony or otherwise participate in litigation resulting from matters being defended or pursued by the GUC Trustee, and (e) where the Reorganized Debtors deem one or more requests for information made by the GUC Trustee to be (i) unreasonable in terms of the time, effort and expense of the request measured against the benefit to be gained or (ii) made, without reasonable justification, more than 60 days after the Effective Date, the Reorganized Debtors may refuse to cooperate with the GUC Trustee (a "**Dispute**"). If a Dispute occurs under Section 2.7 of the GUC Trust Agreement, and the GUC Trustee and the Reorganized Debtors cannot resolve the Dispute without outside assistance, then the Court shall retain jurisdiction to hear and determine such dispute under Section 2.7 of the GUC Trust Agreement.

V.    **Injunction, Release, and Exculpation Provisions**

30.    **Discharge of Debtors.** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or this Confirmation Order, and effective as of the Effective Date: (a) Confirmation of the Plan discharges the Debtors and the Reorganized Debtors with respect to all Claims and Interests, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, at law, in equity, or otherwise, including any interest accrued on such Claims from and after the Petition Date, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed under section 502 of the Bankruptcy Code, or (iii) the Holder of such a Claim, right, or Interest accepted the Plan; (b) the Plan shall bind all Holders of Claims and Interests notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) the Debtors and the Reorganized Debtors shall be released in full from all Claims and Interests, and the Debtors and the Reorganized Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Estates, or the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims, Interests, or obligations based upon any documents,

instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. This Confirmation Order is a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the occurrence of the Effective Date.

        31.    **Debtor Release**.

        (a)    As of the Effective Date, except for the rights, if any, that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in this Confirmation Order, the Released Parties, in all capacities, will be deemed forever released, to the maximum extent permitted by law, by the Debtors, the Reorganized Debtors, the Estates, all affiliates or subsidiaries managed or controlled by the foregoing, and each of their predecessors, successors and assigns, subsidiaries, and affiliates, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and such persons' respective heirs, executors, estates, servants, and nominees, from any and all Claims, Interests, or Causes of Action whatsoever, including any derivative Claims, asserted or that could have been asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, at law, in equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising from, in whole or in part, directly or indirectly, in any manner whatsoever, the Debtors, the assets, liabilities, operations, or business

of the Debtors, the Restructuring (as defined in the Restructuring Support Agreement), the Chapter 11 Cases, the purchase, transfer, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the making of any loan to the Debtors or the Reorganized Debtors, any royalty arrangement with any Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan, the Term Sheet, the Restructuring Support Agreement, the Definitive Documents, or any related agreements, instruments, or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that nothing in the Plan shall be construed to release the Released Parties from willful misconduct or actual fraud as determined by a Final Order; *provided, further*, that, on or promptly following the Effective Date, the Debtors and MedCo shall dismiss with prejudice all claims pending against one another and their current and former directors and officers and all claims asserted by the Debtors in any pending litigation against MedCo (and their current and former directors and officers, to the extent applicable) shall be released; *provided, further*, that the dismissal shall not impair MedCo's ability to assert and liquidate a prepetition general unsecured claim, solely against the Debtors, with respect to any such pending claims, subject to the terms of the subordination set forth in Section 5.04 of the Plan. Notwithstanding the foregoing, no claim of the Debtors against any former employee of the Debtors on account of such former employee's failure to return any amount awarded to him or her pursuant to the

Debtors' prepetition employee bonus and retention plan in accordance with the terms of the

applicable letter agreement governing the same is released pursuant to Section 9.04 of the Plan.

(b)    Entry of this Confirmation Order constitutes the Bankruptcy

Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by

reference each of the related provisions and definitions contained in the Plan, and further, shall

constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good

and valuable consideration provided by the Released Parties; (ii) a good-faith settlement and

compromise of the claims released by the Debtor Release; (iii) in the best interests of the Debtors

and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made

after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors or the

Reorganized Debtors or their respective Estates or the GUC Trustee asserting any claim, Cause

of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties

or their property, released pursuant to the Debtor Release.

32.    **Third-Party Release**.

(a)    As of the Effective Date, the Releasing Parties conclusively,

absolutely, unconditionally, irrevocably, and forever release (and each entity so released shall be

deemed released by the Releasing Parties) the Released Parties, in all capacities, and their

respective property from any and all Claims, Interests, obligations, rights, suits, damages, causes

of action, remedies, and liabilities whatsoever, including any derivative claims asserted or

assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, any Claims or

causes of action asserted on behalf of any Holder of any Claim or any Interest or that any Holder

of a Claim or an Interest would have been legally entitled to assert, whether known or unknown,

foreseen or unforeseen, existing or hereinafter arising, at law, in equity, or otherwise, that such

Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising prior to the Effective Date from, in whole or in part, directly or indirectly, in any manner whatsoever, the Debtors, the assets, liabilities, operations, or business of the Debtors, the Restructuring (as defined in the Restructuring Support Agreement), the Chapter 11 Cases, or the Restructuring Support Agreement, the purchase, sale, transfer, or rescission of any debt, security, asset, right, or interest of the Debtors or the Reorganized Debtors, the making of any loan to the Debtors or the Reorganized Debtors, any royalty arrangement with any Debtor, the subject matter of, or the transactions or events giving rise to, any Claim against or Interest in the Debtors that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation, or preparation of the Restructuring documents or related agreements, instruments, or other documents, including the Plan, the Term Sheet, the Restructuring Support Agreement, the Definitive Documents (as defined in the Restructuring Support Agreement), or any related agreements or instruments, or the solicitation of votes with respect to the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that nothing in the Plan shall be construed to release the Released Parties from any claims based upon willful misconduct or intentional fraud as determined by a Final Order.

(b)     Entry of this Confirmation Order constitutes the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is (i) given and made after due notice and opportunity for hearing; (ii) consensual as to all Releasing Parties due to such parties' acceptance

of the Plan or lack of objection to or failure to opt out of the Third-Party Release; and (iii) a bar

to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto,

of any kind whatsoever, against any of the Released Parties or their property released pursuant to

the Third-Party Release.

(c)    Notwithstanding any language to the contrary contained in the

Disclosure Statement, Plan and/or this Confirmation Order, this release shall not (i) preclude the

United States Securities and Exchange Commission ("**SEC**") from enforcing its police or

regulatory powers; or, (ii) operate to release any claims or causes of action held directly (but not

derivatively) by the SEC against any non-Debtor person or non-Debtor entity.

33.    **Exculpation and Limitation of Liability**. To the maximum extent

permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party

is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand,

debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising

out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the

Restructuring (as defined in the Restructuring Support Agreement), the Disclosure Statement, the

Restructuring Support Agreement, the Plan, or the solicitation of votes for, or confirmation of,

the Plan; the funding or consummation of the Plan; the Debtors' sales and marketing process, the

Bidding Procedures, the Bidding Procedures Motion, and the Bidding Procedures Order; the

occurrence of the Effective Date; the administration of the Plan or the property to be distributed

under the Plan; the issuance of securities under or in connection with the Plan; or the transactions

in furtherance of any of the foregoing, except for fraud or willful misconduct, as determined by a

Final Order. This exculpation will be in addition to, and not in limitation of, all other releases,

indemnities, exculpations, and any other applicable law or rules protecting such Exculpated

44

Parties from liability, and this exculpation is not intended to, and shall not, limit the releases given by the Releasing Parties or to the Released Parties under the Plan. Notwithstanding Section 1.54 of the Plan, no Exculpated Party shall be exculpated for conduct after the Effective Date.

34. **Injunction.**

(a)    Upon entry of this Confirmation Order, all persons acting in any capacity, including all Holders of Claims and Interests and their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan and the Restructuring (as defined in the Restructuring Support Agreement) in relation to any Claim, Interest, security or agreement, or Cause of Action that is extinguished, discharged, cancelled, surrendered or released pursuant to the Plan

(b)    Except as expressly provided in the Plan, this Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a Holder of a Claim against or Interest in a Debtor, all Entities that have held, hold, or may hold Claims against or Interests in the Debtors whether or not such parties have voted to accept or reject the Plan and other parties-in-interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claim, Interest, security or agreement, or Cause of Action that is extinguished, discharged, cancelled, surrendered or released pursuant to the Plan, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without

limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)     The injunctions in the Plan shall extend to any successors of the Debtors and the Reorganized Debtors and their respective property and interests in property.

## VI.     Objections

35.     **United States of America**. Notwithstanding any provision to the contrary in the Plan, this Order, or any Plan documents (collectively, "**Documents**"):

(a)     Solely as to the United States, nothing in the Documents shall: (1) discharge, release, enjoin, impair or otherwise preclude (a) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code ("claim"), (b) any claim of the United States arising after the Confirmation Date, or (c) any liability of any entity or person under police or regulatory statutes or regulations to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code) as the owner, lessor, lessee or operator of property or rights to property that such entity owns, operates or leases after the Confirmation Date; (2) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (3) expand the scope of Bankruptcy Code Section 525; (4) pursuant to Bankruptcy Code Sections 105, 365

and 1123, authorize the assumption, sale, assignment or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including, but not limited to, intellectual property and patents, (v) leases, (vi) agreements or other interests of the federal government (collectively, "Federal Interests") without compliance by the Debtors and the Reorganized Debtors with all terms of the Federal Interests and with all applicable non-bankruptcy law; (5) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the assumption, transfer or assignment of any Federal Interests; (6) authorize the assumption, transfer or assignment of any governmental police or regulatory (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal, requirements, obligations and approvals under non-bankruptcy laws; (7) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, claims, liabilities and Causes of Action, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (8) waive, alter or otherwise limit the United States' property rights with respect to the Federal Interests, including, but not limited to, inventory, patents, intellectual property, licenses, and data; (9) release, exculpate, enjoin, impair or discharge any non-Debtor from any claim, liability, suit, right or Cause of Action of the United States; (10) cause a late filed claim of the United States to be disallowed pursuant to the Plan if it would otherwise be allowed pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or applicable law, without prejudice to the right of the Debtors, the Reorganized Debtors, and/or the GUC Trust to object to any claim of the United States on any appropriate ground, including that it is late filed; (11) affect any setoff or recoupment rights of the United States and such rights are preserved; (12) require the United States to file an administrative claim in order to receive payment for any

liability described in Section 503(b)(1)(B) and (C) pursuant to Section 503(b)(1)(D) of the Bankruptcy Code; (13) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (14) be construed as a compromise or settlement of any liability, claim, Cause of Action or interest of the United States; (15) expand or limit the scope of Section 502 of the Bankruptcy Code with respect to the claims of the United States; or (16) cause the filing of any claim, including, but not limited to, amended claims, by the United States to be automatically disallowed and expunged on or after the Effective Date.

(b)    Administrative expense claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until paid in full to the extent such interest and penalties are allowed pursuant to the Bankruptcy Code. To the extent the Priority Tax Claims of the United States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) allowed pursuant to the Bankruptcy Code or the Plan are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code. Moreover, nothing shall effect a release, injunction or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates (but, for the avoidance of doubt, not against any Reorganized Debtor) by or on behalf of the United States for any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods

for which a tax return has not been filed or b) from a pending audit or audit that may be

performed with respect to any pre-petition or post-petition tax period. Any liability arising a) out

of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result

of a pending audit or audit which may be performed with respect to any pre-petition or post-

petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy

Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the

Documents shall be deemed to bind the United States to any characterization of any transaction

for tax purposes or to determine the tax liability of any person or entity, including, but not

limited to, the Debtors and the Reorganized Debtors, nor shall the Documents be deemed to have

determined the federal tax treatment of any item, distribution, or entity, including the federal tax

consequences of the Plan, nor shall anything in the Documents be deemed to have conferred

jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and

federal tax treatment except as provided under Section 505 of the Bankruptcy Code.

(c)        The federal contract identified in the Debtors' *Schedule of*

*Eliminated Agreements* [Docket No. 452-1] (the "**Schedule of Eliminated Agreements**") as the

Biomedical Advanced Research and Development Authority (BARDA) - Contract

HHSO100201400002C (Vabomere) (the "**BARDA Agreement**") is deemed removed from the

Schedule of Eliminated Agreements and shall be treated as an expired, non-executory contract

and neither assumed nor rejected. Without limiting the foregoing but for the avoidance of doubt,

notwithstanding any provision to the contrary in the Documents, the Debtors will not seek to

reject a federal contract without giving notice to the federal party to the contract and the United

States Attorney for the District of Delaware. Any federal contract rejected by the Debtors shall

not be subject to Article VI, Section 6.02(a) of the Plan and shall be treated in accordance with the applicable provisions of the Bankruptcy Code.

36.     **Cigna**. For the avoidance of doubt, all of the Employee Benefits Agreements, as defined in the *Objection of Cigna to Supplemental Notice of Proposed Assumption of Certain Executory Contracts* [Docket No. 457] filed by Cigna Health and Life Insurance Company, *et al.* ("**Cigna Objection**") are deemed Insurance Contracts for purposes of the Plan and Section 6.05 thereof, and this paragraph 36, together with Section 6.05 of the Plan, fully resolves the Cigna Objection.

37.     **McKesson**. The Core Distribution Agreement between McKesson Corporation and Melinta Therapeutics, Inc. dated as of October 5, 2017 ( the "**Distribution Agreement**"), which includes and incorporates the McKesson Supplier Terms & Conditions ("**STC**", which together with the Distribution Agreement constitute the "**McKesson Assumed Agreement**") shall be assumed as of the Effective Date subject to the proviso set forth in this paragraph and without any cash cure payment obligation; *provided, however*, that notwithstanding anything to the contrary in the Plan or this Order, any rights of McKesson (as that term is defined in the STC) to "set-off, recoup, deduct and apply" pursuant to Section 2.C of the STC due under the Debtors' agreements with McKesson Corporation, CoverMyMeds LLC, or NDCHealth Corporation d/b/a RelayHealth shall pass through to the Reorganized Debtors and survive assumption so that nothing in the Plan, this Order, or 11 U.S.C. § 365 shall affect the parties' rights or obligations with respect thereto. The parties' rights are expressly reserved with respect to whether McKesson (as that term is defined in the STC) had, has, or will have any valid and enforceable rights under the McKesson Assumed Agreement to "set-off, recoup, deduct and apply," such that McKesson's ability to assert such rights is preserved as well as the Debtors'

and Reorganized Debtors' rights to contest any such assertion by McKesson. The inclusion of this paragraph in this Order resolves in its entirety McKesson Corporation's (1) Objection To Cure Amount Set Forth In Notice Of Proposed Assumption Of Certain Executory Contracts; And (2) Limited Objection To Confirmation Of First Amended Plan Of Reorganization [Docket No. 458].

38.    **CyDex.** Notwithstanding anything in the Plan (including the Plan Supplement) or this Order to the contrary, the License (as defined in the *Limited Objection and Reservation of Rights of CyDex Pharmaceuticals, Inc. to Debtors' Notice of Proposed Assumption and Assignment of Certain Executory Contracts* [Docket No. 361]) is not assumed pursuant to the Plan or this Order. The Debtors will not seek to assume the Cydex License except by motion, upon notice to CyDex Pharmaceuticals, Inc. ("**CyDex**"). The CyDex License, if assumed by motion, shall not be subject to the provisions of the Plan governing (directly or indirectly) the assumption of Executory Contracts or the corollary provisions of this Order and shall instead be treated in accordance with the applicable provisions of the order, if any, approving assumption of the CyDex License. The Debtors' right to file any such assumption motion, and CyDex's right to oppose any such assumption motion, are preserved. In the event of rejection of the CyDex License, section 6.02(a) of the Plan and the corresponding provisions of the Confirmation Order shall not apply to the CyDex License. The Debtors will proceed by notice of rejection with a reasonable opportunity for CyDex to object, and the rights of the parties as to the effect of rejection are preserved.

## VII.    Notice and Other Provisions

39.    **Notice of Confirmation Order and Occurrence of Effective Date**. The Reorganized Debtors shall file with this Court a notice of the occurrence of the Effective Date

51

within a reasonable time after the conditions in Section 10.02 of the Plan have been satisfied or waived pursuant to Section 10.03 of the Plan. The Reorganized Debtors shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (a) known Holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, and (c) all other parties included in the Debtors' creditor and notice party matrix, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as **Exhibit B** (the "**Notice of Effective Date**"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid. The Notice of Effective Date shall also be published in the national and international editions of *The New York Times* or *The Wall Street Journal*. Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Entity to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved—left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address. The notice described herein is adequate and appropriate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary.

40.     **[Reserved]**

41.     **Restructuring Expenses**. Subject to the Cash Collateral Order, including the payment procedures set forth therein, on the Effective Date, and otherwise in accordance with the terms of any applicable fee letters and court orders during the pendency of the Chapter 11 Cases, the Reorganized Debtors shall pay in full in Cash all outstanding Restructuring Expenses not previously paid pursuant to an order of the Bankruptcy Court in accordance with

the terms of the applicable engagement letters entered into or acknowledged by the Debtors or other applicable arrangements, without the need for any application or notice to or approval by the Bankruptcy Court, and all such Restructuring Expenses shall be invoiced on or before the Effective Date.

42.    **Plan Modifications**. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan) and any consent rights as set forth therein, the Debtors expressly reserve their respective rights to revoke or withdraw or to alter, amend, or modify the Plan with respect to each Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan after Confirmation, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

43.    **Failure to Consummate Plan and Substantial Consummation**. If the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the Global Settlement and the fixing or limiting to an amount certain Claims or Class of Claims or the allocation of the distributions to be made thereunder), the assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be null and void in all respects. In such event, nothing contained in the Plan or in the Disclosure Statement, nothing in the Global Settlement Term Sheet, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity, to prejudice in any manner the rights and defenses of the Debtors,

the Holder of a Claim or Interest, or any Entity in any further proceedings involving the Debtors, or to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

44.    **Dissolution of Statutory Committees**. On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve, and the members thereof shall be released from all rights and duties from or relating to the Chapter 11 Cases in accordance with Section 12.04 of the Plan; *provided, however*, that the Creditors' Committee will stay in existence solely for the limited purpose of filing and prosecuting final fee applications.

45.    **Disclosure Statement Supplement**. The Disclosure Statement Supplement is approved in all respects pursuant to Bankruptcy Code section 1125 and Bankruptcy Rule 3017.

46.    **Exhibits**. Each reference to a document, agreement, or summary description that is in the form attached as an Exhibit to the Plan in this Confirmation Order or in the Plan shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

47.    **Plan and Confirmation Order Nonseverable**. The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed nonseverable.

48.    **Plan Confirmed in Entirety**. The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Plan be by this Confirmation Order confirmed in its entirety.

49. **Confirmation Order Supersedes**. Except as expressly provided in the Plan or this Confirmation Order, it is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

50. **Governmental Approvals Not Required**. Subject to paragraph 35 of this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

51. **Conflicts Between Confirmation Order and Plan**. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each. If there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall control.

52. **Retention of Jurisdiction**. Notwithstanding the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, the Plan, the Global Settlement, and the GUC Trust Agreement (without prejudice to the rights, if any, of any party-in-interest to seek to withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d) and related law with respect to any issue or proceeding subject to mandatory or discretionary withdrawal) to the fullest extent permitted by

law, including, among other things, jurisdiction over the matters set forth in Article XI of the Plan.

53.    **Enforceability of Plan**. Pursuant to Bankruptcy Code sections 1123(a), 1141(a), and 1142, and the provisions of this Confirmation Order, the Plan shall be, and hereby is, valid, binding, and enforceable, notwithstanding any otherwise applicable non-bankruptcy law. The Debtors are authorized to take all actions necessary or appropriate to, enter into, amend, modify, implement, and consummate, as necessary, all agreements or documents created under or arising in connection with the Plan, without further order of this Court, in accordance with the provisions of the Plan, and only consistent therewith.

54.    **Final Order**. Notwithstanding the stay contemplated by Bankruptcy Rule 3020(e) and except as otherwise provided in Bankruptcy Code section 1141(d), immediately after entry of this Confirmation Order, the Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, whether or not such Holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors, any and all non-Debtor parties to an Executory Contract or Unexpired Lease, and all other parties-in-interest in the Chapter 11 Cases. Accordingly, as permitted by Bankruptcy Rule 3020(e), the fourteen (14) day period provided by such rule is hereby waived in its entirety.

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: April 11th, 2020**
**Wilmington, Delaware**